

**FILED**

NOV 19 2010

Clerk. U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**<br>**1718 Connecticut Ave., N.W.**<br>**Suite 200**<br>**Washington, DC 20009** | )<br>)<br>)<br>)<br>\ |
| **Plaintiff,** | Case: 1:10-cv-01992<br>Assigned To : Huvelle, Ellen S. |
| **v.** | Assign. Date : 11/19/2010<br>Description: FOIA/Privacy Act |
| **THE UNITED STATES DEPARTMENT OF**<br>**HOMELAND SECURITY**<br>**Washington, D.C. 20528** | )<br>)<br>)<br>) |
| **Defendant.** | )<br>) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552 (2010), for injunctive and other appropriate relief, seeking the release of agency

records requested by the Electronic Privacy Information Center from the United States

Department of Homeland Security.

2.      This lawsuit challenges DHS's failure to disclose documents in response to EPIC's

July 13, 2010 Freedom of Information Act ("FOIA") request to the agency. EPIC's FOIA Request

seeks agency records concerning the radiation risks posed by DHS's airport full body scanner

program. DHS has failed to disclose a single record, and has failed to comply with statutory

deadlines. EPIC asks the Court to order immediate disclosure of all responsive records.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) (2010) and 5 U.S.C. § 552(a)(6)(C)(i) (2010). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2010). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) (2010).

## Parties

4.      Plaintiff Electronic Privacy Information Center ("EPIC") is a public interest research organization incorporated as a not-for-profit corporation in Washington, D.C. EPIC's activities include the review of federal activities and policies to determine their possible impacts on civil liberties and privacy interests. Among its other activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter. EPIC also maintains a heavily visited Internet site, http://www.epic.org, which contains extensive information regarding privacy issues, including information EPIC has obtained from federal agencies under the FOIA. EPIC routinely and systematically disseminates information to the public. This Court recognized EPIC's role as a representative of the news media in *EPIC v. Dep't of Defense,* 241 F. Supp. 2d. 5 (D.D.C. 2003).

5.      Defendant United States Department of Homeland Security ("DHS") is an agency established in the Executive Branch of the United States Government. DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1) (2007). DHS includes a component called the Transportation Security Administration ("TSA"). DHS includes a component called the Science and Technology Directorate ("S&T").

## Facts

### DHS is Implementing Full Body Scanner Technology as Primary Screening for Air Travelers

6.     In February 2007, TSA, a DHS component, began testing full body scanners – also called "whole body imaging" and "advanced imaging technology" – to screen air travelers.

7.     Full body scanners produce detailed, three-dimensional images of individuals.

8.     Experts have described full body scans as a "digital strip search."

9.     TSA is using full body scanner systems at airport security checkpoints, screening passengers before they board flights.

10.    TSA has provided various assurances regarding its use of body scanners.

11.    TSA has stated that body scanners would not be mandatory for passengers and that images produced by the machines cannot be stored, transmitted, or printed.

12.    A previous EPIC FOIA lawsuit against DHS revealed that TSA's body scanner images can be stored and transmitted.

13.    On February 18, 2009, TSA announced that it would require passengers at six airports to submit to full body scanners in place of the standard metal detector search, which contravenes its earlier statements that full body scanners would not be mandatory.

14.    On April 6, 2009, TSA announced its plans to expand the mandatory use of full body scanners to all airports.

15.    On June 4, 2009, the U.S. House of Representatives passed HR 2200, a bill that would limit the use of full body scanner systems in airports. The bill would bar use of full body scanner technology for primary screening purposes.

16.    HR 2200 was referred to the Senate for consideration on June 8, 2009. The legislation was referred to the Senate Committee on Commerce, Science, and Transportation. It

3

remains pending through the date of this pleading.

17.     Since June 2009, the TSA has installed hundreds of additional full body scanners in American airports.

18.     On July 2, 2010, EPIC filed suit in the U.S. Court of Appeals for the D.C. Circuit to suspend the TSA's full body scanner program.

