# Exhibit 3
# Declaration of Pamela Beresford

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
ELECTRONIC PRIVACY INFORMATION CENTER )
        Plaintiff, )
)
    v. )  Case No. 1:10-cv-1992 (ABJ)
)
THE UNITED STATES DEPARTMENT OF )
HOMELAND SECURITY, )
        Defendant. )
_____ )

## DECLARATION OF PAMELA BERESFORD

I, Pamela Beresford, hereby declare as follows:

1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations made in accordance herewith.

2. I am the Technical Editor and Librarian/Archivist at the Department of Homeland Security Transportation Security Laboratory ("TSL") located at the William J. Hughes Technical Center, Atlantic City Airport, New Jersey.

3. TSL is a unit within the Science and Technology Directorate ("S&T") of the Department of Homeland Security ("DHS").

4. S&T is a component of DHS whose mission is to strengthen America's security and resiliency by providing knowledge products and innovative technology solutions for the Homeland Security Enterprise.

5. TSL's mission is to enhance homeland security by performing research, development and validation of solutions to detect and mitigate threats to transportation security, including

explosive devices.  TSL's facilities are used to perform development, tests, and evaluations of technology and associated procedures that can used to more effectively detect concealed explosives in parcels, luggage or on people.

6. TSL's role is to evaluate systems that have been invited to enter into the procurement process.  The testing of technologies by TSL is limited to testing for security effectiveness.  TSL does not conduct formalized radiation testing of security technologies.  However, TSL has coordinated and collaborated with other federal agencies that have engaged in radiation testing.

7. In 1995, I earned a Bachelor's of Arts degree from the City University of New York (Baccalaureate Program).  In 2002, I earned a Ph. D. from the City University of New York.  Prior to joining TSL, I spent several years conducting biological research.  In 1998, I received a fellowship from the American Museum of Natural History for my doctoral research.  I also worked in the Manhattan headquarters of Davis, Polk and Wardwell, where my responsibilities initially involved training support staff on certain administrative software platforms, and then involved production of mergers and acquisitions ("M&A") documents for closings and SEC filings.

8. I am currently employed by Global Systems Technologies, Inc. ("GST"), a federal contractor, and have been in this position since January 2007.  I joined TSL through TSL's contract with GST.

9. In my current capacity as Technical Editor and Librarian/Archivist, I support the range of test and evaluation activities conducted at TSL from both a general and a technical point of view, in order to assist with TSL's outreach and communication mission.  I function as writer and editor for a wide range of technical reports on security technology research,

2

development, test and evaluation.  I also perform the librarian and archiving function at TSL.

10. I have been trained on the overall test and evaluation process concerning Advanced Imaging Technology ("AIT", sometimes referred to as "body scanner" technology). Since 2009, I have been closely involved with the AIT test group to provide editorial and administrative process support.  Specifically, I was trained in the documentation process for each AIT test effort, and helped create the system for archiving the documentation pertaining to such tests.

11. Due to the nature of my official duties, and my having conducted other records searches pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") in the past, I am familiar with the procedures followed by DHS in responding to requests for information pursuant to FOIA.

## Scope of Search for Responsive Records

12. On February 10, 2011, my supervisor, Patty Reichenbach, External Communications Liaison and Technology Transfer Manager for TSL, notified me that TSL had been tasked by the Office of the Executive Secretary for S&T to search for records responsive to a FOIA request to DHS by the Electronic Privacy Information Center ("EPIC").

13. The FOIA request requested:

   a.  All records concerning TSA tests regarding body scanners and radiation emission or exposure; and

   b.  All records concerning third party tests regarding body scanners and radiation emission or exposure.

14. At the same time, on February 10, 2011, Ms. Reichenbach requested that Mr. Lee Spanier conduct a search for records responsive to the request.  Mr. Spanier is the AIT Independent Test and Evaluation Lead, and is the individual at TSL who manages AIT testing.  In addition, Mr. Spanier has coordinated with other components of the federal government, including the Food and Drug Administration ("FDA") and the National Institute of Standards and Technology ("NIST"), which have engaged in testing and/or evaluation of AIT for conformity with radiation safety standards.  Accordingly, to the extent that TSL possessed records responsive to the FOIA request, Mr. Spanier would have possession of such records.

15. Mr. Spanier conducted a search for records responsive to the request.  Specifically, he determined that responsive records would be located within various locations within his electronic mail ("email") account.  In order to make an initial collection of records that could potentially be responsive to the request, Mr. Spanier gathered all of the records that were located in specific folders he had created that could contain information regarding the testing of AIT systems for radiation safety.  He also gathered all records to or from certain individuals with whom he had corresponded concerning radiation safety testing.

16. In determining the temporal scope of records to search, Mr. Spanier searched for records dating back to 2007.  2007 was when AIT technology began to be mature enough to undergo qualification security effectiveness testing; accordingly, that was used as the "start date" for the search.

17. The "end date" or "cutoff date" used for the search for responsive records was February 10, 2011.  This date was used in accordance with 6 C.F.R. § 5.4(a), which states that "[i]n determining which records are responsive to a request, a component ordinarily will

include only records in its possession as of the date the component begins its search for them."

18. I was tasked with reviewing the records Mr. Spanier had gathered to determine which of them were responsive, that is, which of them were records concerning TSA or third-party tests regarding AIT and radiation emission or exposure.  I was also tasked with making an initial determination as to which of these records were potentially subject to FOIA exemptions.

19. In preparation for this task, I discussed the substance of the FOIA request, and the types of records that might be responsive, with Mr. Spanier.  We agreed that the responsive records in Mr. Spanier's possession would likely pertain to radiation safety test results by third parties that were submitted by manufacturers of AIT machines, as well as to radiation testing done by NIST and FDA.

20. Within approximately two weeks, Mr. Spanier had provided me with over 10,000 potentially responsive emails, which included numerous attachments.

21. Mr. Spanier provided me with the responsive records in batches.  I began reviewing the first batch I received on or about February 15, 2011.   I reviewed the records manually, examining each email message and attachment to determine whether it was potentially responsive to the request.

22. I reviewed all of the records for responsiveness, eliminating records that were not responsive to the FOIA request.

23. In addition, because the responsive records concern the AIT program, which is implemented by the Transportation Security Administration ("TSA"), and because many of these records consist of correspondence to and from TSA personnel, TSA was

consulted to assist in the processing of these records pursuant to 6 C.F.R. 5.4(c)(1).  This DHS FOIA regulation states that "[w]hen a component receives a request for a record in its possession, it shall determine whether another component, or another agency of the Federal Government, is better able to determine whether the record is exempt from disclosure under the FOIA and, if so, whether it should be disclosed as a matter of administrative discretion."  The regulation further states that the receiving component may, if necessary, "[r]espond to the request regarding that record, after consulting with the component or agency best able to determine whether to disclose it and with any other component or agency that has a substantial interest in it."  TSA was accordingly consulted based on its substantial interest in the responsive records and its expertise in the subject matter.

24. In particular, TSA assisted in the processing of TSL records that potentially contained confidential business information and therefore implicated FOIA Exemption 4, as well as records that potentially contained Sensitive Security Information ("SSI").

25. As a result of this consultation and review, additional records were determined to be either exempt from disclosure under FOIA or non-responsive to the request.  In addition, to avoid duplication and inconsistent withholdings, if identical records were found among the records of TSA, TSL, and the Test, Evaluation, and Standards Office ("TES"), the other component of S&T that searched for responsive records, duplicates were eliminated where possible.  These activities were performed primarily by counsel.

26. TSL released the majority of its responsive records to EPIC on June 21, 2011, but notified EPIC that certain records containing potentially confidential business information were being withheld because the "submitter notice process" pursuant to Executive Order 12600 had not yet been completed.  The disclosure letter accompanying that release is attached as Exhibit A.

27. On September 7, 2011, additional TSL records were released to EPIC.  The email accompanying this disclosure is attached as Exhibit B.  These records included:

   a.  Records that had initially been withheld pending completion of the submitter notice process, as well as review for sensitive security information ("SSI") review, but were subsequently determined to be releasable in part; and

   b.  Records that had been initially withheld either in whole or in part under Exemption 4 but, upon reassessment, were determined to be releasable at least in part.

**Withholdings Pursuant to FOIA Exemptions**

28. The following paragraphs generally describe the records withheld by TSL pursuant to FOIA exemptions.  The withheld records are described in greater specificity in the TSL Vaughn index, which is attached as Exhibit C.

