# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:10-01992 (ABJ) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff the Electronic Privacy Information Center ("EPIC") opposes Defendant U.S. Department of Homeland Security's ("DHS") September 12, 2011 Motion for Summary Judgment, and cross-moves for summary judgment in favor of EPIC. Specifically EPIC (1) challenges the agency's withholdings under Exemptions b(3), b(4), b(5); and, (2) seeks an order compelling the DHS to pay EPIC's fees and costs for this lawsuit because EPIC qualifies for such relief irrespective of the outcome of the parties' cross-motions for judgment.

## FACTUAL BACKGROUND

In 2005, the Transportation Security Administration ("TSA"), a DHS component, began testing Whole Body Imaging ("WBI") technology solely in U.S. airports to examine air travelers on commercial aircraft. WBI devices, which use either backscatter x-ray or millimeter wave technology, capture detailed, three-dimensional images of individuals. The WBI devices literally peer through clothing to observe and capture an image of the naked

human body.

TSA originally stated that body scanners would not be a primary screening device and that images produced by the machines could not be stored, transmitted, or printed. However, in February of 2009, the agency announced that it would require passengers at six airports to submit to full body scanners in place of the standard metal detector search, which contravened its earlier statements that full body scanners would not be used as a primary screening method. The agency later announced that it would deploy full body scanners for primary screening at all U.S. airports and has since installed hundreds of these devices in airports across the country.

Experts have questioned the safety of Whole Body Imaging devices and noted that radiation exposure may increase the risk of cancer. In April 2010, scientists at the University of California – San Francisco wrote to President Obama, calling for an independent review of the full body scanner radiation risk. (Until that time and to the present day, the agency has relied upon the studies it has commissioned in support of its program to justify its evaluation that the risks are "minimal.") The experts stated that children, pregnant women, and the elderly are especially at risk "from the mutagenic effects of the [body scanners] X-rays."

Dr. David Brenner, director of Columbia University's Center for Radiological Research and a professor of radiation biophysics, has warned "it's very likely that some number of [air travelers] will develop cancer from the radiation from these scanners." Peter Rez, a professor at Arizona State University, has identified cancer risks to air travelers arising from improper maintenance and flawed operation of the TSA's full body scanners. Other scientists and radiology experts have also identified serious health risks associated with the full body scanner program.

In order to make possible a more comprehensive assessment of the radiation risks to American air travelers of the agency's airport screening program, on July 13, 2010, EPIC transmitted its written FOIA request ("EPIC's FOIA request") to DHS for the following agency records:

1.  All records concerning TSA tests regarding body scanners and radiation emission or exposure;

2.  All records concerning third party tests regarding body scanners and radiation emission or exposure.

EPIC asked the agency to expedite its response to EPIC's FOIA request and requested "News Media" fee status under FOIA, based on its status as a "representative of the news media." EPIC further requested waiver of all duplication fees.

On July 29, 2010, DHS acknowledged receipt of EPIC's FOIA Request and stated that it had determined that the records sought by EPIC were in the possession of the TSA and the Science and Technology ("S&T") directorate, a component of the agency. The agency referred the request to TSA FOIA Officer Kevin Janet and S&T FOIA Officer Miles Wiley.

On August 12, 2010, TSA wrote to EPIC denying the request for a fee waiver and for expedited processing. EPIC appealed both denials on August 27, 2010. The agency failed to make a timely determination regarding EPIC's appeal. EPIC again appealed on October 21, 2010, this time challenging the agency's denial of fee waiver and unlawful withholdings.

On September 3, 2010, S&T responded to EPIC, denying EPIC's request for a fee waiver. On October 21, 2010, EPIC appealed this determination, along with S&T's failure

to respond within the statutory deadline.

After the agency failed to comply with the statutory deadline to reply to EPIC's appeal, EPIC filed suit on November 19, 2010.

On June 6, 2011, after the filing of this lawsuit, TSA produced 126 pages of responsive documents. On June 21, 2011, TSA produced an additional 69 pages and S&T produced 1,677 pages of responsive documents. On September 7, 2011, the agency released an additional 208 pages of documents. However, the agency has withheld many documents, in full and in part, and has asserted exemptions (b)(3), (b)(4), and (b)(5) as the basis for its determinations.

As set forth below, EPIC challenges the propriety of the agency's withholdings.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to the material facts, and the moving party demonstrates it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). FOIA lawsuits are typically resolved on cross-motions for summary judgment. *Reliant Energy Power Generation v. FERC*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007). A court reviews agency handling of a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B).

The U.S. Supreme Court "repeatedly has stressed the fundamental principle of public access to Government documents that animates the FOIA." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989). "In enacting FOIA, Congress struck the balance it thought right--generally favoring disclosure, subject only to a handful of specified exemptions--and did so across the length and breadth of the Federal Government." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1266 (2011). As the Court

has previously explained, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dept. of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976), quoting S. Rep. No. 89-813, at 3 (1965). The FOIA was meant to be a "disclosure statute," not a "withholding statute." *See Milner* 131 S. Ct. at 1262

The FOIA includes exemptions from disclosure, "[b]ut these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361, or that the exemptions "must be 'narrowly construed,'" *Milner, 131 S. Ct. at 1262,* citing *FBI* v. *Abramson*, 456 U.S. 615, 630 (1982). Therefore FOIA exemptions "must be narrowly construed." *Id*. "The statute's goal is broad disclosure, and the exemptions must be given a narrow compass." *Milner* 131 S. Ct. at 1261 (internal citations omitted). Furthermore, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *see also EPIC v. Dept. of Homeland Security*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005).