## The TSA's Full Body Scanner Program Places Air Travelers at Heightened Risk of Radiation-related Illness

19.     Experts have questioned the safety of full body scanners and noted that radiation exposure from devices like full body scanner increases individuals' cancer risk.

20.     No independent study has been conducted on the health risks of full body scanners.

21.     In April 2010, scientists at the University of California – San Francisco wrote to President Obama, calling for an independent review of the full body scanners' radiation risks. The experts noted that children, pregnant women, and the elderly are especially at risk "from the mutagenic effects of the [body scanners'] X-rays."

22.     Dr. David Brenner, director of Columbia University's Center for Radiological Research and a professor of radiation biophysics, has warned "it's very likely that some number of [air travelers] will develop cancer from the radiation from these scanners."

23.     Peter Rez, a professor of physics at Arizona State University, has identified cancer risks to air travelers arising from improper maintenance and flawed operation of the TSA's full body scanners.

24.     Other scientists and radiology experts have also identified serious health risks associated with the full body scanner program, including increased cancer risk to American travelers.

4

## EPIC Submitted a FOIA Request to DHS Regarding the Radiation Risks of TSA's Full Body Scanner Program

25.     On July 13, 2010, EPIC transmitted, via certified mail, a written FOIA request to

DHS for agency records ("EPIC's FOIA Request"). EPIC requested the following agency records:

a.     All records concerning TSA tests regarding body scanners and radiation emission or exposure;

b.     All records concerning third party tests regarding body scanners and radiation emission or exposure.

26.     EPIC also asked DHS to expedite its response to EPIC's FOIA request on the bases

that it pertains to a matter about which there is an urgency to inform the public about an actual or

alleged federal government activity, and was made by a person primarily engaged in disseminating

information. EPIC made this request pursuant to 5 U.S.C. § 552(a)(6)(E) (2010). EPIC based the

request on public and press interest in full body scanners and privacy protections.

27.     EPIC also requested "News Media" fee status under the Freedom of Information

Act, based on its status as a "representative of the news media."

28.     EPIC further requested waiver of all duplication fees.

29.     Disclosure of the records requested in EPIC's FOIA Request will contribute

significantly to public understanding of the operations and activities of the government.

## DHS Failed to Make a Determination Regarding EPIC's FOIA Request and Failed to Produce Any Documents

30.     On July 29, 2010, the DHS wrote to EPIC acknowledging receipt of EPIC's FOIA

Request and stating that the DHS determined that the records sought by EPIC's FOIA Request are

held by TSA and S&T.

31.     EPIC's FOIA Request was referred the TSA FOIA Officer Kevin Janet and a FOIA

Officer for S&T, Miles Wiley.

32.   DHS assigned EPIC's FOIA Request the case number DHS/OS/PRIV 10-0869.

33.   Through the date of this pleading, neither DHS, TSA, nor S&T have disclosed a single agency record in response to EPIC's FOIA Request.

34.   Through the date of this pleading, neither DHS, TSA, nor S&T have made a single determination concerning the substance of EPIC's FOIA Request.

### TSA Denied EPIC's Requests for Expedited Processing and a Fee Waiver

35.   On August 12, 2010, TSA wrote to EPIC, denying EPIC's requests for expedited processing and a fee waiver.

36.   EPIC filed an administrative appeal of TSA's decision on August 27, 2010.

37.   Through the date of this pleading, TSA has failed to make a determination concerning EPIC's August 27, 2010 appeal.

### S&T Denied EPIC's Request for a Fee Waiver

38.   On September 3, 2010, S&T responded to EPIC, denying EPIC's request for a fee waiver.

### S&T Identified Responsive Agency Records, But Failed to Disclose the Documents

39.   On September 8, 2010, S&T responded to EPIC, stating that S&T has identified agency records that are in S&T's possession and are responsive to EPIC's FOIA Request.

40.   However, S&T failed to disclose the responsive records, ostensibly because the records "belong to the Transportation Security Administration (TSA)."