29. With the exception of the withholding of certain copyrighted material, this declaration does not address the withholding of confidential commercial information pursuant to Exemption 4, or sensitive security information ("SSI") withheld under Exemption 3.  Because TSA was consulted in this process and made determinations as to the applicability of these exemptions, these withholdings are separately explained in the declaration of Paul Sotoudeh.

30. In addition, two documents were located that implicated confidential business information submitted by Medtronic, a manufacturer of medical devices.  These records concerned testing by the FDA on the interaction between millimeter wave technology and personal medical devices.  The FDA was consulted pursuant to 6 C.F.R. § 5.4(c)(1) to conduct the submitter notice process and to determine whether these records were exempt from disclosure under Exemption 4.  These withholdings are explained in the declaration of Joy Lazaroff.

**Exemption 6**

31. FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

32. The vast majority of the emails, and many of the attachments, that I processed contained email addresses, names of non-government officials, phone numbers, office addresses, and/or signatures, which have been withheld.

33. Disclosing this type of information would constitute a clearly unwarranted invasion of the personal privacy of the individuals referenced in these records.  Moreover, the privacy interests of the individuals referenced in these records outweigh any minimal public interest in disclosure of the information.

34. The specific pages on which these redactions were made are referenced on the TSL <u>Vaughn</u> index.

**Exemption 5**

35. Under Exemption 5, FOIA's disclosure requirements do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party

other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The

exemption has been interpreted to include, <u>inter alia</u>, the deliberative process privilege,

the attorney-client privilege, and attorney work product.

36. TSL has asserted Exemption 5 to withhold certain information protected under the

deliberative process privilege. The deliberative process privilege protects internal agency

communications that are both predecisional, that is, that predate an agency decision or

policy, and deliberative, that is, containing recommendations or opinions on legal or

policy matters. It therefore applies to records such as recommendations, evaluations,

drafts, proposals, suggestions, and other subjective documents (and excerpts thereof)

which do not reflect final agency policy.

37. There are three primary concerns recognized under the deliberative process privilege: (1)

to encourage open and frank discussion of policy matters between subordinates and

supervisors; (2) to protect against the premature disclosure of proposed policies before

they become final; and (3) to protect against public confusion that might result from the

disclosure of reasons and rationales that were not, in fact, the ultimate grounds for the

agency's action.

38. As described more specifically in the attached <u>Vaughn</u> index, portions of the responsive

records were withheld in part, and certain records were withheld in full, pursuant to the

deliberative process privilege. These records, or portions thereof, are internal

government e-mails, memoranda, and other documents that contain policy deliberations,

expressions of opinions, suggestions, draft documents (including many with changes and

comments tracked), and comments on policy issues.

39. The records, or portions thereof, withheld pursuant to the deliberative process privilege fit into the following general categories, with more specific descriptions contained within the Vaughn index:

    a. **Draft documents, and deliberations, comments, and opinions offered during the drafting of documents.** As explained more specifically in the Vaughn index, withholdings in this category were made on Bates pages 201-204, 908-10, 923, and the withheld-in-full documents A, B, C, F, G, I, J, and K.

    b. **Opinions and suggestions regarding planned approaches to testing AIT devices.** This category comprises opinions and suggestions of agency personnel regarding how AIT devices should be tested for their effects on human health and/or on personal medical devices. The withheld portions are contained on Bates pages 13, 26, 41, 153, 155-56, 165, 171, 176, 183, 196-99, 605-608, 609-612, 626-27, 628-29, 651, 720, 771, 869, 871-73, 959-960, 963-67, 1060-63, 1070, and the withheld-in-full documents D, E, H, and N.

    c. **Preliminary test results.** These withholdings comprise preliminary findings regarding AIT testing results. As explained more specifically in the Vaughn index, withholdings in this category were made in one document, withheld-in-full document L.

    d. **Expressions of opinion on general policy matters pertaining to AIT radiation safety.** These withholdings are too diverse to fit into any of the categories above, and generally comprise suggestions, expressions of opinion, and deliberations concerning policy matters. As explained more specifically in the Vaughn index,

withholdings in this category were made on Bates pages 44-47, 173-75, 186-87, 634-35, 834, 870, 874-76, 957, and the withheld-in-full document M.

**Exemption 4**

40. Exemption 4 of the FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).

41. Pursuant to Exemption 4, TSL withheld three documents from disclosure because they are protected by copyright.  These documents, which are specified on the TSL Vaughn index as Withheld-in-full O, P, and Q, include two standards published by the Institute of Electrical and Electronics Engineers ("IEEE") and one by the American National Standards Institute ("ANSI").  TSL has withheld these documents as their publishers or copyright owners have not made them available free of charge online; accordingly, release of such documents would dilute the value of the copyright.

42. For a limited subset of records subject to Exemption 4 concerning testing by the Food and Drug Administrative ("FDA") of the impact of millimeter wave technology on personal medical devices, the FDA was consulted pursuant to 6 C.F.R. § 5.4(c)(1) to conduct the submitter notice process and to determine whether these records were exempt from disclosure under Exemption 4.  Further details regarding these withholdings are contained in the declaration of Joy Lazaroff.

43. For the remainder of records withheld in full or in part pursuant to Exemption 4, because of its expertise in the subject matter, pursuant to 6 C.F.R. § 5.4(c)(1), TSA was consulted and determined which records pertaining to AIT system manufacturers were exempt from disclosure under Exemption 4.  Further details regarding these withholdings are contained

in the declarations of Paul Sotoudeh, as well as in the declarations of Peter Modica, Scott Trosper, Joseph Callerame, and Rory Doyle.

## Segregability

44. To the extent possible, non-exempt responsive records and portions thereof have been segregated and released to EPIC. Numerous records were released in part. As noted above, some records were re-released after it was determined they contained additional releasable non-exempt information. Records were withheld in full only when no meaningful non-exempt portions of such records remained.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on: _Sept. 9_ , 2011


P. Bryant

12

# Exhibit A to
# Declaration of Pamela Beresford

 **Homeland Security**

June 20, 2011

Ms. Ginger McCall
Staff Counsel
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC  20009

### Re: **Freedom of Information Act Appeal (S&T 11-0003.30)**

Dear Ms. McCall:

This is the final response to your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated July 13, 2010.  You are seeking all records concerning TSA tests, regarding body scanners and radiation emission or exposure; as well as all records concerning third party tests regarding body scanners and radiation emission or exposure. Pursuant to an agreement to narrow the scope of the request on January 19, 2011, the search for responsive records was limited to records pertaining to vendors and technologies that are either currently being deployed by the Science and Technology Directorate (S&T) or are under consideration by S&T.

Attached on compact disc(s) are records produced by S&T's Test & Evaluation and Standards Office and Transportation Security Laboratory as responsive to your request. Of those documents, I have determined that some are releasable in their entirety, while others are withheld in part pursuant to Title 5 U.S.C. § 552 FOIA Exemptions 3, 4, 5, and 6 as described below. Further, please be advised that some documents are currently being withheld under Exemption 4 pending completion of the submitter notice process in accordance with Executive Order 12,600.

**FOIA Exemption 3** protects information specifically exempted from disclosure by another statute, if the statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) established particular criteria for withholding or refers to particular types of matters to be withheld. Proposals Section 253b(m) of Title 41, United States Code, prohibits the release of any competitive proposal under the FOIA, except for those portions of the proposal set forth or incorporated by reference in a government contract.

**FOIA Exemption 4** protects trade secrets and commercial or financial information obtained from a person that is privileged or confidential.  The courts have held that this subsection protects (a) confidential commercial information, the disclosure of which is likely to cause substantial harm to the competitive position of the person who submitted the information and (b)

information that was voluntarily submitted to the government if it is the kind of information that the provider would not customarily make available to the public.

**FOIA Exemption 5** protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context. The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right privacy. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

If you have any questions, please contact Jesse Grauman at the U.S. Department of Justice at 202-514-2849.