## ARGUMENT

### I.     The Agency has Wrongly Withheld Records Under Exemption 3

FOIA Exemption 3 permits an agency to withhold responsive records "specifically exempted from disclosure by statute," if the statute

> (i) requires that the matters be withheld from the public in such a manner
> as to leave no discretion on the issue; or (ii) establishes particular criteria
> for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

Subsection (i) authorizes agency withholdings under the FOIA when a statute "absolutely forbid[s] disclosure" and leaves no discretion to the agency. *Westchester General Hospital, Inc. v. Department of Health, Education & Welfare*, 464 F. Supp. 236, 240 (M.D. Fla. 1979); *see also Wisconsin Project on Nuclear Arms Control v. U.S. Dept. of Commerce*, 317 F.3d 275, 280 (D.C. Cir. 2003) (finding that "only explicit *nondisclosure* statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exemption") (emphasis added). Statutes that provide a basis for Exemption 3 withholdings under Subsection (i) specifically identify the exempt documents, leaving no discretion to the agency. *E.g.* 42 U.S.C. § 2000e-5(b) (barring disclosure of "charges" filed in EEOC proceedings); 50 U.S.C. § 403g (prohibiting disclosure of "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [Central Intelligence] Agency.").

Subsection (ii) authorizes agency withholdings under the FOIA when a statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." A statute provides a basis for withholding under Subsection (ii) "if, but only if," the law "incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 629 (D.C. Cir. 1978). Statutes constitute a proper basis for Exemption 3 withholdings only when "Congress has itself made the basic decision, and has left to the administrator only the task of administration." *Kreps*, 574 F.2d  at 630. "A central aim of the Freedom of Information Act has been to

substitute legislative judgment for administrative discretion." *Times v. United States DOC*, 236 F.3d 1286, 1289 (11th Cir. 2001); *see also Wisconsin Project on Nuclear Arms Control v. U.S. Dept. of Commerce*, 317 F.3d 275, 280 (D.C. Cir. 2003)(finding that "Exemption 3 has evolved from its original text to require that Congress, not the agencies of the Executive Branch, determine the need for nondisclosure").

Exemption 3 is "explicitly confined to material exempted from disclosure 'by statute,'" and does not apply to non-statutory rules and regulations. *Founding Church of Scientology, Inc. v. Bell*, 603 F.2d 945, 952 (D.C. Cir. 1979) (rejecting Exemption 3 withholding based on non-statutory federal rules). An agency may not base an Exemption 3 withholding on a mere rule, even if the rule was issued "under rulemaking powers delegated by Congress." *Id.*

The DHS argues that one statutory provision, 49 U.S.C. §§ 114(r) and one regulation, 49 C.F.R. § 1520.5, justify its Exemption 3 withholdings in this case. Def. Motion for Summ. Judg. at 21. However, the statute does not "require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishe[] particular criteria for withholding or refer[] to particular types of matters to be withheld." And Section 1520.5 is a regulation, not a statute, and therefore fails to meet the threshold test for consideration as a basis for an Exemption 3 claim.

a.      *Section 114(r) Does Not Justify the DHS's Exemption 3 Withholdings*

The agency's summary judgment motion argues that Section 114(r) provides a basis for its Exemption 3 withholdings in this case. Def. Motion for Summ. Judg. at 18-23. However, Section 114(r) does not support the DHS's Exemption 3 claims because it grants the TSA unfettered discretion and fails to "establish particular criteria for

withholding or refer to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Indeed, Section 114(r) is exactly the sort of broad, vague, discretionary provision that Congress explicitly eliminated as a basis for Exemption 3 claims in the 1976 FOIA amendments.

Section 114(r) authorizes the TSA to issue regulations barring the disclosure of information "if the Under Secretary decides that disclosing the information would … be detrimental to the security of transportation." 49 U.S.C. § 114(r)(1)(C). The FOIA permits two types of statutes to provide a basis for an Exemption 3 withholding: 1) laws that "absolutely forbid disclosure," leaving no discretion to the agency; and 2) laws that "incorporate a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." *Westchester*, 464 F. Supp. at 240; *Kreps*, 574 F.2d at 629; *see* 5 U.S.C. § 552(b)(3)(i) and (ii). Section 114(r) plainly vests discretion in the TSA concerning what documents might be "be detrimental to the security of transportation." Therefore, Section 114(r) does not "absolutely forbid disclosure," leaving no discretion to the agency. Section 114(r) also fails to "establish particular criteria for withholding or refer to particular types of matters to be withheld."

The "particular criteria" language has been interpreted to limit Exemption 3 to statutes where "Congress has itself made the basic decision, and has left to the administrator only the task of administration." *Kreps*, 574 F.2d at 630. Exemption 3's "unmistakable thrust … is to assure that basic policy decisions on governmental secrecy be made by the Legislative rather than the Executive branch." *Id*. at 629. An agency may withhold records under the "particular criteria" standard "if, but only if, the [underlying

statute] is the product of congressional appreciation of the dangers inherent in airing particular data and *incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw.*" *Id.,* emphasis added.