41.   Through the date of this pleading, neither S&T nor TSA have disclosed a single agency record to EPIC.

### EPIC Filed an Administrative Appeal with TSA

42.     On October 21, 2010, EPIC transmitted a written administrative appeal to TSA ("EPIC's Administrative Appeal to TSA").

43.     EPIC's Administrative Appeal to TSA appealed TSA's failure to make a determination regarding EPIC's FOIA Request. It also reiterated EPIC's August 27, 2010 appeal of the TSA's denial of EPIC's requests for expedited processing and a fee waiver.

44.     On November 5, 2010, TSA sent EPIC a letter that purported to "acknowledge receipt of your October 21, 2010 Freedom of Information Act (FOIA) request [sic] to the Transportation Security Administration (TSA), to appeal [sic] TSA's decision regarding your FOIA request appeal [sic] to TSA 10-0869 …"

45.     The TSA's November 5, 2010 letter further states that "due to the increasing number of FOIA requests [sic] received by this office, we may encounter some delay in processing your request [sic]." and invites EPIC to "narrow the scope of your request [sic]."

46.     The TSA's November 5, 2010 letter is an explicit or constructive denial of EPIC's Administrative Appeal to TSA. The letter purports to respond to EPIC's appeal, but instead unlawfully places EPIC's appeal in a queue for processing FOIA requests – a queue in which TSA states "there are currently 50 open requests [sic] ahead of yours."

### EPIC Filed an Administrative Appeal with S&T

47.     On October 21, 2010, EPIC transmitted a written administrative appeal to S&T ("EPIC's Administrative Appeal to S&T").

48.     EPIC's Administrative Appeal to S&T appealed S&T's failure to disclose records, as well as S&T's denial of EPIC's request for a fee waiver.

49.     Through the date of this pleading, S&T has failed to make a determination

concerning EPIC's Administrative Appeal to S&T.

## Count I
### Violation of the FOIA: Failure to Comply With Statutory Deadlines

50.    Paragraphs 1-49 above are hereby incorporated by reference as if set forth fully herein.

51.    As described above, DHS's responses to EPIC's FOIA Request violated the statutory deadlines imposed by the FOIA, including the deadlines set forth in

5 U.S.C. § 552(a)(6)(A) (2010) and 5 U.S.C. § 552(a)(6)(C) (2010).

52.    EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request.

53.    EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

## Count II
### Violation of the FOIA: Unlawful Withholding of Agency Records

54.    Paragraphs 1-53 above are hereby incorporated by reference as if set forth fully herein.

55.    As described above, Defendant's September 8, 2010 letter to EPIC identifies agency records that are responsive to EPIC's FOIA Request, but DHS has unlawfully withheld the records.

56.    As described above, DHS has failed to comply with statutory deadlines, failing to complete a search for other agency records responsive to EPIC's FOIA Request.

57.    As a result of DHS's unlawful delay, the agency has wrongly withheld additional responsive agency records from EPIC.

58.    EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

## Requested Relief

WHEREFORE, Plaintiff prays that this Court:

A.   order Defendant to produce all responsive agency records identified in Defendant's September 8, 2010 letter to EPIC within five days of the Court's Order in this matter;

B.   order Defendant to make a complete determination regarding EPIC's FOIA Request within ten days of the date of the Court's Order in this matter;

C.   order Defendant to produce all responsive agency records to EPIC's FOIA Request within ten days of the Court's Order in this matter;

D.   order Defendant to recognize Plaintiff's "news media" fee status for the purpose of EPIC's FOIA Request, waive all duplication fees, and disclose all responsive agency records without charge;

E.   order Defendant to grant Plaintiff's request for expedited processing;

F.   award Plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) (2010); and

G.   grant such other relief as the Court may deem just and proper.

Respectfully submitted,

By: _____

John Verdi, Esquire (DC Bar # 495764)
Marc Rotenberg, Esquire (DC Bar # 422825)
ELECTRONIC PRIVACY INFORMATION
CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated:  November 19, 2010