Sincerely,

Marshall L. Caggiano
Attorney-Advisor
Office of the General Counsel
Science and Technology Directorate

Enclosure(s):   Compact disc(s)

# Exhibit B to
# Declaration of Pamela Beresford

## Grauman, Jesse (CIV)

| | |
|---|---|
| **From:** | Grauman, Jesse (CIV) |
| **Sent:** | Wednesday, September 07, 2011 6:49 PM |
| **To:** | John Verdi |
| **Subject:** | EPIC v. DHS (Radiation testing) (First email) |
| **Attachments:** | TSL1075-1189.pdf; TSL1190-1198.pdf; TSL1199-1279.pdf |

John –

Attached to this email (and subsequent emails due to file size) are records being released or re-released by DHS to EPIC in <u>EPIC v. DHS</u>, No. 1:10cv1992 (radiation testing regarding advanced imaging technology).  As you know, in an effort to narrow the issues for review, DHS has been reviewing withholdings made pursuant to Exemption 4, pursuant to the one-month extension we negotiated in early August.  In addition, certain records had been temporarily withheld by DHS pending completion of the submitter notice process and review for sensitive security information (SSI).  Both of these processes are complete and the following three categories of records are being released:

> **I: Records previously withheld temporarily pending completion of submitter notice and SSI review and now being released upon completion of that review:**
> TSL1075-1189
> TSL1190-1198
> TSL1199-1279
> TSL1280-1360
>
> **II. Records previously withheld in full pursuant to Exemption 4, now being released in part after further review:**
> TSL1361-1378
> TSL1379-1382
>
> **III. Records previously withheld in part pursuant to Exemption 4 now being released with fewer or no Exemption 4 withholdings after further review:**
> TSA178-191
> TSA192-195
> TSL774-788
> TSL919-922
> TSL-MISC (comprising TSL13, 26, 32-38, 41, 153, 165, 171, 176, 651, 841, 874)

The bases for any withholdings in these records will be identified in the <u>Vaughn</u> indices and declarations that will be filed with our upcoming motion for summary judgment on Monday.  Please contact me if you have any questions or concerns.

Jesse

Jesse Grauman
Trial Attorney
U.S. Department of Justice, Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW, Room 5374
Washington, DC 20001
jesse.z.grauman@usdoj.gov
Phone: (202) 514-2849
Fax: (202) 305-8517

# Exhibit C to
# Declaration of Pamela Beresford
# (TSL <u>Vaughn</u> Index)

**EPIC v. DHS, Civil Action 1:10-cv-1992**
**US District Court, District of Columbia**

**TSL Vaughn Index**

| Bates numbers | Number of Pages with withholdings | Document(s)/Email title(s) | Exemption | Explanation/Justification for Withholding |
|---|---|---|---|---|
| TSL000001-2, TSL000009-10 | 4 | Interagency Agreement between DHS and FDA | (b)(6) | Email address, telephone numbers, signatures of DHS and FDA staff were withheld for privacy reasons. |
| TSL000011 | 1 | FW: HSHQDC-10-X-00495, PR: RSLF-10-00153 | (b)(6) | Email address and telephone numbers of DHS and FDA staff were withheld for privacy reasons. |
| TSL000012-14; TSL000024, TSL000026-27; TSL000039-41; TSL000152-154; TSL000160-165; TSL000167; TSL000169-172; TSL000176; TSL000649-652 | 28 | FW: modifying the mm wave scanner to be delivered to FDA labs; L-3 supplying information required by FDA for testing; modifying the mm wave scanner to be delivered to FDA labs; RE: modifying the mm wave scanner to be delivered to FDA labs; RE: AIT EMI Safety Meeting Slated for 19 July 1-3p in Silver Spring; RE: Directions to FDA labs | (b)(6) | Names, email address, and telephone numbers of DHS, FDA, and contractor employees withheld for privacy reasons. |
| TSL000015-19, TSL000021-22 | 7 | TSA 10-1282; Conf/Equip form for New Equipment at The Food & Drug Administration (FDA), Silver Spring, MD (TSA); L-3 supplying information required by FDA for testing; | (b)(6) | Email address and telephone numbers of DHS and FDA staff were withheld for privacy reasons. |
| TSL000028 | 1 | Medtronic memo re: Medtronic implantable pacemaker, defibrillation, and neuromodulation systems | (b)(6) | Name of company signatory withheld for privacy reasons. |
| | | | (b)(4) | This record is a letter sent by Medtronic to Schiphol Airport in the Netherlands in 2007.  The letter was submitted voluntarily by L-3 Communications to DHS and FDA in 2010 in connection with an inter-agency agreement between those agencies to test the effects of millimeter wave scanners on medical devices.  L-3 was not required to |

| | | | | |
|---|---|---|---|---|
| | | | | submit this information in order to have its products deployed by TSA.<br><br>The withheld information concerns the interaction between Medtronic devices and Provision 100 scanner.  It is not the type of information that would normally be disclosed to the public by Medtronic. Lazaroff Decl. ¶¶ 9, 11-13. |
| TSL000029, 31<br><br>TSL000030-31 | 3 | Memorandum regarding Radiated Emissions Testing and Power Density Calculation for Guardian 100 System | (b)(6)<br><br>(b)(4) | Names of individuals withheld for privacy reasons.<br><br>This record is a 2005 letter from EMC International Services to Safeview, Inc., a predecessor entity to L-3 Communications.  It was submitted voluntarily by L-3 to DHS and FDA in 2010 in connection with an inter-agency agreement between those agencies to test the effects of millimeter wave scanners on medical devices.<br><br>L3 was not required to submit this information in order to have its products deployed by TSA.<br><br>The withheld excerpts are specific system timing parameters developed by L-3 that optimize the imaging performance of the L-3 system.  This information would not normally be disclosed by L-3 to the public. Moreover, its release is likely to cause L-3 substantial competitive harm, as it would enable competitors to copy technical attributes of L-3's design and to extract L-3 Communications proprietary system performance metrics and use this information to their advantage in future competitive procurement programs. Trosper Decl. ¶ 5; Sotoudeh Decl. ¶¶ 54-58. |

| TSL000033, 35-36 | 3 | Questionnaire from L-3 Communications: "In order to begin the preliminary assessments…" | (b)(4) | This record is a response by L-3 to questions posed by FDA about certain attributes of the L-3 system.  It was submitted voluntarily by L-3 to DHS and FDA in 2010 in connection with an inter-agency agreement between those agencies to test the effects of millimeter wave scanners on medical devices.<br><br>L3 was not required to submit this information in order to have its products deployed by TSA.<br><br>The withheld excerpts are specific system timing parameters that optimize the imaging performance of the L-3 system, and specific details on L-3's antenna design.  The document is marked "Proprietary Information" and would not normally be disclosed by L-3 to the public.  Moreover, its release is likely to cause L-3 substantial competitive harm, as it would enable competitors to copy technical attributes of L-3's design  and to extract L-3 Communications proprietary system performance metrics and use this information to their advantage in future competitive procurement programs.  Trosper Decl. ¶ 5; Sotoudeh Decl. ¶¶ 54-58. |
| TSL000044-47 | 4 | RE: Request to Review to Incoming Communications re AITs (two emails) | (b)(6) | Email address and telephone numbers of DHS staff; names of outside (non-government) individuals who submitted correspondence to TSA. |
| TSL44 | | | (b)(5) | DHS official's opinion about content and proprietary status of certain reports. |
| TSL44, 47 | | | | TSA official's stated belief regarding nature of available information concerning effects of AITs on medical devices. |

| TSL000048, 52, 54, 58, 62-63, 65-67, 69, 71-72, 74-78 | 18 | Addendum to L-3 Communications Safeview, Inc. Test Report ETS-07-009-A | (b)(6) | Names and signatures of non-government individuals involved in testing.  Withheld for privacy reasons. |
|---|---|---|---|---|
| TSL82 | | | (b)(4) | This record is a third-party test report required to be submitted to the government as part of L-3's Qualification Data Package ("QDP"), a set of information demonstrating compliance with certain requirements necessary for placement on a Qualified Product List ("QPL") of products eligible for consideration for TSA contracts. |
| | | | | The withheld excerpt is a photograph of internal components of the L-3 ProVision AIT system that reveals specific design implementation details, including details of the millimeter wave component placement and cabling methodology. Release of this information is likely to cause L-3 substantial competitive harm by enabling competitors to copy technical attributes of the design for use in products which would directly compete with L-3 Communications in the AIT product market.  Trosper Decl. ¶ 6; Sotoudeh Decl. ¶¶ 54-58. |
| TSL000145 | 1 | RE: user and password information | (b)(6) | Email address and telephone numbers of DHS and FDA staff were withheld for privacy reasons. |
| TSL000148-50 | 3 | FW: extension or new IAA with DHS | (b)(6) | Email address and telephone numbers of DHS and FDA staff were withheld for privacy reasons. |
| TSL000151 | 1 | Re: Radiation Safety Standards & Testing for mm Wave AIT | (b)(6) | Email address and telephone numbers were withheld for privacy reasons. |
| TSL000155-6 | 2 | RE: Advance Notice: Require Dosimeters | (b)(6) | Email address and telephone numbers were withheld for privacy reasons. |
| | | | (b)(5) | Informal deliberative comments containing speculation and opinion regarding methods for detecting radiation from AIT systems, including dosimeters. |