Courts uphold Exemption 3 withholdings only if they are based on statutes that describe specific, narrow categories of documents. *See, e.g.*, *ACLU v. FBI*, 429 F. Supp. 2d 179, 189 (D.D.C. 2006) (providing that tax "returns and return information" are exempt under 26 U.S.C. § 6103(a)); *Irons & Sears v. Dann*, 606 F.2d at 1220 (upholding Exemption 3 claim based on 35 U.S.C. § 122, which provides "applications for patents shall be kept in confidence by the Patent and Trademark Office ..."). These statutes specifically describe records that are exempt from disclosure under the FOIA: tax returns and patent applications. They do not purport to exempt broad categories of records or give the agency broad authority to exempt records. These statutes provide clear guidelines for what documents may not be disclosed, and provide a proper basis for Exemption 3 withholdings.

Conversely, Section 114(r) is not particular enough to demonstrate that "Congress has itself made the basic decision, and has left to the administrator only the task of administration." Instead, the statute allows the TSA Administrator to "decide" that the release of any records in the agency's possession may be "detrimental to the security of transportation" and therefore to unilaterally exclude those records from disclosure. While Section 114 does identify a general danger that Congress seeks to prevent (threats to "security"), it lays out no specifics: it does not incorporate a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the

hazard that Congress foresaw. *Kreps*, 574 F.2d at 629. What constitutes a disclosure that is "detrimental to the security of transportation" is anyone's guess, and completely within the discretion of the Agency. No particular types of records (photographs or training manuals, for instance) are specified. In fact, the statute doesn't even explicitly prohibit disclosure of records – instead it only uses the broader term "information." The statute simply identifies a broad, general danger, and fails to enumerate what "information" should be withheld in order to mitigate that danger.

Moreover, the failure to comply with the FOIA's disclosure mandate may itself be "detrimental to the security of transportation" as the statute seeks to hold agency's accountable to the public for the fulfillment of its mission. It would be an unprecedented (b)(3) exemption that would allow the agency to exercise it own discretion as to which records it chooses to disclose under the FOIA concerning the fulfillment of its agency function.

The language of Section 114(r) exempts broad categories of records and gives the agency broad authority to exempt records when the TSA Administrator "decides that disclosing the information would … be detrimental to the security of transportation." Section 114(r) is more akin to the impermissibly vague language in *Administrator of FAA v. Robertson* than it is to the permissibly specific language *ACLU* and *Irons*.

Congress added Exemption 3's present-day "establish particular criteria" language in 1976 when it passed the Government by the Sunshine Act. *Irons & Sears v. Dann*, 606 F.2d 1215, 1219 (D.C. Cir. 1979). "Congress' goal was to legislatively overrule the Supreme Court decision *Administrator of FAA v. Robertson*, 422 U.S. 255 (1975)." *Irons & Sears*, 606 F.2d at 1219. *Robertson* upheld an Exemption 3 claim based

on Section 1104 of The Federal Aviation Act. 49 U.S.C. § 1104 (barring disclosure of information that "would adversely affect the interests of [the FAA] and is not required in the interest of the public."). Congress intended the "particular criteria" section of Exemption 3 to prevent courts from using similarly broad, vague statutes as bases for Exemption 3 claims. "The amended text and its legislative history make clear that Congress did not want the exemption to be triggered by every statute that in any way gives administrators discretion to withhold documents from the public." *Irons & Sears*, 606 F.2d at 1219. The legislative history of the 1976 FOIA amendments "expressly reveals Congress' intent to overturn *Robertson* and to narrow the scope of Exemption 3, thereby excluding from the exemption those statutes which permitted wholly discretionary non-disclosure." *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 615 (9th Cir. 1978). Section 114(r) is precisely the sort of broad statute that Congress excluded as a basis for Exemption 3 withholdings. The language would improperly "permit wholly discretionary non-disclosure," and is strikingly similar to the Section 1104 language that the post-*Robertson* FOIA amendments excluded as a basis for Exemption 3 withholdings. *Compare* Section 114(r) ("information [that] would … be detrimental to the security of transportation") *with* Section 1104 (information that "would adversely affect the interests of [the FAA].").

      b.      *Section 1520.5 Does Not Justify the DHS's Exemption 3 Withholdings*

The DHS Motion also contends that an agency regulation, 49 C.F.R. § 1520.5, justifies the agency's Exemption 3 withholdings. *E.g.* Def. Motion for Summ. Judg. at 21 ("DHS has withheld, as SSI, one picture of a 'scatter phantom image' generated by the

Rapiscan Secure 1000… This image constitutes SSI under C.F.R. § 1520.5(b)(9)(vi).").

Section 1520.5 describes fifteen categories of "sensitive security information." 49 C.F.R.

§ 1520.5. However, Section 1520.5 does not support the DHS's withholdings, because

agency regulations cannot serve as a basis for an Exemption 3 claim. Agency regulations

are not statutes. The plain language of the FOIA requires that Exemption 3 withholdings

be "specifically exempted from disclosure *by statute*." 5 U.S.C. § 52(b)(3) (emphasis

added). In *Bell*, the D.C. Circuit described the threshold test under Exemption 3 –

whether the purported basis for the withholding is a statute that was "affirmatively

adopted by the legislature, as all statutes must be." *Bell*, 603 F.2d at 952.