| TSL000173-175 | 3 | FW: Help with USA Today question | (b)(6) | Emails and phone numbers of various staff were withheld to protect privacy. |
| | | | (b)(5) | Deliberations between agency personnel concerning how to respond to certain claims made regarding AIT by USA Today reporter. |
| TSL000178-182 | 5 | RE: Scanner plans and information | (b)(6) | Email address, telephone numbers of DHS and FDA staff, and names of non-government officials, withheld for privacy reasons. |
| TSL000183 | 1 | RE: PR TSL-2010-050 - SOW-Amended with Edit Marks--hb --5-18-v2-clean.doc | (b)(6) | Email address and telephone numbers were withheld for privacy reasons. |
| | | | (b)(5) | Expression of author's opinion as to nature of test performed by FDA when compared with tests proposed by manufacturers. |
| TSL000186-187 | 8 | RE: Washington Post article on cell phone radiation | (b)(6) | Email address and telephone numbers withheld for privacy reasons. |
| | | | (b)(5) | Excerpts withheld consist of agency officials' speculations and suggestions concerning assertions in Washington Post article. |
| TSL000193 | 1 | Request for two papers on Radiation Safety Standards for AIT | (b)(6) | Email address and telephone numbers were withheld for privacy reasons. |
| TSL000196-199 | 4 | mm wave lab project progress and pending problems | (b)(6) | Email address and telephone numbers of DHS and FDA staff and non-government individuals  were withheld for privacy reasons. |
| | | | (b)(5) | Withheld excerpt includes author's opinions about test approach proposed by one device manufacturer when compared with approach used by FDA. |
| TSL000200 | 1 | Fw: Final Backscatter Fact Sheet | (b)(6) | Email address and telephone numbers were withheld for privacy reasons. |

| TSL000201-204 | 4 | Fw: Backscatter response | (b)(6) | Email address and telephone numbers were withheld for privacy reasons. |
| | | | (b)(5) | Excerpts withheld are edits and comments to draft version of portion of brief concerning backscatter safety to be sent to Secretary of DHS. |
| TSL000205-6 | 1 | RE: possible funding additions to L-3 project | (b)(6) | Email address and telephone numbers of DHS and FDA staff were withheld for privacy reasons. |
| TSL000207 | 1 | Fw: RF exposure guidelines and safety standards | (b)(6) | Email address and telephone numbers of staff were withheld for privacy reasons. |
| TSL000208-210 | 3 | RE: Information needed for preliminary assessments | (b)(6) | Email address and telephone numbers  of staff, and names of non-government officials, were withheld for privacy reasons. |
| TSL000214 | 1 | Exposure to High Frequency Electromagnetic Fields, Biological Effects and Health Consequences (100 kHz-300GHz) | (b)(6) | Phone number and email of publisher withheld for privacy reasons |
| TSL000603 | 2 | RE: AIT QDP - Substantiation for requirements 145, 164, 165, 168 | (b)(6) | Email addresses and telephone numbers withheld for privacy reasons. |
| TSL000605-608; TSL000871-873 | 7 | FW: medical device testing - Medtronic protocol; RE: Proposal for Medtronic on possible MM Wave system interference | (b)(6) | Email addresses and telephone numbers withheld for privacy reasons. |
| | | | (b)(5) | Withheld portions are exchanges of opinions and thoughts expressed by government employees outlining tentative plans for testing effects of scanners on medical devices, and expressing their opinions about product manufacturers' proposed test approach. |

| TSL000609-612 | 4 | RE: Information re: Medtronic testing; | (b)(6) | Email addresses, telephone numbers , and names of non-governmental employees withheld for privacy reasons. |
| | | | (b)(5) | Withheld portions are exchanges between government and contractor employees concerning tentative plans and logistics for testing effects of scanners on medical devices |
| TSL000613-623 | 11 | Medtronic Cardiac Rhythm Disease Management | (b)(6) | Names of non-government personnel withheld for privacy reasons. |
| | | | (b)(4) | This record is a test plan submitted by Medtronic to FDA in 2010 voluntarily as part of a test program implemented by DHS and FDA to test the effects of millimeter wave scanners on medical devices.

Medtronic was not required to submit this information to the government.  The document is marked "MEDTRONIC CONFIDENTIAL."

The withheld excerpts contain proprietary information concerning Medtronic medical devices, specifically, details regarding Medtronic's plan for testing the interaction of emissions from millimeter wave scanners on Medtronic devices, along with the model names of these devices.  This information is not of the type Medtronic would disclose to the public.  Lazaroff Decl. ¶¶ 10-13. |
| TSL000624-625; TSL000717-718 | 4 | RE: ProVision 100 Unit - delivery (2 emails) | (b)(6) | Email address and telephone numbers of DHS and FDA staff were withheld for privacy reasons. |

| TSL000626-7 | 2 | FDA mm wave project | (b)(6) | Email address and telephone numbers of DHS and FDA staff were withheld for privacy reasons. |
| | | | (b)(5) | Deliberative remarks reflecting author's opinion about interagency administrative logistics for conducting testing. |
| TSL000628-629; TSL000771; TSL000869 | 4 | RE: AS&E AIT Qualification Data Package; RE: AS&E "s AIT QDP; RE: AS&E AIT Qualification Data Package; RE: Radiation Safety Review of AS&E"s AIT QDP | (b)(6) | Email address and telephone numbers of TSL staff withheld for privacy reasons. |
| | | | (b)(5) | Opinions by agency personnel concerning possible installation approaches for AS&E scanner system and system's suitability for testing. |
| TSL000632 | 1 | RE: TSL Configuration Audit issue | (b)(6) | Names, email address and phone numbers of agency and non-government staff withheld for privacy reasons. |
| TSL000633 | 1 | IRB requirements | (b)(6) | Telephone numbers of staff were withheld for privacy reasons. |
| TSL000634-5; TSL000870; TSL000874-876 | 6 | RE: Radiation Safety (3 emails with this subject) | (b)(6) | Email address and telephone numbers of TSL staff withheld for privacy reasons. |
| | | | (b)(5) | Speculative opinions expressed by agency personnel concerning their interpretations of findings and values in third party reports concerning AIT radiation safety. |
| TSL000638 | 1 | RE: Emailing: TSL SafeScout - RF Rad Survey 2-15-07 .doc | (b)(6) | Email address and telephone numbers of TSL staff withheld for privacy reasons. |
| TSL000639-641 | 3 | RE: extension or new IAA with DHS | (b)(6) | Email address and telephone numbers of DHS and FDA staff were withheld for privacy reasons. |
| TSL000642, TSL000644-648, TSL000653 | 7 | 19 July 2010; FW: TSA 10-1282; Conf/Equip form for New Equipment at The Food & Drug Administration (FDA) ,Silver Spring, MD (TSA); FW: TSA 10-1282 Airport Review | (b)(6) | Email address and telephone numbers of DHS and FDA staff were withheld for privacy reasons. |
| TSL000654 | 1 | FW: An item to share on AIT X-ray | (b)(6) | Email address and telephone numbers of staff were withheld for privacy reasons. |