Indeed, *Bell* invalidated an Exemption 3 claim involving a rule that had a stronger

nexus to Congressional action than the regulation at issue here. *Bell* involved a challenge

to an Exemption 3 claim based on Rule 26(c) of the Federal Rules of Civil Procedure.

The rules are developed by the Supreme Court pursuant to Congress's statutory mandate,

but Congress retains authority to reject any proposed rule. 28 U.S.C. § 2072; *see also*

*Walko Corp. v. Burger Chef Systems*, 554 F.2d 1165, 1169 n29 (D.C. Cir. 1977)

("Congress' failure to suspend a proposed rule gives it the force not of a legislative

enactment, but of a regulation pursuant to the Act."). The D.C. Circuit noted that

although "proposed [Fed. R. Civ. P.] rules may be rejected by Congress," they "are

not affirmatively adopted by the legislature" and do not provide a basis for Exemption 3

withholdings. *Bell*, 603 F.2d at 952.

The connection of the agency's language in Section 1520.5 to the legislative

process is weaker than the rule at issue in *Bell*. Congress retained no authority concerning

the TSA's issuance of Section 1520.5. The regulation is purely a creature of

administrative action, not a statute "affirmatively adopted by the legislature." Indeed, the

DHS's own publications acknowledge that Section 1520.5 is not a statute. The agency's

annual FOIA report to the Attorney General lists all statutes the agency relied upon as

bases for Exemption 3 claims. DHS, *2009 Annual Freedom of Information Act Report to

the Attorney General of the United States*, Feb. 2010.[1] Section 1520.5 is absent. *Id.* at 4.

 The DHS Motion cites three district court cases in support of its contention that

Section 114(r) and Section 1520.5, or some combination thereof provide a statutory basis

for the agency's Exemption 3 withholdings. DHS Motion at 11. Yet two of the cited

authorities merely illustrate that the involved parties declined to litigate the issue. *EPIC v.

Dept. of Homeland Security* notes "[t]he plaintiff does not dispute the defendants' use of

these statutes in the Exemption 3 context." *EPIC v. Dept. of Homeland Security*, 384 F.

Supp. 2d 100, 110 n.10 (D.D.C. 2005). In *Gordon v. FBI*, the court noted that "[t]here is

no dispute that these statutes fall within Exemption 3." *Gordon v. FBI*, 390 F. Supp. 2d

897, 900 (N.D. Cal. 2004); *see also Sussman v. DOJ*, No. 03-3618, 2006 U.S. Dist.

LEXIS 75867 at *47 (E.D.N.Y. Sept. 30, 2006) ("Plaintiff expressly waived any

objections to documents redacted pursuant to § 552(b)(2) and (3).").

 The third authority, *Tooley v. Bush*, does not bind this Court. In *Tooley* the court

said that Section 114(r) is "a statute of exemption as contemplated by Exemption 3."

*Tooley v. Bush*, No. 06-306, 2006 U.S. Dist. LEXIS 92274 at *63 (D.D.C. Dec. 21,

2006). However, *Tooley* relied on *Public Citizen v. FAA,* a D.C. Circuit case that did not

involve the FOIA or the (b)(3) exemption, and *Gordon*, a California district court case in

which the parties did not dispute the applicability of Section 114(r). *Id.* at 64; *Public*

---

[1] *available at* www.dhs.gov/xlibrary/assets/foia/privacy_rpt_foia_2009.pdf.

*Citizen v. FAA*, 988 F.2d 186, 188 (D.C. Cir. 1993) ("petitioners challenge rules the [FAA] adopted pursuant to the Aviation Security Improvement Act of 1990, arguing that the rules, standing alone, are not detailed enough to satisfy ASIA" (internal citations omitted)); *Gordon*, 390 F. Supp. 2d at 900.

Moreover, in *Tooley* the court considered both "whether 49 U.S.C. § 114(s) is a 'statute of exemption as contemplated by exemption 3'" and " whether 'the withheld material satisf[ies] the criteria of the exemption statute." *Tooley* at *64. (internal citations omitted). Thus, in a case concerning access to records about the FBI's watch lists, the *Tooley* Court found that the "TSA watch lists are incorporated into Security Directives and Emergency Amendments issued to air carriers, and thus constitute SSI under 49 C.F.R. § 1520.5, which are exempt from disclosure under the FOIA."

EPIC's FOIA requests in this matter are for "(1) records concerning TSA tests regarding body scanners and radiation emission or exposure; and (2) All records concerning third party tests regarding body scanners and radiation emission or exposure." Unlike the watch lists at issue in *Tooley*, disclosure of information about the health risks of airport screening devices could not be objectively considered "detrimental to the security of transportation." It is only when the agency claims such authority through the issuance and interpretation of its own regulations, which Congress did not intend, that such results are possible.

## II.    The Agency has Wrongly Withheld Records Under Exemption 5

Exemption 5 allows an agency, if it so chooses, to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party

other than an agency in litigation with the agency.  5 U.S.C. § 552(b)(5). The exemption

is to be applied "as narrowly as consistent with efficient Government operation."