| TSL000692 | 1 | Re: NIST HSHQDC-10-X-00107 - Distribution | (b)(6) | Email address and telephone numbers of DHS staff were withheld for privacy reasons. |
|---|---|---|---|---|
| TSL000693; TSL000903 | 2 | FW: Information needed for preliminary assessments; Information needed for preliminary assessments | (b)(6) | Email address and telephone numbers of agency staff, and names of non-government staff, withheld for privacy reasons. |
| TSL000695-696; 698-699 | 4 | RE: AIT QDP - Substantiation for requirements 145, 164, 165, 168 (two emails) | (b)(6) | Email address and telephone numbers of DHS staff were withheld for privacy reasons. |
| TSL000701, 707, 712 | 3 | CMG Test Report | (b)(6) | Names, phone numbers and email addresses of CMG staff, as well as signatures, were withheld for privacy reasons. |
| TSL000714-715 | 2 | F. X Masse Certificate of Compliance for AS&E Dual SmartCheck HT Personnel Scanner, April 8, 2010 | (b)(6) (b)(4) | Signature withheld for privacy reasons. This information is located within a document required to be submitted to the government as part of AS&E's Qualification Data Package ("QDP"), a set of information demonstrating compliance with certain requirements necessary for placement on a Qualified Product List ("QPL") of products eligible for consideration for TSA contracts. The withheld information contains: 1) Certain Operating Parameters of the AS&E Dual SmartCheck, including current and voltage measurements 2) Certain design features and component parts of the AS&E Dual SmartCheck 3) Specific Radiation Dose Levels Emitted by AS&E Dual SmartCheck Release of this information is likely to cause AS&E substantial competitive harm because it could enable a competitor to infer non-public details about the design of AS&E's system, such as beam characteristics or filtration, which could in |

| | | | | |
|---|---|---|---|---|
| | | | | turn enable that competitor to reverse-engineer AS&E's product.  Callerame Decl. ¶ 5(i-iii); Sotoudeh Decl. ¶¶ 54-63. |
| TSL000719 | 1 | FW: Work under IAG | (b)(6) | Phone number and email address of FDA staff withheld for privacy reasons. |
| TSL000720 | 1 | FW: New IAG SOW | (b)(6) | Phone number and email address of FDA staff withheld for privacy reasons. |
| | | | (b)(5) | Excerpts withheld contain informal remarks by agency officials regarding their intentions regarding about certain test details and opinions about how to engage manufacturers. |
| TSL000728, 735 | 2 | Interagency agreement to be executed | (b)(6) | Phone numbers and email addresses of FDA staff withheld for privacy reasons. |
| TSL000739 | 1 | Issue Date 2008-05-29: Cover Page for Test Report | (b)(6) | Signatures and names of UL staff withheld for privacy reasons. |
| TSL000773 | 1 | TUV Test Results Summary | (b)(6) | Names and signatures of TUV staff withheld for privacy reasons. |
| TSL000774-779 | 6 | Letter from 3rd party physicist concerning radiation safety of Rapiscan system, Oct. 28, 2008 | (b)(6) | Names, address, email address and phone numbers of non-government personnel withheld for privacy reasons. |
| TSL000780-788 | 9 | Letter from 3rd party physicist concerning radiation safety of Rapiscan system, June 5, 2008 | (b)(6) | Names, address, email address and phone numbers of non-government personnel withheld for privacy reasons. |
| TSL790, 792, 793, 801 | 3 | Addendum to L-3 Communications Safeview, Inc. Test Report ETS-07-041-A | (b)(6) | Names and signatures of non-government officials. |
| TSL000824-825 | 2 | Radiomagnetic Frequency Electromagnetic Exposure Statement of Compliance | (b)(6) | Names of non-government officials withheld for privacy reasons. |
| TSL000829-30 | 2 | F. X. Masse letter of compliance regarding AS&E Dual SmartCheck, June 4, 2008 | (b)(6) | Signature of staff  withheld for privacy reasons. |
| | | | (b)(4) | This information is located within a document required to be submitted to the government as part of AS&E's Qualification Data Package ("QDP"), a set of information demonstrating compliance |

| | | | | |
|---|---|---|---|---|
| | | | | with certain requirements necessary for placement on a Qualified Product List ("QPL") of products eligible for consideration for TSA contracts.<br><br>The withheld information contains:<br><br>1) Certain Operating Parameters of AS&E Dual SmartCheck, including current and voltage measurements<br>2) Certain design features and component parts of AS&E Dual SmartCheck<br>3) Specific Radiation Dose Levels Emitted by AS&E Dual SmartCheck<br>4) Recommendations for improving radiation safety of AS&E Dual SmartCheck<br><br>Release of this information is likely to cause AS&E substantial competitive harm because it could enable a competitor to infer non-public details about the design of AS&E's system, such as beam characteristics or filtration, which could in turn enable that competitor to reverse-engineer AS&E's product.  Moreover, disclosure of any product recommendations or solutions would cause AS&E substantial competitive harm because a competitor could utilize these non-public recommendations to design or improve its system.  Callerame Decl. ¶ 5(i-iv); Sotoudeh Decl. ¶¶ 54-68. |
| TSL000831-32 | | F. X. Masse letter of compliance regarding AS&E SmartCheck, March 2006 | (b)(6) | Signature of staff  withheld for privacy reasons. |
| | | | (b)(4) | This information is located within a document required to be submitted to the government as part of AS&E's Qualification Data Package ("QDP"), a set of information demonstrating compliance with certain requirements necessary for placement on a Qualified Product List ("QPL") of products eligible for |

| | | | | consideration for TSA contracts. |
| --- | --- | --- | --- | --- |
| | | | | The withheld information contains specific radiation dose levels emitted by the AS&E Dual SmartCheck at certain specific locations. |
| | | | | Release of this information is likely to cause AS&E substantial competitive harm because it could enable a competitor to infer non-public details about the design of AS&E's system, such as beam characteristics or filtration, which could in turn enable that competitor to reverse-engineer AS&E's product.  Callerame Decl. ¶ 5(iii); Sotoudeh Decl. ¶¶ 59-63. |
| TSL000834 | 1 | AIT Safety Audit | (b)(5) | Request to conduct performance testing on certain AIT devices not currently being deployed by DHS/TSA. |
| TSL000835 | 1 | Re: PR for NIST | (b)(6) | Email address and telephone numbers of DHS staff were withheld for privacy reasons. |
| TSL000836-837 | 2 | Re: AIT/AT Proximity Test - Preliminary Report | (b)(6)<br><br>(b)(3) (SSI) (49 U.S.C. § 114(r) and 49 C.F.R. § 1520.5(b)(9)(v)) | Email address and telephone numbers of TSL staff withheld for privacy reasons.<br><br>Withheld excerpts describes particular phenomenon observed while performance-testing the Rapiscan Secure 1000, which could be used to identify a potential vulnerability of the system. |
| TSL000838-839 | 2 | RE: OST WBI/EMD Testing | (b)(6) | Email address and telephone numbers of DHS staff were withheld for privacy reasons. |
| TSL000840 | 1 | RE: Rapiscan WBI | (b)(6) | Email address and telephone numbers of DHS staff were withheld for privacy reasons. |
| TSL000841-842 | 2 | FW: radiation emissions ratings on WBIs units | (b)(6) | Names, email address and phone numbers withheld for privacy reasons. |

| TSL000843 | 1 | Re: Rapiscan WBI Safety Information | (b)(6) | Email address and telephone numbers of DHS staff were withheld for privacy reasons. |
|---|---|---|---|---|
| TSL000845 | 1 | FW: Rapiscan Secure 1000 QDP letter & waiver assessment | (b)(6) | Email address and telephone numbers of staff were withheld for privacy reasons. |
| TSL000846 | 1 | TUV: Certificate | (b)(6) | Signature redacted for privacy reasons. |
| TSL000848 | 1 | RE: WBI/Radiation | (b)(6) | Email address of DHS staff withheld for privacy reasons. |
| TSL000849 | 1 | RE: Test Prerequisites | (b)(6) | Email addresses of DHS staff withheld for privacy reasons. |
| TSL000850 | 1 | RE: x-ray standards work | (b)(6) | Email addresses of NIST staff withheld for privacy reasons. |
| TSL000851 | 1 | RE: Health Physicist? | (b)(6) | Email addresses of DHS staff withheld for privacy reasons. |
| TSL000852 | 1 | RE: Data Package Review | (b)(6) | Email addresses of DHS staff withheld for privacy reasons. |
| TSL000853; TSL000961-962 | 3 | Proposal for Medtronics on possible MM Wave system interference; RE: Proposal for Medtronics on possible MM Wave system interference | (b)(6) | Email addresses of staff withheld for privacy reasons. |
| TSL000854, TSL000859-860, TSL000864-865 | 5 | Interagency Agreement b/w NIST and DHS/TSL | (b)(6) | Phone numbers, signatures, and email addresses of staff withheld for privacy reasons. |
| TSL000866-867 | 2 | RE: Transmission x-ray testing | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL000868 | 1 | Baseline Radiation Safety Audit | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL000877-878 | 2 | FW: AIT Radiation measurement standards and approved locations | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL000880, TSL000881-882 | 1, 2 | L3 Communication cover letter for and CKC  Radio Frequncy Electromagnetic Exposure Statement of Compliance Addendum | (b)(6) | Names and signatures of staff withheld for privacy reasons. |
| TSL000884-885 | 2 | FW: Effects of MMW on implanted medical devices | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |

13

| TSL000890-892 | 3 | FW: AIT QDP - Substantiation for requirements 145, 164, 165, 168 | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
|---|---|---|---|---|
| TSL000893-896 | 4 | FW: High throughput SmartCheck Certifications | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL000897-899 | 3 | Frank Cerra, Assessment of Radiation Safety and Compliance with ANSI N43.17-2002 AS&E Dual Smart Check Personnel Scanner | (b)(4) | This record is an evaluation of AS&E's Dual Smart Check by Frank Cerra, a NIST official.  Although the evaluation was authored by Mr. Cerra, the information, assessments, and recommendations included in this evaluation are based on information obtained from AS&E, including (1) a third-party compliance report by F.X. Masse, a copy of which is located at TSL829-30, that was required to be submitted to the government as part of AS&E's Qualification Data Package ("QDP"), a set of information demonstrating compliance with certain requirements necessary for placement on a Qualified Product List ("QPL") of products eligible for consideration for TSA contracts, (2) radiation dosage maps submitted by AS&E in connection with its QDP (TSL1190-91), (3) designs and other information obtained from AS&E, and (4) a prior evaluation conducted by Mr. Cerra (TSL924-56) based on an earlier-model AS&E system obtained by the government for testing.

The withheld portions include:
1) Descriptions of design features and scanning mechanisms used by AS&E Dual SmartCheck, including measurements and geometry of x-ray beam

2) Specific Radiation Dose Levels Emitted by AS&E Dual SmartCheck at various locations

3) Assessments of, and recommendations |

| | | | | |
|---|---|---|---|---|
| | | | | for improving, radiation safety of AS&E Dual SmartCheck<br><br>Release of this information is likely to cause AS&E substantial competitive harm because it could enable a competitor to infer non-public details about the design of AS&E's system, such as beam characteristics or filtration, which could in turn enable that competitor to reverse-engineer AS&E's product.  Moreover, disclosure of product recommendations or solutions would cause AS&E substantial competitive harm because a competitor could utilize these same non-public recommendations to design or improve its system.  Callerame Decl. ¶ 5(i-iv); Sotoudeh Decl. ¶¶ 54-68. |
| TSL000901-902 | 2 | RE: Rapiscan Secure 1000 QDP letter & waiver assessment | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL000905-906 | 2 | RE: Memo on Response to Radiation Concerns | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL000908-910 | 3 | FW: Memo on Response to Radiation Concerns | (b)(6)<br><br>(b)(5) | Phone numbers and email addresses of staff withheld for privacy reasons.<br><br>Excerpts withheld are suggestions of points to be included in draft memorandum to Deputy Secretary of DHS on radiation safety. |
| TSL000911-913; TSL000914-917; TSL000918 | 8 | RE: High throughput SmartCheck Certifications (2 emails); Rapiscan Dual Secure 1000 Report | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL000919-922 | 4 | Frank Cerra, Assessment of Radiation Safety and Compliance with ANSI N43.17-2002 Rapiscan Dual Secure 1000 Personnel Scanner | (b)(6) | Name of third-party testing physicist withheld for privacy reasons. |
| TSL000923 | 1 | Single-source Smart Check error | (b)(5) | Withheld excerpts include Mr. Cerra's observations and comments on an error in the 2006 version of his assessment of the AS&E single-source SmartCheck. |

| TSL000926-927, 929-942, 944-48, 954-56 | 24 | Assessment of the AS&E Smart Check BodyScanner for Conformance with RadiologicalSafety Standards | (b)(6) | Names of staff withheld for privacy reasons. |
| | | | (b)(4) | This information is located within an evaluation of AS&E's SmartCheck conducted by Frank Cerra of the National Institute of Standards and Technology (NIST).  The evaluation was initially conducted in 2006 and then updated in 2008 with a revision to a single page.   The testing and evaluations were performed on a SmartCheck machine that was obtained from AS&E. |
| | | | | The withheld excerpts pertain to: |
| | | | | TSL926: Specific radiation measurements emitted by AS&E SmartCheck at various locations and information that could be used to derive such measurements; description of SmartCheck beam mechanism and design |
| | | | | TSL927: Model and features of x-ray tube used in AS&E SmartCheck.  Information obtained via personal communication with AS&E employee. |
| | | | | TSL929-30: Half-value-layer measurements (thickness of aluminum required to attenuate x-ray beam to half of exposure rate of unattenuated beam) of AS&E SmartCheck, and graph showing such measurements |
| | | | | TSL931: Observed cutoff photon energy and anode voltage of AS&E SmartCheck |
| | | | | TSL932: Graph of uncorrected photon energy spectrum and peak energy channels observed in AS&E SmartCheck |
| | | | | TSL933: Description of radiation exposures in certain specific locations of scan field of AS&E SmartCheck |
| | | | | TSL934: Descriptions of two scanning features used in AS&E SmartCheck, and graph of maximum relative radiation exposure as function of height |

| | | | | TSL935: Numeric values reflecting measured focal spot of SmartCheck scanner; descriptions of design features and scanning mechanisms; graph of radiation exposure as function of horizontal position |
| | | | | TSL936: Measurement of radiation emitted by AS&E SmartCheck |
| | | | | TSL937: Excerpts describing shape and features of x-ray mechanism; graph of radiation exposure as function of distance; measurements of relative slope of curve in graph and focus-to-skin distance |
| | | | | TSL938: Numeric values that could be used to derive focal spot of SmartCheck scanner; graph of relative exposure per scan as function of inverse distance from focal spot |
| | | | | TSL939: Descriptions of specific features of scanning mechanism, including focal spot, scan field divergence, and angles. |
| | | | | TSL940: Measurement of radiation emitted by AS&E SmartCheck |
| | | | | TSL941: Measurements of radiation emitted by AS&E SmartCheck; graph and measurements of minimum inspection zone for AS&E SmartCheck |
| | | | | TSL942: Measurements of radiation emitted by AS&E SmartCheck; measurements of distance used for various radiation measurements; graph of area that should be free of full-time employee stations based on radiation levels |
| | | | | TSL944, 945: Tables showing measurements of radiation leakage and scatter radiation emitted by AS&E SmartCheck at various locations |
| | | | | TSL946: Measurement of scatter exposure emitted by AS&E SmartCheck |
| | | | | TSL947: Discussion of measurements of leakage radiation emitted by AS&E SmartCheck, referencing information in SmartCheck Operator's Manual obtained from AS&E |

| | | | | TSL954-56: Graphs and charts showing measured radiation emissions from AS&E SmartCheck at various locations |
|---|---|---|---|---|
| | | | | This information is not of the type AS&E would normally release to the public. Moreover, release of this information is likely to cause AS&E substantial competitive harm because it could enable a competitor to infer non-public details about the design of AS&E's system, such as beam characteristics or filtration, which could in turn enable that competitor to reverse-engineer AS&E's product. Moreover, disclosure of any product recommendations or solutions would cause AS&E substantial competitive harm because a competitor could utilize these same non-public recommendations to design or improve its system.  Callerame Decl. ¶ 5(i-iv); Sotoudeh Decl. ¶¶ 54-68. |
| TSL000957 | 1 | FW: SmartCheck HT Radiation Surveys | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| | | | (b)(5) | Sentence withheld reflects author's opinion and suggestion concerning attached radiation surveys. |
| TSL000959-960 | 2 | FW: Safety for AIT ATR | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| | | | (b)(5) | Excerpts withheld under Exemption (b)(5) contain opinions and stated intentions of agency personnel concerning additional testing of AIT systems employing automated target recognition ("ATR"). |
| TSL000963-967 | 5 | Re: transmission x-ray | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| | | | (b)(5) | Excerpt withheld under Exemption (b)(5) includes author's stated opinion and speculation about element of planned test approach. |