*Pub. Employees for Envtl. Responsibility v. U.S. Dept. of Interior,* CIV.A. 06-182(CKK),

2006 WL 3422484 (D.D.C. Nov. 28, 2006); S. Rep. No. 89-813 (1965).

　　　　To qualify, a document must satisfy two conditions: "its source must be a

Government agency, and it must fall within the ambit of a privilege against discovery

under judicial standards that would govern litigation against the agency that holds it."

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

　　　　a.　　　*The Documents Do Not Qualify for the Deliberative Process Privilege*
　　　　　　　　*Because They Contain Factual Information, Not Opinions,*
　　　　　　　　*Recommendations, or Deliberations*

In order for a document to be properly withheld under Exemption 5, "it must fall

within the ambit of a privilege against discovery under judicial standards that would

govern litigation against the agency that holds it." *Klamath Water Users*, 532 U.S. at 8.

Encompassed in Exemption 5 is the "deliberative process" privilege, which protects from

disclosure "documents reflecting advisory opinions, recommendations, and deliberations

that are part of a process by which governmental decisions and policies are formulated."

*Klamath Water Users,* 532 U.S. at 8. The purpose of the privilege is to protect "frank

discussions of legal or policy matters." *Environmental Protection Agency v. Mink*, 410

U.S. 73, 87, (1972) (finding that the justification for the deliberative process privilege is

that "[I]t would be impossible to have any frank discussions of legal or policy matters in

writing if all such writings were to be subjected to public scrutiny"); *Dow Jones & Co.,*

*Inc. v. Dept. of Justice*, 917 F.2d 571 (D.C. Cir. 1990) (confirming that "[w]e have said

that the purpose of Exemption 5 is to encourage the frank discussion of legal and policy issues") (internal citations omitted).

Under the deliberative process privilege, factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt. *Petroleum Info. Corp. v. U.S. Dept. of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992), *citing EPA v. Mink,* 410 U.S. at 87-91 (endorsing the fact/opinion distinction); *Quarles v. Department of Navy,* 893 F.2d 390, 392 (D.C. Cir.1990) (observing that "the prospect of disclosure is less likely to make an adviser omit or fudge raw facts, while it is quite likely to have just such an effect" on materials reflecting agency deliberations). "Purely factual reports and scientific studies cannot be cloaked in secrecy by an exemption designed to protect only 'those internal working papers in which opinions are expressed and policies formulated and recommended.'" *Bristol-Myers Company v. FTC,* 424 F.2d 935, 939 (D.C. Cir. 1970) (quoting *Ackerly v. Ley,* 420 F.2d 1336, 1341 (D.C. Cir.1969)).

The Supreme Court has upheld this distinction, recognizing that "Virtually all of the courts that have thus far applied Exemption 5 have recognized that it requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." *EPA v. Mink*, 410 U.S. at 89. The D.C. Circuit follows the fact / opinion distinction. *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 936 (D.C. Cir. 1982) (finding that the factual material in a government report was not protected under the deliberative process privilege and must be released); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858 (D.C. Cir. 1980) (holding that memoranda from regional counsel issued in response to requests for interpretations of regulations were not exempt under the deliberative process privilege

because they were "straightforward explanations of agency regulations"), and District of

Columbia courts have routinely held that factual materials are not protected from

disclosure under Exemption 5.  *See, e.g., Judicial Watch, Inc. v. U.S. Dept. of Treasury*,

CIV.A. 09-01508 BAH, 2011 WL 2678930 (D.D.C. July 11, 2011) (holding that headers

at the top of several sets of minutes were factual and, hence, segregable and must be

released); *CREW v. DHS,* 648 F. Supp. 2d 152 (D.D.C. 2009) (holding that documents

consisting of "factual information" must be disclosed because they were "quite plainly,

not recommendations, drafts, proposals, suggestions or the like, reflecting 'the personal

opinions of the writer,' nor do they reveal the 'give-and-take of the consultative process'"

and stating that "It is well-established that the deliberative process privilege generally

does not shield purely factual information from disclosure").

Courts have recognized that there is an important distinction between objective

facts and subjective opinions. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at

866 (D.C. Cir. 1980) (finding that "[t]he exemption thus covers recommendations, draft

documents, proposals, suggestions, and other subjective documents which reflect the

personal opinions of the writer").

The agency's own description of several withheld documents, detailed in Exhibit

1, indicates that they are clearly factual, not "advisory opinions, recommendations, and

deliberations that are part of a process by which governmental decisions and policies are

formulated." *Klamath Water Users,* 532 U.S. at 8. The agency is withholding "fact

sheets," Def. Motion for Summ. Judg. at 14, "preliminary testing results," Def. Motion

for Summ. Judg. at 16, and information "regarding types of dosimeters (personal

radiation monitors) that could be appropriate for measuring radiation from AIT devices,"

TSL Vaughn at Withheld in Full H. These withheld documents are clearly objective and factual in nature. The "fact sheet" is plainly descriptive and factual – it even contains "fact" in its title. "Preliminary testing results" are also factual – they are the scientifically discovered objective results of testing. The withheld information "regarding types of dosimeters" is similarly factual. Opinions related to these dosimeters may be withheld, but the factual information about what dosimeters are available may not. Defendant's expansion of this doctrine would include not only discussions of policy, "advisory opinions, recommendations, and deliberations," *Klamath Water Users,* 532 U.S. at 8, but would sweep in purely factual documents and information, contrary to case law and the stated purpose of the Exemption. *See Petroleum Info. Corp.*, 976 F.2d at 1434 (D.C. Cir. 1992); S. Rep. No. 89-813 (1965). This is, quite simply, not the purpose or scope of this privilege, as set out by the Supreme Court. *See Klamath Water Users,* 532 U.S. at 8.