18

| TSL000969 | 1 | To Whom It May Concert (L-3 letter) | (b)(6) | Names and signatures of staff withheld for privacy reasons. |
|---|---|---|---|---|
| TSL000970-971 | 2 | RE: AS&E Safety Test Project - Kick-off | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL000972 | 1 | FW: AIT Safety Testing - French Results | (b)(6) | Phone numbers of staff withheld for privacy reasons. |
| TSL000983, TSL001056, | 2 | Afsset Évaluation des risques sanitaires liés à l'utilisation du scanner corporel à ondes « millimétriques » ProVision 100 | (b)(6) | Signatures of issuing agency and officials withheld for privacy reasons. |
| TSL001057 | 1 | Re: Safety test issues | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL1059 | 1 | Preliminary progress report for AIT-medical device testing | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL1060-63 | 4 | Transmission X-Ray measurement at NIST | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
|  |  |  | (b)(5) | Redacted portions consist of agency staff's opinions and stated intentions regarding future testing of transmission X-Ray systems, utility of releasing preliminary results, potential timeline for testing, and intra-agency logistics regarding the timeline. |
| TSL1064 | 1 | RE: Preliminary progress report for AIT-medical device testing | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL1065-66 | 2 | RE: L3"s ProVision 100 AIT? | (b)(6) | Phone numbers and email addresses of staff withheld for privacy reasons. |
| TSL1067-69 | 3 | RE: request for deviation (RFD) for L-3 provision password at FDA | (b)(6) | Phone numbers and email addresses of staff, and name of non-government officials, withheld for privacy reasons. |
| TSL1070 | 1 | AIT IO Qual Test - AS&E ANSI Radiation Safety Test | (b)(5) | Author's opinion regarding utility of relying only on third party radiation tests, and regarding who should bear certain costs associated with testing |
| TSL1071-72 | 2 | FW: Plan for relocation of Smartcheck HT from TSL to NIST... | (b)(6) | Phone numbers and email addresses of staff, and name of non-government officials, withheld for privacy reasons. |
| TSL1075, 1078, 1079, 1111, 1115, 1119, 1126, 1130, 1132, | 17 | Addendum to SafeView, Inc. Test Report, FC06-056 | (b)(6) | Names of non-government personnel redacted for privacy reasons. |

| | | | | |
|---|---|---|---|---|
| 1134, 1136, 1138, 1140, 1142, 1144, 1146, 1148 | | | | |
| TSL1149, 1151, 1152, 1157, 1160, 1164, 1166, 1167 | 8 | SafeView Test Report for the SC-100, T-COP | (b)(6) | Names of non-government personnel redacted for privacy reasons. |
| TSL1168, 1170 | 2 | L3 Communications, SafeView Inc. Report for the ProVision SC-100 | (b)(6) | Names of non-government personnel redacted for privacy reasons. |
| TSL1186, 1187 | 2 | CKC Certificate of Conformity | (b)(6) | Names of non-government personnel redacted for privacy reasons. |
| TSL1190-91 | 2 | Dosage map showing radiation dosage from AS&E SmartCheck (attachment to report released at TSL000897-899) | (b)(4) | This record is a dosage map that was submitted by AS&E in connection with the evaluation of AS&E's Dual Smart Check by Frank Cerra at TSL897-99.<br><br>The withheld portions include:<br><br>1) Text indicating location where radiation dosage was measured, including measurements of distance from scanner<br><br>2) Graphs showing map of radiation dosage emitted by AS&E Dual Smart Check at various locations<br><br>Release of this information is likely to cause AS&E substantial competitive harm because it could enable a competitor to infer non-public details about the design of AS&E's system, such as beam characteristics or filtration, which could in turn enable that competitor to reverse-engineer AS&E's product.  Callerame Decl. ¶ 5(iii); Sotoudeh Decl. ¶¶ 59-63. |
| TSL1192-93 | 2 | Email: FW: SmartCheck HT | (b)(6) | Names of non-government personnel, and phone numbers/email address, redacted for privacy reasons. |
| | | | (b)(4) | This record is an email submitted by AS&E to a TSL official to demonstrate its |

| | | | | system's compliance with radiation safety standards. The information in this email was submitted by AS&E to the TSL official in an email to support TSL's evaluation of the SmartCheck system's compliance with radiation safety standards; AS&E was required to comply with such standards in order to be placed on a qualified products list ("QPL").<br><br>The withheld portions include:<br><br>1) Descriptions of specific component parts and design features of AS&E Dual SmartCheck<br><br>2) Specific Radiation Dose Levels Emitted by AS&E Dual SmartCheck<br><br>This information is not of the type AS&E would release to the public. Moreover, release of this information is likely to cause AS&E substantial competitive harm because it could enable a competitor to infer non-public details about the design of AS&E's system, such as beam characteristics or filtration, which could in turn enable that competitor to reverse-engineer AS&E's product. Callerame Decl. ¶ 5(i,iii); Sotoudeh Decl. ¶¶ 54-63. |
| TSL1194-97 | 4 | Radiation Survey forms for AS&E Smartcheck (attachment to email released at TSL000957-58) | (b)(6)<br><br>(b)(4) | Names of non-government personnel redacted for privacy reasons.<br><br>This record was attached to an email submitted by AS&E to a TSA official to demonstrate its system's compliance with radiation safety standards; AS&E was required to comply with such standards in order to be placed on a qualified products list ("QPL").<br><br>The withheld excerpts include specific radiation dose levels emitted by the AS&E dual SmartCheck |

| | | | | Release of this information is likely to cause AS&E substantial competitive harm because it could enable a competitor to infer non-public details about the design of AS&E's system, such as beam characteristics or filtration, which could in turn enable that competitor to reverse-engineer AS&E's product.  Callerame Decl. ¶ 5(iii); Sotoudeh Decl. ¶¶ 59-63. |
|---|---|---|---|---|
| TSL1198 | 1 | TUV Certificate | (b)(6) | Names of non-government personnel redacted for privacy reasons. |
| TSL1199, 1216-71, 1272-73 | 59 | EMC Test Report WC808134, TUV (Third party reports on radio interference) regarding Rapiscan Secure 1000 system | (b)(6) | Names of non-government personnel, and phone numbers/email address, redacted for privacy reasons. |
| | | | (b)(4) | This information is located within a document required to be submitted to the government as part of Rapiscan's Qualification Data Package ("QDP"), a set of information demonstrating compliance with certain requirements necessary for placement on a Qualified Product List ("QPL") of products eligible for consideration for TSA contracts.

The information withheld consists of specific confidential technical specification and operational settings of the Rapiscan Secure1000 system, specifically, current amps/phase measurements (TSL1273).  The release of this information  likely to cause Rapiscan substantial competitive harm because it could enable competitors to more effectively design and build their own systems using Rapiscan's proprietary information.  Modica Decl. ¶¶ 4-7; Sotoudeh Decl. ¶¶ 54-58. |
| 1282-83, 1286-90, 1316, 1328-29, 1333 | 21 | Test Report IEC-61010-1 (Electrical Safety) on Rapiscan Secure 1000 System | (b)(6) | Names of non-government personnel, and phone numbers/email address, redacted for privacy reasons. |

| | | | (b)(4) | This information is located within a document required to be submitted to the government as part of Rapiscan's Qualification Data Package ("QDP"), a set of information demonstrating compliance with certain requirements necessary for placement on a Qualified Product List ("QPL") of products eligible for consideration for TSA contracts. |
|---|---|---|---|---|
| | | | | The withheld excerpts are confidential technical specifications, operational settings, and component parts of the Rapiscan Secure1000 system, specifically: |
| | | | | TSL1282: Voltage measurement<br>TSL1283: Current measurement<br>TSL1286-90: Manufacturers, model numbers, and other technical data regarding component parts<br>TSL1316: Mains supply measurements<br>TSL1326-7: Temperature measurements<br>TSL1333: Sound level measurements |
| | | | | Release of this information is likely to cause Rapiscan substantial competitive harm because it could enable competitors to more effectively design and build their own systems using Rapiscan's proprietary information.  Modica Decl. ¶¶ 4-7; Sotoudeh Decl. ¶¶ 54-58. |
| 1362, 1364, 1367, 1368, 1369, 1378 | 6 | Compliance Engineering Ireland radiation safety report on Smiths Detection Systems "eqo" scanner | (b)(6) | Names of non-government personnel, and phone numbers/email address, redacted for privacy reasons |
| | | | (b)(4) | This information is located within a document required to be submitted to the government as part of Smiths' Qualification Data Package ("QDP"), a set of information demonstrating compliance with certain requirements necessary for placement on a Qualified Product List ("QPL") of products eligible for |