> b.  *Draft Documents Withheld by DHS Do Not Qualify for the Deliberative Process Privilege Because the Agency has Failed to Identify a Final Decision or Document Associated with the Withheld Drafts*

The agency has wrongly withheld "draft" documents, detailed in Exhibit 1, under Exemption 5. Although an agency may properly withhold drafts pursuant to Exemption 5, the designation of a document as a "draft" does not automatically trigger proper withholding under Exemption 5. *Arthur Andersen & Co. v. Internal Revenue Serv.,* 679 F.2d 254, 257 (D.C.Cir.1982). The agency must demonstrate that a withheld document is "predecisional" and "deliberative." *Coastal States,* 617 F.2d at 866. But the document can lose its predecisional status "if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Id.*; *Defenders of Wildlife v. U.S. Dept. of Agric.,* 311 F. Supp. 2d 44, 58-59 (D.D.C. 2004).

When an agency uses the deliberative process privilege to withhold draft documents under Exemption 5, it must identify a corresponding final decision. *Exxon Corp. v. Dep't of Energy,* 585 F. Supp. 690, 698 (D.D.C. 1983) (holding that "where DOE has failed to identify a final document corresponding to a putative draft, the 'draft' shall be ordered produced to the extent that the agency has provided no basis for determining that it in fact has such status"); *Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F.Supp.2d 252, 264 (D.D.C.2004) (finding that an agency must identify the "final decisions or decisionmaking processes" to which a document contributed); *Mayer, Brown, Rowe & Maw LLP v. I.R.S.*, 537 F. Supp. 2d 128, 136 (D.D.C. 2008) *aff'd sub nom. Mayer Brown LLP v. I.R.S.,* 562 F.3d 1190 (D.C. Cir. 2009).

The agency has designated many documents as "drafts," without ever identifying a corresponding final version. *See* Exhibit 1. Even if the final documents were withheld, the agency still needs to identify the final document that corresponds to each "draft" withholding to establish the records were in fact "predecisional" and part of a "deliberative" process.

c.    *Even if the Court Finds that Portions of the Documents Are Protected Under the Deliberative Process Privilege, the Unprotected Factual Portions Are Segregable and Should Be Released*

Even if the agency establishes that it has properly withheld portions of these documents under FOIA Exemption 5, "it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Roth v. U.S. Dep't of Justice,* 642 F.3d 1161, 1167 (D.C. Cir. 2011); *North v. U.S. Dep't of Justice,* 774 F.Supp.2d 217, 222 (D.D.C.2011) (citing *Oglesby v. U.S. Dep't of the Army,* 79 F.3d 1172, 1178 (D.C. Cir. 1996)). The agency bears the burden of demonstrating that withheld documents

contain no reasonably segregable factual information. *Mokhiber v. U.S. Dept. of Treasury*, 335 F. Supp. 2d 65, 69 (D.D.C. 2004), *citing Army Times Pub. Co. v. Department of Air Force,* 998 F.2d 1067, 1068 (D.C. Cir. 1993); *Mead Data Central, Inc. v. U.S. Dept. of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). Here, the DHS has not clearly demonstrated in the Vaughn Index that the documents contain no reasonably segregable factual information.

Even if the Court finds that portions of these records contain "advisory opinions, recommendations, and deliberations that are part of a process by which governmental decisions and policies are formulated," *Klamath Water Users,* 532 U.S. at 8, all segregable factual portions of the records must still be released. *See Roth v. U.S. Dep't of Justice,* 642 F.3d at 1167. As discussed above, the Vaughn Index presented by the Defendant contains many references to information that is most likely factual. Thus, even if the Court finds that there is a section of the "preliminary testing results," for example, that contains an advisory opinion regarding what the agency should do about those results, the agency must still disclose the underlying factual information: the actual test results in the possession of the agency sought by EPIC.

## III.    The Agency has Wrongly Withheld Records Under Exemption 4

The Defendant has wrongly withheld information under Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). In order to qualify for this exemption, the information must meet all three requirements.

For several withheld documents, detailed in Exhibit 1, the agency has failed to satisfy the requirement that withheld information be "obtained from a person." 5 U.S.C. §

552(b)(4). As the agency concedes in its Motion for Summary Judgment, "courts… have

read the requirement that information be 'obtained from a person' to restrict the

exemption's application to data which have not been generated within the government."

Def. Motion for Summ. Judg. at 29; *See also In Def. of Animals v. Nat'l Institutes of*

*Health*, 543 F. Supp. 2d 83, 103 (D.D.C. 2008) (holding that "[t]he Court concludes that

the incentive award amounts requested by Plaintiff were not "obtained from a person"

such that FOIA Exemption 4 is inapplicable, as Defendants have nowhere demonstrated

that the contractor was the source of the information in the first instance and not the

agency"); *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360, 99

S. Ct. 2800, 2812, 61 L. Ed. 2d 587 (1979) (finding that "Exemption 4, however, is

limited to information 'obtained from a person,' that is, to information obtained outside

the Government").