| | | | | |
|---|---|---|---|---|
| | | | | consideration for TSA contracts.<br><br>The excerpts withheld are specific measured results of radiation emitted by the Smiths eqo system, and information that could be used to derive such values.<br><br>Release of this information is likely to cause Smiths substantial competitive harm, as the information could be used to deduce or infer operational or performance attributes of the product and to reconstruct a technically accurate operational description of the scanning approach used in the system.  Doyle Decl. ¶¶ 4-6; Sotoudeh Decl. ¶¶ 59-63. |
| 1380 | 1 | Excerpts from Underwriters Laboratories, Inc. Test Results regarding L3 ProVision; majority of document is not responsive as it does not concern radiation testing.  Released portions are only portions of report pertaining to radiation testing.  Cover pages released at TSL738-39. | (b)(4) | This record consists of the responsive excerpts of a document that was required to be submitted to the government as part of L-3's Qualification Data Package ("QDP"), a set of information demonstrating compliance with certain requirements necessary for placement on a Qualified Product List ("QPL") of products eligible for consideration for TSA contracts.<br><br>The withheld portions consist of design parameters and component selection related to the motion control sub-system in the L3 ProVision product space.<br><br>Release of this information is likely to cause L-3 substantial competitive harm because it would enable competitors to copy technical attributes of the design for use in products which would directly compete with L-3 Communications in the AIT product market  Trosper Decl. ¶ 7; Sotoudeh Delc. ¶¶ 54-58. |

**Documents withheld in full**

| | | | | |
|---|---|---|---|---|
| Withheld-in-full A | 27 | Four draft versions of interagency agreement between DHS and FDA. | (b)(5) (Deliberative Process) | These documents are all working drafts of the interagency agreement with the FDA for the testing of the effects of AIT on personal medical devices. |
| Withheld-in-full B | 4 | Two drafts of DHS fact sheet on AIT Health and Safety | (b)(5) (Deliberative Process) | These documents are working drafts of DHS "fact sheet" on health and safety issues related to AIT. |
| Withheld-in-full C | 3 | Draft brief for DHS Secretary on radiation safety and backscatter machines | (b)(5) (Deliberative Process) | The document is a draft of a 'talking-point' memo for the Secretary of DHS regarding radiation safety for backscatter AIT machines. |
| Withheld-in-full D | 1 | Email exchange regarding TSL's capability to measure microwaves when machine is in a particular mode. | (b)(5) (Deliberative Process) | This exchange between agency personnel consists of deliberations and opinions by two individuals regarding the ability to measure certain microwave emissions when AIT systems are in a particular mode. |
| Withheld-in-full E | 6 | Four emails regarding TSL's verification of Rapiscan's documented radiation emissions | (b)(5) (Deliberative Process) | These exchanges between agency employees discuss TSL's verification of Rapiscan's submission of third party substantiation of radiation emission requirements, and further discuss best installation methods for performance testing. They contain the opinions and recommendations of agency employees as to the system's suitability for testing and as to the best methods for testing. |

| Withheld-in-full F | 4 | Draft, unsigned internal memorandum (May 21 2005) for agency internal review board (IRB) describing system features that will be required prior to performance testing of certain imaging technologies, including AIT. | (b)(5) (Deliberative Process) | Withheld in full pursuant to Exemption (b)(5). This draft memorandum, dated May 21, 2005, describes the elements that certain imaging systems, including AIT, would need in order to be deemed safe for testing. It was unsigned, never finalized, is not used for reference by the TSL, and is not a current policy. |
|---|---|---|---|---|
| Withheld-in-full G | 12 | WBI Qualification Test Working Group Charter, draft internal memorandum assigning roles to TSL staff regarding qualification testing for WBI. | (b)(5) (Deliberative Process) | Withheld in full pursuant to Exemption (b)(5). This draft document, which contains numerous handwritten markups, assigns tasks concerning WBI testing to various TSL employees and groups. It contains no substantive information about radiation testing. |
| Withheld-in-full H | 2 | Email exchange regarding types of dosimeters to be used for measuring radiation. | (b)(5) (Deliberative Process) | Withheld in full pursuant to Exemption (b)(5). This email exchange contains an informal question-and-answer discussion between two government employees regarding types of dosimeters (personal radiation monitors) that could be appropriate for measuring radiation from AIT devices. |
| Withheld-in-full I | 3 | Draft: Standards and Testing for Radiation Safety for Airport Backscatter X-Ray Systems | (b)(5) (Deliberative Process) | Withheld in full pursuant to Exemption (b)(5). This is a marked-up draft of a document called "Standards and Testing for Radiation Safety for Airport Backscatter X-Ray Systems." |
| Withheld-in-full J | 1 | Draft: Summary of Advanced Imaging Technology (AIT) Radiation Safety: Standards and Ensuring Compliance, April 22, 2010 | (b)(5) (Deliberative Process) | Withheld in full pursuant to Exemption (b)(5). This document is an early draft of policy document concerning AIT radiation safety. |
| Withheld-in-full K | 3 | Mark up and correction of one page from NIST report regarding AS&E SmartCheck. | (b)(5) (Deliberative Process) | Withheld in full pursuant to Exemption (b)(5). These documents reflect edits and updates, made in 2008, to one page of the 2006 report by Frank Cerra on radiation safety of the single-source AS&E SmartCheck, pursuant to an error that Mr. Cerra observed in 2008 when drafting a second report about the 2008 dual-source AS&E SmartCheck. |

| Withheld-in-full L | 6 | December 23, 2010 Preliminary FDA Progress Report per the FDA-TSA Agreement: Testing of Medical Devices in and Around the L3 ProVision Advanced Imaging Technology System | (b)(5) (Deliberative Process) | Withheld in full.  This document is a preliminary progress report, resulting from an interagency agreement between DHS and FDA, by the FDA concerning the testing of the effects of the L3 Provision on personal medical devices.  The report in its entirety is a preliminary document not intended for dissemination outside the federal government, as it reflects an interim report prior to the completion of testing of the effects of the L3 Provision on medical devices. |
| --- | --- | --- | --- | --- |
| Withheld-in-full M | 3 | Email exchange regarding comparisons between radiation generated by cellular phones and millimeter wave scanners. | (b)(5) (Deliberative Process) | Withheld in full pursuant to Exemption (b)(5).  This email exchange contains a discussion between agency personnel concerning revisions of an agency Privacy Impact Assessment, and specifically concerns the opinions of agency personnel regarding certain comparisons between radiation generated by cellular phones and millimeter wave scanners.  It also discusses preliminary findings of the FDA concerning radiation levels emitted by millimeter wave machines. |
| Withheld-in-full N | 2 | Email exchange between FDA and DHS about setting requirements for AITs and medical devices | (b)(5) (Deliberative Process) | Withheld in full pursuant to Exemption (b)(5).  This is a deliberative discussion between parties from FDA and TSA expressing their opinions on how best to approach the development of DHS requirements for the interaction between AIT and personal medical devices. |
| Withheld-in-full O | 19 | IEEE Standard for Safety Levels with Respect to Human Exposure to Radio Frequency Electromagnetic Fields, 3 kHz to 300 GHz Amendment 1 | (b)(4) | Withheld in full; document protected by copyright. |
| Withheld-in-full P | 250 | IEEE Standard for Safety Levels with Respect to Human Exposure to Radio Frequency Electromagnetic Fields, 3 kHz to 300 GHz | (b)(4) | Withheld in full; document protected by copyright. |
| Withheld-in-full Q | 46 | ANSI/HPS N43.17-2009: American National Standard - Radiation Safety for Personnel Security Screening Systems Using X-Ray or Gamma Radiation | (b)(4) | Withheld in full; documents are protected by copyright. |

| Withheld-in-full R | 15 | Radiated Emission and Personnel Health from SafeView's mmWave Holographic Imaging Portals: draft report by SafeView on safety and regulatory compliance | (b)(4) | Withheld in full pursuant to Exemption b(4). This record is a 2004 draft document on radiation emissions created by SafeView, a predecessor entity to L-3.  It is largely a review of information selected from scientific journals and government documents pertaining to health effects of electromagnetic exposure, and also includes system electrical operating characteristics of an early version of the L-3 ProVision scanner. This document is marked as a "DRAFT" and "Proprietary and Confidential," and was not required to be submitted to DHS as part of the procurement or qualification process.  It is not information of the type L-3 would normally release to the public.  Trosper Decl. ¶ 8; Sotoudeh Decl. ¶¶ 69-71. |