    The agency goes on to cite a variety of (mostly non-binding) court decisions

which support the application of Exemption 4 to certain pieces of information contained

within government produced documents. Def. Motion for Summ. Judg. at 29. However,

the agency's description of its withheld documents is telling: "Here the information

withheld under Exemption 4 in the five government or government-sponsored reports

referenced above is *derived from* information and materials submitted by the vendors…"

Def. Motion for Summ. Judg. at 29 (emphasis added). In the two D.C. Circuit cases that

the Defendant cites, the information being withheld was information directly submitted

by persons outside of the government to the government. It was not, in fact, the dramatic

expansion of Exemption 4 that the agency is now proposing. *See Soucie v. David*, 448

F.2d 1067, 1079 (D.C. Cir. 1971) (finding that information was "eligible for this

exemption [4] only to the extent it contains private information given confidentially by panel members or information obtained from nongovernmental parties on a confidential basis"); *Gulf & W. Indus., Inc. v. U. S.,* 615 F.2d 527, 530 (D.C. Cir. 1979) (finding that the agency had properly withheld portions of the report contained information supplied by an outside person and "Therefore, the release of this information would disclose data supplied to the government from a person outside the government").

The agency is now attempting to withhold the results of safety studies on the basis that these safety studies were conducted using materials submitted by vendors. Def. Motion for Summ. Judg. at 29. It cites no case law that supports this expansion of Exemption 4, because there is no case law that allow the withholding of a government radiation safety study on the basis that the study was "*derived from*…materials submitted by vendors." *Id.* (emphasis added). The agency needed to have body scanner machines in order to evaluate those same machines. The agency conducted its own evaluations and published this report. The report contains information produced by the agency itself. This is dramatically different than the type of information courts have routinely permitted agencies to withhold under Exemption 4, that is: commercial or financial information obtained from a person. 5 U.S.C. § 552(b)(4).

## IV.    EPIC Is Entitled to Recover Its Costs and Fees

### a.    *EPIC "Substantially Prevailed" by Forcing Disclosure of DHS Records*

Irrespective of the outcome of the parties' cross-motions for summary judgment, EPIC is entitled to recover its fees and costs from the DHS in this matter. EPIC asks the Court to enter judgment as to EPIC's eligibility and entitlement to fees and to order further briefing as to the amount of costs and fees. "The court may assess against the

United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). "A complainant has substantially prevailed if the complainant has obtained relief through … a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. The determination of whether the plaintiff has "substantially prevailed" is "largely a question of causation." *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984); *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). The key inquiry is "did the institution and prosecution of the litigation cause the agency to release the documents obtained during the pendency of the litigation?" *Church of Scientology*, 653 F.2d at 587.

EPIC has already "substantially prevailed" in this lawsuit. As described above and in the Defendant's Motion for Summary Judgment, EPIC filed its FOIA request concerning body scanners on July 13, 2010. On August 27, 2010 EPIC filed an administrative appeal with the TSA, challenging the agency's denial of fee waiver and expedited processing. On October 21, 2010, EPIC filed a second administrative appeal with TSA, this time challenging the TSA's wrongful withholding of documents and reiterating its challenge of the agency's denial of fee waiver. On October 21, 2010, EPIC filed an administrative appeal with S&T appealing the agency's wrongful withholding of documents and denial of fee waiver. On November 19, 2010, EPIC filed this lawsuit challenging the agency's wrongful withholding of documents.

On June 6, 2011, subsequent to the filing of this lawsuit, TSA produced 126 pages of responsive documents. On June 21, 2011, TSA produced an additional 69 pages and S&T produced 1,677 pages of responsive documents. On September 7, 2011, the agency

released an additional 208 pages of documents. "The institution and prosecution" of this suit plainly "cause[d] the agency to release the documents obtained during the pendency of the litigation."

      *b.*    *The Court Should Award EPIC Costs and Fees In This Case*

"The court should consider [four factors] in determining the appropriateness of an award of costs and attorney fees." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977). The four factors are: 1) "the benefit to the public, if any, deriving from the case;" 2) "the commercial benefit of the complainant;" 3) "the nature of [the complainant's] interest in the records sought"; and 4) "whether the government's withholding of the records sought had a reasonable basis in law." H. Comm. on Gov't Operations and S. Comm. on the Judiciary, 94th Cong., *Freedom of Information Act and Amendments of 1974 (Pub. L. No. 93-502) Source Book,* 189-90 (J. Comm. Print 1975). "Public benefit" can be demonstrated by a "newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefitting the general public." *Davy v. C.I.A.*, 550 F.3d 1155, 1158 (D.C. Cir. 2008). The "public benefit" factor supports an award where the complainant's victory is "likely to add to the fund of information that citizens may use in making in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citations omitted). D.C. District Court has found that news media coverage is relevant for determining "public benefit." *Elec. Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec.,* 2011 WL 4014308 (D.D.C. Sept. 12, 2011).

EPIC's FOIA suit provided substantial benefit to the public. EPIC maintains two of the most popular websites in the world - www.epic.org and www.privacy.org - for

searches on the term "privacy." EPIC disseminated the agency records it received on its

www.epic.org web site[2] and to the approximately 8,000 recipients of its bi-weekly

newsletter.[3] EPIC's FOIA work in this matter was prominently featured in *Time*

*Magazine*:

> Now, the Washington-based Electronic Privacy Information Center (EPIC) has
> obtained documents from the Department of Homeland Security, which EPIC
> says provide evidence that the government failed to properly test the safety of
> full-body scanners at airports, and dismissed concerns from airport agents about
> excessive exposure to the machines' radiation.
>
> The documents, which include emails, radiation test results and radiation studies,
> were obtained through a Freedom of Information Act lawsuit filed by EPIC and
> released on June 24. The advocacy group says they indicate that Homeland
> Security "publicly mischaracterized" safety findings by the National Institute of
> Standards and Technology (NIST), by suggesting that NIST had "affirmed the
> safety" of full body scanners.

Frances Romero, "Did Airport Scanners Give Boston TSA Agents Cancer," *Time*, June

30, 2011.[4] Other news organizations reported on the documents EPIC obtained, as well.

*See, e.g.,* Sara J. Welch, "Airport Body Scanners and Health," *New York Times,* July 12,

2011; Kate Taylor, "TSA 'ignored warnings' on cancer cluster," *TG Daily*, June 28,

2011.[5]

　　"Commercial benefit to the complainant" might preclude an award if the

beneficiary is a "large corporate interest (or a representative of such an interest)."

*Freedom of Information Act and Amendments of 1974 Source Book* at 171. However,

commercial benefit does not bar recovery "where the complainant was indigent or a

---

[2] http://epic.org/2011/08/documents-reveal-new-details-a.html
[3] http://epic.org/alert/epic_alert_1818.html
[4] http://healthland.time.com/2011/06/30/did-airport-scanners-give-boston-tsa-agents-cancer/#ixzz1c6bhX5ZL
[5] http://www.tgdaily.com/hardware-features/56899-tsa-ignored-warnings-on-cancer-cluster

nonprofit public interest group." *Id.* In fact, nonprofit organizations are "the sort of requester that Congress intended to recover attorney's fees under FOIA." *Elec. Frontier Found. v. Office of the Director of National Intelligence*, 2008 WL 2331959 (N.D. Cal. June 4, 2008). EPIC is a 501(c)(3) non-profit public interest research center. EPIC derived no commercial benefit from its FOIA request or lawsuit. The sole benefit was derived by the public, which benefited from the disclosure of the body scanner documents released in this case.

The "nature of the [complainant's] interest" factor is "closely related [to] and often considered together" with the commercial benefit criterion. *Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) Favored interests are "scholarly, journalistic or public-interest oriented." *Freedom of Information Act and Amendments of 1974 Source Book* at 171. *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was held "wrong as a matter of law and an abuse of discretion."). As set forth above, EPIC's interest in this matter is squarely within the "scholarly, journalistic or public-interest oriented" interests favored by the statute. *See, e.g., Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.,* 760 F. Supp. 2d 4, 44 (D.D.C. 2011) ("[EPIC's] aims, which include dissemination of information regarding privacy issues to the public, . . . fall within the scholarly and public-interest oriented goals promoted by FOIA, . . .")

The DHS did not have a "reasonable legal basis" for failing to disclose records to EPIC. The DHS's delay in replying to EPIC's request and appeal plainly violated the FOIA's statutory deadlines. *See* 5 U.S.C. § 552(a)(6)(A). As described in EPIC's Complaint, the DHS violated statutory deadlines by failing to make a timely

determination concerning EPIC's administrative request and appeals. Compl. at ¶¶50-58. The DHS has cited no legal basis in opposition to EPIC's claims regarding the untimeliness of the agency's response. An agency's representation that records were not produced more quickly due to processing backlogs, confusion, and administrative error are "practical explanations, not reasonable legal bases" for withholding. *Miller v. Dep't of State*, 779 F.2d 1378, 1390 (8th Cir. 1985). "The FOIA does not contain a statutory exception for administrative inefficiency. When a private citizen is obliged to seek legal services in order to wrest from the government information which the government had no legal reason to withhold from him, he is entitled under the Act to be reimbursed for the cost to which he has been put." *Id.* Nor did DHS cite any legal basis for withholding the more than 2,000 pages of documents that it later disclosed between June 2011 and September 2011.

In this case, EPIC was forced to sue the DHS in order to wrest from the government critical information concerning the DHS' mobile body scanner program. The DHS had no reason or legal basis to withhold these records. The agency must reimburse EPIC for its costs and fees.

## **CONCLUSION**

As discussed above, Defendant's Motion for Summary Judgment should be denied as to the specified withholdings under Exemptions 3,4, and 5. In addition, Plaintiff is entitled to recover its costs and fees because it has "substantially prevailed" in this case regardless of the outcome of the parties' cross-motions for summary judgment.  A proposed Order is attached.

Respectfully submitted,

_____/s/ Ginger McCall_____
MARC ROTENBERG
JOHN VERDI
GINGER MCCALL
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*

Dated: October 31, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2011, I served the foregoing
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, including all exhibits
and attachments, by electronic case filing upon:

> TONY WEST
> Assistant Attorney General
> U.S. Department of Justice
>
> JESSE GRAUMAN
> U.S. Department of Justice
> Civil Division, Federal Programs Branch

_____ /s/ Ginger McCall_____
Ginger McCall
*Counsel for Plaintiff*