## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
ELECTRONIC PRIVACY INFORMATION CENTER, )
)
            Plaintiff, )
)
      v. ) Case No. 1:10-cv-1992 (ABJ)
)
THE UNITED STATES DEPARTMENT OF )
HOMELAND SECURITY, )
)
           Defendant. )
_____ )

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Defendant United States Department of Homeland Security ("DHS") respectfully submits

this combined Reply in support of its Motion for Summary Judgment (ECF No. 9) and

Opposition to Plaintiff Electronic Privacy Information Center's ("EPIC's") Cross-Motion for

Summary Judgment (ECF No. 11).[1]

## INTRODUCTION

This action is a Freedom of Information Act ("FOIA") case stemming from a FOIA

request made by EPIC for documents concerning tests for "radiation emission or exposure"

related to advanced imaging technology ("AIT"), a new screening technology that is being used

by DHS's component, the Transportation Security Administration ("TSA") at United States

commercial airports.  The merits of the case are ripe for summary judgment, as there are no

disputes of material fact and EPIC does not contest the scope of DHS's search for responsive

---

[1] Because this brief serves not only as a reply brief in support of DHS's summary judgment motion but as a memorandum in opposition to EPIC's motion (including EPIC's motion for attorneys' fees, which could not have been addressed in DHS's own summary judgment motion), it complies with the greater of the two page limitations specified in Local Civil Rule 7(e), i.e., the limit for a memorandum in opposition to a dispositive motion.

documents.  EPIC has also conceded many of DHS's withholdings pursuant to FOIA's statutory

exemptions.  Its brief challenges only certain withholdings made under Exemptions 3, 4, and 5 of

FOIA.  As demonstrated in DHS' opening brief and the attached declarations and <u>Vaughn</u>

indices, DHS's withholdings were proper under the relevant exemptions.   Finally, EPIC's

request that the Court rule that it is eligible for, and entitled to, attorney's fees and costs should

be denied as premature.

<u>**ARGUMENT**</u>

I.    **EPIC HAS CONCEDED THE SUFFICIENCY OF THE SCOPE OF DHS'S SEARCH AND THE PROPRIETY OF ALL WITHHOLDINGS IT HAS NOT SPECIFICALLY CHALLENGED.**

DHS should be granted summary judgment on all issues except for those expressly

contested by EPIC in its opposition brief.  <u>See</u> <u>Elec. Privacy Info. Ctr. v. U.S. Dep't of</u>

<u>Homeland Sec.</u>, 760 F. Supp. 2d 4, 8 n.3 (D.D.C. 2011) (Urbina, J.) (granting summary judgment

to defendant agency in FOIA case with regard to withholdings plaintiff did not specifically

challenge) (citing <u>Buggs v. Powell</u>, 293 F. Supp. 2d 135, 141 (D.D.C. 2003)); <u>Franklin v. Potter</u>,

600 F. Supp. 2d 38, 60 (D.D.C. 2009) (treating defendant's argument in summary judgment

motion as conceded where plaintiff failed to address it in plaintiff's response); <u>Hopkins v.</u>

<u>Women's Div., General Bd. of Global Ministries</u>, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is

well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion

and addresses only certain arguments raised by the defendant, a court may treat those arguments

that the plaintiff failed to address as conceded."), <u>aff'd</u>, 98 F. App'x 8 (D.C. Cir. 2004); <u>Bancoult</u>

<u>v. McNamara</u>, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a

responsive memorandum, but fails to address certain arguments made by the moving party, the

court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

In its opening brief, DHS moved for summary judgment on the sufficiency of the scope of its search for responsive documents, and on the withholdings that EPIC had not previously agreed not to contest.[2]  See generally Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") (ECF No. 9).  EPIC's opposition brief does not contest the scope of search, and challenges only certain withholdings, which it has listed in an attached exhibit.  See generally Pl.'s Mem. of P.& A. (ECF Nos. 11-1; 12) ("Pl.'s Mem.") & Ex. 1 (ECF Nos. 11-5, 12-4).[3]  Thus, EPIC has conceded any arguments as to the adequacy of DHS's search and all withholdings other than those it has specifically challenged.  Accordingly, summary judgment should be granted to Defendant on all of the conceded issues.

## II.     TSA'S WITHHOLDINGS WERE PROPER.

### A.  TSA's Withholdings Were Proper Pursuant to FOIA Exemption 3.

As noted in Defendant's opening brief, Exemption 3 of FOIA permits an agency to withhold information that is:

specifically exempted from disclosure by statute . . . if that statute

(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

---

[2] As outlined in DHS's opening brief, EPIC agreed not to contest some of DHS's withholdings after viewing a draft Vaughn index in advance of Defendant's filing of its motion for summary judgment.  See Def.'s Mem. at 14, 23-24, & Ex. 9.

[3] For the Court's convenience, three limited Vaughn indices are attached as exhibits to this memorandum.  See Exs. 1-3.  These limited indices are simply excerpts from the larger Vaughn indices attached by Defendant to its original summary judgment brief, limited to the specific challenged exemptions and withholdings listed in Exhibit 1 to EPIC's summary judgment motion.  See ECF Nos. 11-5, 12-4.  The descriptions of, and justifications for, for the challenged withholdings have not been altered in any respect.

(B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

The Exemption 3 statute applicable here is 49 U.S.C. § 114(r), and specifically, § 114(r)(1)(C). This statute states as follows:

(r) Nondisclosure of Security Activities.

(1) In general.  Notwithstanding section 552 of title 5, the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107–71) or under chapter 449 of this title if the Under Secretary decides that disclosing the information would—

(A) be an unwarranted invasion of personal privacy;

(B) reveal a trade secret or privileged or confidential commercial or financial information; or

(C) be detrimental to the security of transportation.

As set forth in DHS's opening brief and in the Declaration of Paul Sotoudeh, DHS withheld certain limited excerpts of responsive records under Exemption 3 because their disclosure would be "detrimental to the security of transportation," 49 U.S.C. § 114(r)(1)(C), and because these records were encompassed by specific provisions of the sensitive security information ("SSI") regulations promulgated by TSA pursuant to its authority under 49 U.S.C. § 114(r).  See 49 C.F.R. § 1520.5; Def.'s Mem. at 18-23; Sotoudeh Decl. ¶¶ 37-41.[4]

---

[4] The cited pages of DHS's opening brief and the cited paragraphs of the Sotoudeh Declaration explain the applicability of the various provisions of 49 C.F.R. § 1520.5 to the withheld records. Because EPIC has not challenged the applicability of the regulatory provisions, they are not restated here in detail.

EPIC does not attempt to dispute that the withheld records are encompassed by the SSI

statute and its regulations.[5]  Rather, EPIC asserts that the statute and regulations, as a matter of

law, do not justify withholding records under FOIA.  Pl.'s Mem. at 5-14.  This argument is

refuted by both the plain text of the statute and cases from this and other circuits.

First, EPIC argues that Congress did not mean to authorize DHS to withhold SSI from a

FOIA request, despite section 114(r)'s explicit prohibition on the disclosure of SSI

"[n]otwithstanding section 552 of title 5."  49 U.S.C. § 114(r)(1).  It is difficult to imagine how

Congress could have been clearer that 114(r) supersedes FOIA as to information falling within

its scope.[6]  Accord Energy Transp. Group, Inc v. Skinner, 752 F. Supp. 1, 10 (D.D.C. 1990)

("[T]he phrase 'notwithstanding any other provision of law,' or a variation thereof, means

exactly that; it is unambiguous and effectively supersedes all previous laws.").  This language

plainly demonstrates that section 114(r) is intended to serve as an Exemption 3 statute and to

supersede FOIA's disclosure requirements.  See Tooley v. Bush, No. 06-306, 2006 WL 3783142,

at *20 (D.D.C. Dec. 21, 2006), aff'd,[7] Tooley v. Napolitano, 586 F.3d 1006 (D.C. Cir. 2009).

Indeed, EPIC does not even attempt to explain what else Congress could have meant when it

---

[5] Indeed, pursuant to the jurisdictional bar at 49 U.S.C. § 46110, Plaintiff cannot challenge TSA's designations of material as SSI except in a petition for review in a Court of Appeals.  See Def.'s Mem. at 19-21.

[6] FOIA is a statute , not a constitutional provision; accordingly, the extent to which it is affected by, or affects, other statutes is a matter of ordinary statutory interpretation.  Here, the prohibition on release of SSI was enacted in 2002, long after the enactment of FOIA.  See Homeland Security Act of 2002, Pub. L. No. 107-296, § 1601, 116 Stat. 2135, 2312 (2002) (enacted as 49 U.S.C. §114(s)).  Moreover, by referencing FOIA explicitly, the SSI statute's express modification of FOIA's disclosure requirements relating to SSI plainly satisfies the presumption against modification of FOIA.  See 5 U.S.C. § 559 ("Subsequent statute may not be held to supersede or modify this subchapter . . . except to the extent that it does so expressly."); see also Church of Scientology of Cal. v. IRS, 792 F.2d 146, 149 & n.2 (D.C. Cir. 1986) (noting that Congress may still repeal or modify FOIA without doing so expressly, but holding that provision that did not specifically reference FOIA did not supersede FOIA).

[7] The FOIA claim in Tooley was not appealed.  See Tooley v. Napolitano, 586 F.3d at 1008.

explicitly used the phrase "[n]otwithstanding section 552 of title 5" in the SSI statute.  Quite

simply, this language eliminates any possibility that § 114(r) must yield in the face of any of

FOIA's disclosure requirements.  Sensitive security information was properly withheld in light

of the unambiguous Congressional command that SSI may not be disclosed, under FOIA or

otherwise.

Not only is this provision clear on its face, the D.C. Circuit has already noted that

virtually identical language in a different provision "clearly and unambiguously . . . trumps

FOIA's disclosure requirements."   Pub. Citizen v. FAA, 988 F.2d 186, 194 (D.C. Cir. 1993); see

also id. at 195 ("[W]e conclude unmistakably that Congress intended to allow the FAA to

withhold from public disclosure information falling within § 1357(d), whether or not FOIA is

invoked.") (emphasis added); id. ("Where disclosure of information specified in § 1357(d)(2)

and the FAA's implementing regulations would jeopardize passenger safety, Congress clearly

intended for the FAA to be able to withhold such information under § 1357(d)(2)."); id. at 195-

96 ("[Section] 1357(d)(2) allows the FAA to withhold security-sensitive information from

members of the public, regardless of the legal basis of the request for the information."); id. at

195 (noting that Congress' clear intent in enacting this provision was "to broaden the FAA's

power to withhold sensitive information, not to limit that power") (emphasis in original).  The

provision at issue in Public Citizen is materially indistinguishable from 49 U.S.C. § 114(r):

Provision in Public Citizen:
Notwithstanding section 552 of Title 5 relating to freedom of information, the Administrator [of the FAA] shall prescribe such regulations as he may deem necessary to prohibit disclosure of any information obtained or developed in the conduct of security or research and development activities under this subchapter if, in the opinion of the Administrator, the disclosure of such information— . . . (C) would be detrimental to the safety of persons traveling in air transportation.

Provision relied upon by TSA here:
Notwithstanding section 552 of title 5, the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107-71) or under chapter 449 of this title if the Under Secretary decides that disclosing the information would—. . . (C) be detrimental to the security of transportation.

49 U.S.C. § 1357(d)(2) (1993) (later recodified at 49 U.S.C. § 40119(b)).

49 U.S.C. § 114(r)(1).

See also Tooley, 2006 WL 3783142, at *20 (finding that § 114(r) is an Exemption 3 statute, noting that it is "almost verbatim" identical to § 1357(d)(2)). EPIC offers no reason why section 114(r) should be viewed differently,[8] and there is none. Congress's use of similar clear language compels the same conclusion: this information is exempt from disclosure under FOIA.

Nonetheless, EPIC argues that section 114(r) cannot justify withholding the information at issue under Exemption 3, and specifically under 5 U.S.C. § 552(b)(3)(A)(ii), because, according to EPIC, it does not "establish[] particular criteria for withholding or refer[] to

---

[8] EPIC briefly seeks to distinguish Public Citizen by asserting that it "did not involve the FOIA or the (b)(3) exemption." Pl.'s Mem. at 13. This distinction is both misleading and immaterial. Although it is true that the specific issue confronting the court in Public Citizen was not whether the provisions of § 1357(d)(2) superseded FOIA, the court recognized that this question was "clear[] and unambiguous[]." Pub. Citizen, 988 F.2d at 194. Rather, at issue in that case was whether § 1357(d)(2), in addition to allowing the FAA to withhold the information in question in response to a FOIA request, permitted such withholding in other contexts as well. See id. at 194-95. On that issue, the Court also ruled in the FAA's favor, finding that § 1357(d)(2) granted the FAA such authority. See id. at 195-96. Thus, the particular posture of Public Citizen in no way minimizes the import of the court's finding in that case that a statute virtually identical to § 114(r) "trump[ed] FOIA's disclosure requirements." Id. at 194.

particular types of matters to be withheld." Pl.'s Mem. at 7-8.[9]  This argument is inconsistent

with the case law on Exemption 3.  Statutes found to be too vague to fit within 5 U.S.C.

§ 552(b)(3)(A)(ii) are those that "permit[] wholly discretionary non-disclosure."  Lee

Pharmaceuticals v. Kreps, 577 F.2d 610, 615 (9th Cir. 1978).  Examples of such statutes include

the one at issue in Administrator v. Robertson, 422 U.S. 255 (1975), superseded by statute as

stated in Nat'l Parks and Conservation Ass'n v. Kleppe, 547 F.2d 673, 687 (D.C. Cir. 1976),

which permitted an agency to consider the "interests of [any person objecting to disclosure]" and

the "interest of the public" when making a disclosure decision, as well as the one at issue in

American Jewish Congress v. Kreps, 574 F.2d 624 (D.C. Cir. 1978), which prohibited disclosure

of certain information "unless the head of such department or agency determines that the

withholding thereof is contrary to the national interest."  Am. Jewish Cong., 574 F.2d at 626

(citing 50 U.S.C. App. § 2406(c) (1970)).

Unlike these statutes, 49 U.S.C. § 114(r) refers to "particular types of matters to be

withheld" by outlining three specific concerns that warrant the withholding of information – the

invasion of personal privacy, the disclosure of confidential business information, and detriment

to transportation security.  It authorizes the TSA Administrator to prohibit disclosure of

information in those three categories only.   This particularity is similar to that of other

Exemption 3 statutes, including a provision recently found by the D.C. Circuit to be an

Exemption 3 statute that permitted withholding "whenever and to the extent it is determined by

the President or his designee that the disclosure of matters involved in the Committee's

proceedings would compromise the Government's negotiating objectives or bargaining positions

---

[9] EPIC does not, and cannot, argue that § 114(r) was "enacted after the date of enactment of the
OPEN FOIA Act of 2009," 5 U.S.C. § 552(b)(3)(B), given that 114(r) (originally § 114(s)) was
enacted in 2002.  See Homeland Security Act of 2002, Pub. L. No. 107-296, § 1601, 116 Stat.
2135, 2312 (2002).

on the negotiations of any agreement authorized by this chapter." <u>Ancient Coin Collectors Guild v. U.S. Dep't of State</u>, 641 F.3d 504, 510-11 (D.C. Cir. 2011) (quoting 19 U.S.C. § 2605(h)).  In fact, the court in <u>American Jewish Congress</u>, a case relied on by EPIC, cited a statute with wording similar to that of § 114(r) as a hallmark of an Exemption 3 law.  <u>See</u> <u>Am. Jewish Cong.</u>, 574 F.2d at 629 (citing 42 U.S.C. s 2162(a) (1970), which directed that information be released only if it "can be published without undue risk to the common defense and security," as a proper Exemption 3 statute).  The criterion set forth in 49 U.S.C. § 114(r)(1)(C), which empowers the TSA Administrator to determine which information is "detrimental to the security of transportation," is certainly no less "particular" than a provision regarding "undue risk to the common defense and security."[10]

Thus, contrary to EPIC's contention, § 114(r) does not "grant[] the TSA unfettered discretion."  Pl.'s Mem. at 7.  Rather, it delineates specific categories of information that Congress determined should not be disclosed, and delegates to the TSA Administrator the authority to determine which documents fall into these categories.

In light of the unambiguous language of § 114(r), it is unsurprising that every single Court – including this Court – that has considered the statute in the context of FOIA has

---

[10] <u>Accord</u> <u>CIA v. Sims</u>, 471 U.S. 159, 167 (1985) (finding that "[s]ection 102(d)(3) of the National Security Act of 1947, which calls for the Director of Central Intelligence to protect 'intelligence sources and methods,' clearly 'refers to particular types of matters,' and thus qualifies as a withholding statute under Exemption 3"); <u>Nat'l Inst. of Military Justice v. DOD</u>, 404 F. Supp. 2d 325, 335-37 (D.D.C. 2005) (applying Exemption 3 to 10 U.S.C. § 130c, which permitted withholding information provided by foreign governments if disclosure "would have an adverse effect on the ability of the United States Government to obtain the same or similar information in the future"), <u>aff'd on other grounds</u>, 512 F.3d 677 (D.C. Cir. 2008); <u>Hornbostel v. U.S. Dep't of the Interior</u>, 305 F. Supp. 2d 21, 30 (D.D.C. 2003) (concluding Exemption 3 applied to 16 U.S.C. § 5937, which permitted agency to withhold information regarding "rare or commercially valuable" resources located on public land), <u>summarily aff'd</u>, 2004 WL 1900562 (D.C. Cir. Aug. 25, 2004); <u>Colonial Trading Corp. v. Dep't of Navy</u>, 735 F. Supp. 429, 431 (D.D.C. 1990) (statute permitting withholding of "technical data with military or space application" is "clearly an exemption 3 statute").

concluded that it authorizes TSA to withhold information specified in the statute and its

regulations.  See Tooley, 2006 WL 3783142, at *20; Elec. Privacy Info. Ctr. v. Dep't of

Homeland Sec., 384 F. Supp. 2d 100, 110 n. 10 (D.D.C. 2005) (Urbina, J.); Gordon v. F.B.I., 390

F. Supp. 2d 897, 900 (N.D. Cal. 2004).  Plaintiff's efforts to distinguish these cases are

unconvincing.  Indeed, that the parties in two of those cases, Electronic Privacy Information

Center and Gordon, did not dispute whether 49 U.S.C. § 114(r) was an Exemption 3 statute

merely underscores just how "clear[] and unambiguous[]" § 114(r) is.[11]

       EPIC also mischaracterizes DHS's position by stating that "[t]he DHS Motion also

contends that an agency regulation, 49 C.F.R. § 1520.5, justifies the agency's Exemption 3

withholdings."  Pl.'s Mem. at 11 (citing Def.'s Mem. at 21).  Defendant has not argued that

TSA's regulations, standing alone, can justify withholding information under FOIA's Exemption

3.  Rather, 49 U.S.C. § 114(r) is the statute on which TSA bases its withholdings, and the TSA

Administrator – as required by the statute – has "prescribe[d] regulations prohibiting the

disclosure of information obtained or developed in carrying out security."  49 U.S.C. § 114(r)(1);

see also 49 C.F.R. § 1520.5(a) (stating that SSI is being defined "[i]n accordance with 49 U.S.C.

114([r])"[12]).  These implementing regulations identify in detail the types of information that, in

TSA's determination, implicate the three concerns – privacy, confidential business information,

and transportation security – that Congress articulated when it enacted § 114(r).  Thus, the

implementing regulations, together with the statute, justify the withholdings.  See Pub. Citizen,

_____

[11] As noted above, EPIC's argument that the Court should disregard the well-reasoned conclusion in Tooley because Tooley relied on Public Citizen, which "did not involve a FOIA request," is misplaced.  See supra at 7 n.8.

[12] As explained in Defendant's opening brief, see Def.'s Mem. at 19 n.6, 20 n.7, 49 U.S.C. § 114(s) was subsequently redesignated as § 114(r) but otherwise unchanged, but the implementing regulations continue to cite to § 114(s).  See Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, Div. E, § 568(a) (2007)

988 F.2d at 195 (explaining that § 1357(d)(2) properly authorized the FAA to prohibit disclosure "[w]here disclosure of information specified in § 1357(d)(2) <u>and the FAA's implementing regulations</u> would jeopardize passenger safety") (emphasis added).

As DHS demonstrated in its opening brief, and as EPIC has not disputed, the two withholdings challenged by EPIC plainly fall under § 114(r) and its implementing regulations. The first challenged withholding is a "scatter phantom image" generated by a TSA scanner whose disclosure could provide insight into the screening capabilities and limitations of the Rapiscan Secure 1000, an AIT system used by TSA.  <u>See</u> TSA <u>Vaughn</u> at 92; Sotoudeh Decl. ¶ 41(a).  The second challenged withholding is an excerpt from an email describing a phenomenon observed while performance-testing the Rapiscan Secure 1000 that could be used to identify a potential vulnerability in the system.  <u>See</u> TSL <u>Vaughn</u> at 836-37, Sotoudeh Decl. ¶ 41(c).  TSA designated these excerpts as SSI based on a determination that disclosure would be detrimental to transportation security, <u>see</u> Sotoudeh Decl. ¶ 41, and both fall within the definition of SSI under regulatory provisions enacted pursuant to TSA's authority under § 114(r).  <u>See</u> 49 C.F.R. §§ 1520.5(b)(9)(vi) (defining SSI to include "[a]ny electronic image shown on any screening equipment monitor, including threat images and descriptions of threat images for threat image projection systems"); 1520.5(b)(9)(v) (designating as SSI "performance or testing data from security equipment or screening systems").  They are therefore exempt from disclosure, "notwithstanding [FOIA]," pursuant to 49 U.S.C. § 114(r).

Finally, EPIC briefly argues that disclosure of these excerpts "could not be objectively considered 'detrimental to the security of transportation'" simply because they were produced in response to a FOIA request concerning "radiation emission or exposure."  Pl.'s Mem. at 14.  This argument deserves only passing mention.  EPIC has requested information concerning

sophisticated and sensitive screening systems designed to secure the Nation's aviation system

from explosives and other serious threats.  That documents pertaining to the testing of these

systems for radiation emissions also contain certain sensitive security information is entirely to

be expected.  Moreover, to the extent that EPIC is attempting to argue that these materials have

been improperly designated as SSI by TSA, its recourse is not with this Court; rather, it must file

a petition for review in a Court of Appeals.  See 49 U.S.C. § 46110; Chowdhury v. Northwest

Airlines Corp., 226 F.R.D. 608, 614 (N.D. Cal. 2004); Shqeirat v. U.S. Airways Group, Inc., No.

07-1513, 2008 WL 4232018, at *2 (D. Minn. Sept. 9, 2008) ("District Courts are without

jurisdiction to entertain challenges to the TSA's decisions regarding disclosure of SSI."); see also

MacLean v. Dep't of Homeland Sec., 543 F.3d 1145, 1149 (9th Cir. 2008) (holding that a TSA

determination does not require formal proceedings such as notice and comment to qualify as an

"order," reviewable only in a Court of Appeals, under § 46110); Durso v. Napolitano, -- F. Supp.

2d --, 2011 WL 2634183, at *4-5 (D.D.C. July 5, 2011) (finding TSA standard operating

procedure to be a final "order" under § 46110 notwithstanding formal proceedings) (citing Avia

Dynamics, Inc. v. FAA, 641 F.3d 515, 520 (D.C. Cir. 2011)).

## B.  TSA's Withholdings Were Proper Pursuant to FOIA Exemption 4.

Exemption 4 shields from disclosure "trade secrets and commercial or financial

information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).  EPIC

has challenged a limited number of the withholdings made by DHS pursuant to Exemption 4.

See Pl.'s MSJ Ex. 1 § II (listing specific pages with challenged withholdings under Exemption

4).  The specific withholdings challenged by EPIC are excerpts pertaining to radiation dosage

levels emitted by the AS&E SmartCheck AIT system.  See Sotoudeh Decl. ¶¶ 59-63; Callerame

Decl. ¶ 5(iii).  AS&E does not currently have a contract with TSA for deployment of the

SmartCheck system at airports.  See Sotoudeh Decl. ¶ 59.

To meet the criteria for the portion of Exemption 4 invoked by DHS, see Def.'s Mem. at

23, the withheld information must be "(1) commercial or financial, (2) obtained from a person,

and (3) privileged or confidential."  Pub. Citizen Health Research Grp. v. FDA, 704 F.2d 1280,

1290 (D.C. Cir. 1983).  EPIC does not argue that the radiation dose levels emitted by the

SmartCheck do not constitute "commercial . . . information."  Likewise, EPIC does not argue

that the information at issue is not "confidential."   Specifically, it does not contest the statements

by Joseph Callerame, a Senior Vice President and Chief Technical Officer of AS&E, or the

determinations by DHS, that release of such information is likely to cause AS&E substantial

competitive harm because it could enable competitors to derive operational or performance

attributes of these products, such as beam characteristics or filtration, leading to the potential for

"reverse engineering," see Callerame Decl. ¶ 5(iii); Sotoudeh Decl. ¶ 61, and that this

information is of the type that AS&E would not normally disclose to the public, see Callerame

Decl. ¶ 3; Sotoudeh Decl. ¶ 62.  Rather, EPIC argues that these records do not meet the threshold

requirement of Exemption 4 that the information be "obtained from a person," because they are

contained within government-generated records and reflect the government's own measurements

of radiation levels emitted by the SmartCheck.  See Pl.'s Mem. at 20-22.

As an initial mater, two of the records containing withholdings challenged by EPIC, see

Pl.'s Mem. Ex. 1 § II(a)(14-15), were not, in fact, generated by the government at all.  As

described in the TSL Vaughn index, these two records were submitted by AS&E to DHS.  See

TSL Vaughn at 1190-91 ("This record is a dosage map that was submitted by AS&E in

connection with the evaluation of AS&E's Dual Smart Check"); 1192-93 ("This record is an

email submitted by AS&E to a TSL official to demonstrate its system's compliance with radiation safety standards."). Thus, these records were plainly "obtained from a person" and were not generated by the government.

As to the remainder of the Exemption 4 withholdings at issue, which are contained within government-generated reports, DHS does not dispute the general legal principle that "courts . . . have read the requirement that information be 'obtained from a person' to restrict the exemption's application to data which have not been generated within the Government." Bd. Of Trade of City of Chicago v. Commodity Futures Trading Comm'n, 627 F.2d 392, 403-04 (D.C. Cir. 1980). However, as EPIC notes, the ultimate inquiry in this area is not simply who created the document, but whether "the [non-government entity] was the source of the information in the first instance and not the agency." In Def. of Animals v. Nat'l Institutes of Health, 543 F. Supp. 2d 83, 103 (D.D.C. 2008); see Pl.'s Mem. at 21.

EPIC has challenged Exemption 4 withholdings in two specific government-generated documents. One is a 3-page report authored in 2008 by Frank Cerra, a government official employed at the time by the National Institute of Standards and Technology ("NIST"), concerning the AS&E Dual Source Smart Check. See Sotoudeh Decl. ¶ 46(3), TSL Vaughn at 897-99, Pl.'s Mem. Ex. 1 § II(a)(1). The other is a 33-page report written by Mr. Cerra concerning an earlier version of the AS&E Smart Check in 2006. See Sotoudeh Decl. ¶ 46(2), TSL Vaughn at 924-56, Pl.'s Mem. Ex. 1 § II(a)(2-13).

Regarding the shorter 2008 report, as explained in the TSL Vaughn index, the analysis in this report was based primarily on specific information and data submitted to the government by AS&E, namely, a compliance report by F.X. Masse Associates, a third-party entity, and the radiation dose maps discussed above. See TSL Vaughn at 897-99. Thus, because AS&E was

"the source of information in the first instance and not the agency," the information was
"obtained from a person."  See OSHA Data/C.I.H., Inc. v. U.S. Dep't of Labor, 220 F.3d 153,
162 n.23 (3d Cir. 2000) (ratio calculated by agency, based on "individual components" obtained
from employers, was "obtained from a person"); Freeman v. BLM, 526 F. Supp. 2d 1178, 1188
(D. Or. 2007) (finding that government testing of mineral samples, where outside individual first
"provided the government with the precise locations where he gathered ore samples, and the
assay results," was "obtained from a person" because it "was inextricably intertwined with data
furnished by" the outside individual, and "piggyback[ed] upon [the individual's] data to such an
extent that the government's data [was] not truly independent for purposes of Exemption Four.");
Silverberg v. HHS, No. 89–2743, 1991 WL 633740 (D.D.C. June 14, 1991) (finding information
properly withheld when "[t]he testing and inspection of [certain outside] laboratories may be
directed by the government, but the information itself [was] generated by the laboratories and not
by the government").

Regarding the longer 2006 report, although the withholdings in this report reflect the
government's own radiation measurements conducted on an AS&E Smart Check machine, the
radiation measurements were nonetheless "obtained from a person."  In Lion Raisins, Inc. v.
USDA, 354 F.3d 1072 (9th Cir. 2004), the plaintiff, a raisin producer, sought, under FOIA,
documents that the government itself had generated, namely, "Line Check Sheets" prepared by
government inspectors during plant visits to other raisin manufacturers.  These sheets contained
certain information based on samples the inspectors took from processing lines, and "assess[ed]
the quality of the raisins in various categories, including weight, color, size, sugar content, and
moisture."  Id. at 1076.  Although not specifically addressing the "obtained from a person"
element, the court found that the Line Check Sheets qualified for Exemption 4 because the

information at issue would disadvantage the plaintiff's competitors by revealing information such as "volume, market share, and marketing strategy."   Id. at 1081.   See also Mulloy v. Consumer Prod. Safety Comm'n, No. 85-645, 1985 U.S. Dist. LEXIS 17194, at *2 (S.D. Ohio Aug. 2, 1985) (Exemption 4 justified withholding of manufacturing and sales data compiled in establishment inspection report prepared by Consumer Products Safety Commission investigator after on-site visit to plant), aff'd, No. 85-3720 (6th Cir. July 22, 1986).[13]

The information at issue here – radiation testing results performed on machines that were obtained by the government from AS&E for testing purposes – is analogous to the information in Lion Raisins and Mulloy.   As noted in the Sotoudeh Declaration, "[b]ut for the government's having obtained these . . . AIT systems from the vendors for testing, production of the reports described above would not have been possible."   Sotoudeh Decl. ¶ 47.   There is no meaningful distinction, for FOIA purposes, between data the government gathers based on its examinations in an on-site plant inspection, and data that it gathers when examining a machine provided by a vendor for testing purposes.   But see Consumers Union of U. S., Inc. v. Veterans Admin., 301 F. Supp. 796, 803 (S.D.N.Y. 1969) (requiring disclosure of government tests on hearing aids where government obtained the hearing aids from the manufacturer and tested them using government personnel, expertise, and equipment).   The ultimate source of the information at issue remains an outside party, and to the extent that it is confidential commercial information, it should be protected under Exemption 4.

Finally, the substance of these documents warrants shielding them from disclosure.   As noted in the Callerame Declaration, disclosure of the specific radiation levels at issue could

---

[13] Like the court in Lion Raisins, the Mulloy court did not squarely address the issue of whether these records were "obtained from a person," but appeared to assume this was the case as it concluded that the records at issue were exempt under Exemption 4.

provide other AIT vendors with a competitive advantage over AS&E by providing insight into how AS&E obtains these results. Callerame Decl. ¶ 5(iii). Although no longer at issue in this litigation – because EPIC has not opposed this withholding – a second AIT manufacturer, Smiths Detection, has attested to the same potential effects from disclosure of radiation data regarding its technology. See Doyle Decl. ¶¶ 5-6. Moreover, AS&E does not have a contract with TSA to deploy its AIT machines at airports. See Sotoudeh Decl. ¶ 59. Thus, the central aim of FOIA – public awareness about the government's activities, rather than those of private parties – would not be furthered if this information were to be released. See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989) (stating that FOIA "focuses on the citizens' right to be informed about what their government is up to[,]" that is, "an agency's performance of its statutory duties"). For these reasons, the information at issue was properly withheld under Exemption 4, and the Court should grant DHS's summary judgment motion as to these withholdings.

### C. TSA's Withholdings Were Proper Pursuant to FOIA Exemption 5.

EPIC also challenges certain withholdings made by DHS pursuant to Exemption 5. EPIC's arguments rely on an unduly constrained view of the deliberative process privilege. Because the privilege covers the generation, compilation, and analysis of factual material contained within drafts and deliberative memoranda, and because DHS has provided all reasonably segregable, non-exempt information, DHS should be granted summary judgment on its Exemption 5 withholdings.

As a preliminary matter, EPIC's challenges to two specific TSA records, Bates Nos. TSA26-27 and TSA107-108, see Pl.'s Mem. Ex. 1 §§ III(b)(1)(1); III(b)(5)(1), should be denied without regard to the applicability of the deliberative process privilege. As to the withholding on

pages TSA26-27, although EPIC challenges it on deliberative process grounds, TSA justified this withholding on the grounds of the attorney-client privilege as well.  See TSA Vaughn at TSA 26-27; Sotoudeh Decl. ¶ 36.  It is axiomatic that only one valid exemption need justify a withholding under FOIA; if a court finds that a withholding was properly made under one rationale, its inquiry is at an end.  See Coleman v. Lappin, 607 F. Supp. 2d 15, 23 (D.D.C. 2009) (citing Simon v. Dep't of Justice, 980 F.2d 782, 785 (D.C. Cir. 1992)).  Because EPIC has offered no argument in response to DHS's assertion of the attorney-client privilege as to the withheld material on pages TSA26-27, it has conceded that the information was properly withheld.  See Elec. Privacy Info. Ctr., 760 F. Supp. 2d at 11 (granting summary judgment to agency regarding certain withheld records, even where plaintiff nominally challenged their withholding, when plaintiff did not offer any arguments in opposition to one of the two exemptions invoked by the agency).  Thus, DHS should be granted summary judgment on this withholding.  Cf. Techserve Alliance v. Napolitano, No. 10-0353, 2011 WL 3606525, at *7 n. 17 (D.D.C. Aug. 17, 2011) (declining to address applicability of attorney-client privilege after concluding that deliberative process privilege applied).  As to the second such withholding, although EPIC has listed Bates pages TSA107-108 in its index of challenged withholdings under Exemption 5, these pages contain withholdings under Exemption 6 only, see TSA Vaughn at 107-08 which EPIC has expressly declined to challenge.  Accordingly, summary judgment should be granted to DHS with regard to these pages as well.

With regard to the remainder of the Exemption 5 withholdings challenged by EPIC, EPIC's primary argument is that some information that was withheld – contained in internal government e-mails, memoranda, and documents, see Sotoudeh Decl. ¶ 33; Coursey Decl. ¶ 36; Beresford Decl. ¶ 38 – was not deliberative but factual, and therefore outside the deliberative

process privilege.  However, the rigid fact/opinion distinction that EPIC invokes is inconsistent

with case law concerning the deliberative process privilege.  Rather, "the legitimacy of

withholding does not turn on whether the material is purely factual in nature . . .  but rather on

whether the selection or organization of facts is part of an agency's deliberative process."

Ancient Coin Collectors Guild, 641 F.3d at 513 (citing Montrose Chem. Corp. of Cal. v. Train,

491 F.2d 63, 71 (D.C. Cir. 1974)).  Thus, for example, "factual summaries" that were "culled by

[a] Committee from the much larger universe of facts presented to it and reflect an exercise of

judgment as to what issues are most relevant to the pre-decisional findings and

recommendations" are protected by the privilege.  Id.

 Here, EPIC has selectively quoted from DHS's descriptions of certain documents to

argue that they are factual, and not deliberative.  However, DHS's Vaughn indices and

declarations explain the documents' deliberative nature and their role in the agency's deliberative

process.  For example, EPIC characterizes DHS as withholding "fact sheets."  Pl.'s Mem. at 17-

18.  However, DHS has withheld only draft or preliminary fact sheets as well as deliberations

concerning those drafts.  See Coursey Decl. ¶ 37(vi) (describing agency's withholding of "draft

versions, deliberations, and back-and-forth edits" of a "fact sheet on radiation exposure and

AIT"); see also infra at 20-22 (justifying withholding of draft documents and deliberations

concerning drafts).

 Similarly, EPIC argues that DHS's withholding of "preliminary testing results"

concerning the potential effects of millimeter wave systems on personal medical devices is

impermissible.  See Pl.'s Mem. at 17.  These results, however, are contained in an "an interim

report prior to the completion of testing of the effects of the L3 Provision on medical devices" by

the FDA and DHS.  See TSL Vaughn, Withheld-in-full L.  Thus, this document in its entirety,

including any factual testing results, is part and parcel of the process by which these two agencies are forming their opinions regarding what effects (if any) millimeter wave scanners may have on personal medical devices, and was properly withheld under Exemption 5. See Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1120-21 (9th Cir. 1988) (protecting draft forest plans and preliminary draft environmental impact statements, finding that "[s]ubjecting a policymaker to public criticism on the basis of such tentative assessments is precisely what the deliberative process privilege is intended to prevent"); Chem. Mfrs. Ass'n v. Consumer Product Safety Comm'n, 600 F. Supp. 114, 118 (D.D.C. 1984) (protecting preliminary scientific data generated in connection with study of chemical); see also Mapother v. DOJ, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (holding that the deliberative process privilege "shelter[s] factual summaries that were written to assist the making of a discretionary decision"); Reliant Energy Power Generation, Inc. v. FERC, 520 F. Supp. 2d 194, 205-06 (D.D.C. 2007) (finding that deliberative process privilege protected spreadsheet and tables analyzing data that reflect "decisions about how to look at the data, how to select portions of the data to examine, and how to interpret the data").

Similarly, EPIC's objections to DHS's withholding of various draft documents, and deliberations regarding those drafts, do not withstand scrutiny. EPIC cannot seriously dispute that "[a]s a general matter, 'drafts' of documents are exempt from disclosure under the deliberative process privilege." Goodrich Corp. v. U.S. E.P.A., 593 F. Supp. 2d 184, 189 (D.D.C. 2009) (citing City of Va. Beach v. Dep't of Commerce, 995 F.2d 1247, 1253 (4th Cir.1993); Dudman Commc'ns. Corp. v. Dep't of Air Force, 815 F.2d 1565, 1569 (D.C. Cir. 1987); Russell v. Dep't of Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982)); see also Radiation Sterilizers, Inc. v. U.S. Dep't of Energy, 1991 U.S. Dist. LEXIS 4669, *10 (D.D.C. Apr. 9, 1991)

("[D]raft documents likely are to be protected under the deliberative process privilege because 'draft documents,' by their very nature, are typically pre-decisional and deliberative.") (quoting Exxon v. DOE, 585 F. Supp. 690, 698 (D.D.C. 1983).   Rather, without citing any specific examples in its brief, EPIC argues that DHS's Exemption 5 withholdings were improper because DHS has not identified final documents associated with the drafts or deliberations in its Vaughn index.  See Pl.'s Mem. at 18-19.

FOIA, however, does not require this degree of specificity when invoking the deliberative process privilege.  As DHS articulated in its opening brief, an agency is not required to identify "precisely what policies were under consideration" to invoke Exemption 5.  Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor, 478 F. Supp. 2d 77, 82 (D.D.C. 2007); see also NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 n.18 (1975) ("Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared."); see also Techserve Alliance, 2011 WL 3606525, at *7 (rejecting argument that drafts should be released because agency had "failed to match the document with the corresponding final document"); U.S. v. Philip Morris USA Inc., 218 F.R.D. 312, 318 (D.D.C. 2003) (rejecting contention that documents did not qualify for deliberative process privilege "simply because the Government had failed to indicate how the drafts differ from related final documents").

In its Vaughn indices and declarations, DHS has provided the required justification for its withholding of drafts and deliberations under Exemption 5, as it has identified, with adequate specificity, the processes in which these agency records were generated, even if it has not identified a specific final document.  See, e.g., TSA Vaughn at 38 ("[W]ithheld portion contains

recommendation from internal memorandum regarding future efforts by TSA regarding development of AIT radiation safety standards"); TES Vaughn at 609 (describing withheld document that "contains comments regarding an upcoming response by the DHS Undersecretary on radiation safety"); Coursey Decl. ¶ 37(a) (describing various types documents pertaining to Exemption 5 withholdings, including, inter alia, "[d]eliberations and drafts concerning a federal government response to a Letter of Concern sent by four scientists from the University of California at San Francisco . . . sent on April 6, 2010" and "[d]eliberations and drafts concerning a fact sheet on radiation exposure and AIT" that was generated "[f]ollowing the foiled Christmas Day attack of 2009"); TSL Vaughn at 908-910 (describing withheld excerpts containing "suggestions of points to be included in draft memorandum to Deputy Secretary of DHS on radiation safety").  The mere fact that, according to EPIC, DHS has "not [i]dentif[ied] a final decision or document associated with the withheld drafts," Pl.'s Mem. at 18, does not undermine the legitimacy of these withholdings or of DHS's justifications for the withholdings.[14]

Finally, DHS released all reasonably segregable non-exempt information.  Many of the documents in question were redacted in part, rather than in full, and DHS's declarants have stated that the agency produced all reasonably segregable non-exempt information.  See Sotoudeh Decl. ¶¶ 23, 72; Beresford Decl. ¶¶ 27, 44; Coursey Decl. ¶¶ 25, 43.  Under these

---

[14] Although DHS maintains that it has provided sufficient detail in its Vaughn indices and declarations with regard to its Exemption 5 withholdings, to the extent that the Court disagrees and finds that DHS's declarations and Vaughn indices do not sufficiently explain the withholdings at issue, DHS respectfully requests an opportunity to submit supplemental materials that would provide any additional details that the Court would deem necessary or appropriate to justify these withholdings.  See Pub. Employees for Envt'l Responsibility v. Ofc. of Sci. & Tech. Pol'y, -- F. Supp. 2d --, 2011 WL 5358711, at *5-7 (D.D.C. Nov. 8, 2011) (Jackson, J.) (requiring government to amend or supplement Vaughn and/or declarations with additional detail regarding deliberative process withholdings); Hall v. C.I.A., 668 F. Supp. 2d 172, 196 (D.D.C. 2009) (ordering agency to submit supplemental materials while denying request for in camera review).

circumstances, summary judgment on the issue of segregability is proper. <u>See</u> <u>Judicial Watch,</u> <u>Inc. v. DOJ</u>, No. 01-639, 2006 WL 2038513, at *5–6 (D.D.C. July 19, 2006) (rejecting plaintiff's segregability claim where agency declaration stated that "all reasonably segregable information has been disclosed").  Moreover, the agency twice made supplemental releases of documents after determining that further segregable non-exempt information could be released. <u>See</u> Sotoudeh Decl. ¶ 23; Beresford Decl. ¶ 27; Coursey Decl. ¶ 25.  In support of its segregability argument, EPIC simply repeats its argument that factual material cannot be withheld. Particularly in light of the fact that "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," <u>Sussman v. U.S. Marshals</u> <u>Service</u>, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citation omitted), the Court should grant summary judgment to DHS on its Exemption 5 withholdings, and should find that all reasonably segregable, non-exempt information was released.

### III.   PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS SHOULD BE DENIED AS PREMATURE.

In addition to contesting the withholdings discussed above, EPIC also asks the Court, in its summary judgment brief, to rule that it is both eligible for and entitled to attorney's fees and costs.  Pl.'s Mem. at 22-27.  EPIC's <u>de facto</u> motion for attorney's fees is premature, as it has been made prior to the Court's resolution of the merits.  As such, the Court should defer consideration of attorney's fees and costs until after it resolves the merits of the case.  At that time, the Court can consider these issues if the parties are unable to resolve the question of fees and costs through negotiation.

"An 'award of attorneys fees is uniquely separable from the cause of action' that is settled by a court's judgment on the merits[.]" <u>FCC v. League of Women Voters of Cal.</u>, 468 U.S. 364, 373 n.10 (1984) (finding motion for attorney's fees did not affect the finality of a

judgment for appellate purposes) (correction marks omitted) (quoting White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 451-52 (1982)).  Indeed, in White, the Supreme Court -- in interpreting a "prevailing party" fee statute similar to FOIA -- specifically held that applications for attorney's fees are collateral to the substantive issues of a plaintiff's cause of action, which is decided by a final appealable judgment by a District Court.  White, 455 U.S. at 451-52.

The collateral nature of attorney's fee requests is further reinforced by both the Federal Rules of Civil Procedure and the Local Rules of this Court.  See Fed. R. Civ. P. 54(d)(2)(B)(i) (requiring that a motion for attorney's fees be made "no later than 14 days after the entry of judgment"); 54(d)(2)(B)(ii) (requiring that a motion for attorney's fees "specify the judgment and the statute, rule, or other grounds entitling the movant to the award"); Local Civ. R. 54.1(a) (requiring that a bill of costs be filed "within 21 days after entry of judgment"); 54.2(a) ("In any case in which a party may be entitled to an attorney's fee from another party, the court may, at the time of entry of final judgment, enter an order directing the parties to confer and to attempt to reach agreement on fee issues.") (emphasis added for all preceding citations).  In particular, Local Rule 54.2(a) clearly contemplates that the parties should be given an opportunity to negotiate and resolve fee disputes after entry of judgment, without the Court's intervention.  Conversely, EPIC's request for the Court to adjudicate the issues of its eligibility for, and entitlement to, attorney's fees effectively asks the Court to render an advisory opinion about a matter that the parties may be able to resolve.  The United States and its agencies frequently settle fee disputes in FOIA cases – typically after the entry of judgment – and there is simply no need for the Court to rule on the issues of eligibility and entitlement for fees at this early stage.

Consequently and not surprisingly, courts in this Circuit have consistently applied the understanding that issues of attorney's fees are collateral to judgments on the substantive merits

of claims.  See, e.g., Ellipso, Inc. v. Mann, 253 F.R.D. 1, 2 (D.D.C. 2008) (Lamberth, J.).  FOIA

cases, including those litigated after the OPEN Government Act of 2009, are no different.  In the

normal course of events, in a FOIA case or otherwise, a motion for fees and costs is made after

the entry of judgment.  See, e.g., Davy v. C.I.A., 550 F.3d 1155, 1158 (D.C. Cir. 2008) ("After

the agency filed a superseding motion for summary judgment [in a FOIA case], the district court

granted the agency's motion.  Davy thereafter timely filed a motion for attorney's fees under 5

U.S.C. § 552(a)(4)(E)."); N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Protection Bureau,

563 F. Supp. 2d 217, 219-20 (D.D.C. 2008) (describing FOIA plaintiff's motion for attorney's

fees filed after the court ruled on summary judgment).

As such, courts in this Circuit have repeatedly found that a request for attorneys' fees

under FOIA, when made at the merits stage, is premature.  Indeed, one such case involved the

very same parties litigating here, in virtually the same posture, i.e., where the plaintiff, EPIC,

claimed eligibility for fees purely based on the timing of the release of records relative to its

filing suit.  See Elec. Privacy Info. Ctr., 760 F. Supp. 2d at 9 n.5 ("In its cross-motion [for

summary judgment], the plaintiff also moves the court for an award of attorney's fees. . . .  The

court agrees with DHS that resolution of this issue is premature . . .") (internal citations omitted);

Quick v. U.S. Dept. of Commerce, Nat'l Inst. of Standards & Tech., 775 F. Supp. 2d 174, 183

(D.D.C. 2011) (finding summary judgment motion for attorneys' fees premature where plaintiff

sought judgment that he be "deemed to have 'substantially prevailed' . . . because [the agency]

produced records responsive to his request after the commencement of the instant action"); see

also Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 37 n. 18 (D.C. Cir. 1998) 164 F.3d 20, 37

n.18 (D.C. Cir. 1998) (finding "discussion of attorney's fees is premature" when substantive

issues remained in FOIA case); Hussain v. U.S. Dep't of Homeland Sec., 674 F. Supp. 2d 260,

272-73 (D.D.C. 2009) ("In light of the Court's conclusion that, at this stage, final judgment is not appropriate for either party, and because plaintiff has not articulated any need for an interim award of fees, the Court concludes that plaintiff's attorneys' fees motion is premature."); Wheeler v. Exec. Office of U.S. Attorneys, No. 05-1133, 2008 WL 178451, *7 (D.D.C. Jan. 17, 2008) (finding that request for attorney's fees was premature when substantive issues remained in FOIA case).

Moreover, EPIC's fee petition is premature because the record simply does not contain sufficient information to justify an award of fees. In support of its argument for eligibility for attorneys' fees, EPIC asserts, based entirely on the fact that it obtained its responsive documents subsequent to its filing suit, that its litigation created a "voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii). Pl.'s Mem. at 22-24. Yet to prevail under this "catalyst theory," a plaintiff must show "something more than post hoc, ergo propter hoc" -- i.e., that the release came after the institution of the lawsuit. See Church of Scientology of Cal. v. Harris, 653 F.2d 584, 587-88 (D.C. Cir. 1981). "Instead, the party seeking such fees in the absence of a court order must show that prosecution of the action could reasonably be regarded as necessary to obtain the information and that a causal nexus exists between that action and the agency's surrender of the information." Id. (citations omitted). Thus, the simple chain of events recited by EPIC in its brief does not make it eligible for fees. Additionally, in order to establish its entitlement to fees, EPIC must further show that the balance of four factors – "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents" – tip in its favor. Davy, 550 F.3d at 1159. Although EPIC argues in its brief that these factors have been met, an evaluation of the first and fourth factors – the public

benefit derived from the case and the reasonableness of DHS's withholdings – will necessarily

depend on how the Court resolves the merits of the instant summary judgment motion as to the

exemptions DHS has asserted.

Accordingly, DHS asks that the Court deny EPIC's request for judgment on the issues of

eligibility and entitlement to fees and costs as premature.[15]

## CONCLUSION

The Court should grant Defendant's Motion for Summary Judgment and deny Plaintiff's

Cross-Motion for Summary Judgment.

Date: November 18, 2011                          Respectfully submitted,

                                                 TONY WEST
                                                 Assistant Attorney General

                                                 RONALD S. MACHEN JR.
                                                 United States Attorney for
                                                 the District of Columbia

                                                 ELIZABETH J. SHAPIRO
                                                 Deputy Branch Director

                                                 /s/ Jesse Z. Grauman
                                                 JESSE Z. GRAUMAN (Va. Bar No. 76782)
                                                 U.S. Department of Justice
                                                 Civil Division, Federal Programs Branch

                                                 Mailing Address:
                                                 Post Office Box 883
                                                 Washington, D.C.  20044

                                                 Courier Address:
                                                 20 Massachusetts Ave., N.W.

---

[15] To the extent that the Court agrees with EPIC that the issues of eligibility and/or entitlement to attorneys' fees are ripe for review now, DHS respectfully requests that the Court issue an Order for full briefing on the merits of EPIC's requests for fees and costs.  DHS is prepared to present evidence on the issue of EPIC's eligibility and entitlement, including, inter alia, a complete chronology of DHS's search efforts prior to and subsequent to EPIC's institution of litigation, and would do so expeditiously if the Court so ordered.

Washington, D.C. 20001

Telephone:      (202) 514-2849
Fax:            (202) 616-8460
Email:          jesse.z.grauman@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
ELECTRONIC PRIVACY INFORMATION CENTER, )
                                                    )
                        Plaintiff,                  )
                                                    )
            v.                                      )   Case No. 1:10-cv-1992 (ABJ)
                                                    )
THE UNITED STATES DEPARTMENT OF                     )
HOMELAND SECURITY,                                  )
                                                    )
                        Defendant.                  )
_____ )

<u>**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS
NOT IN GENUINE DISPUTE**</u>

Pursuant to Local Civil Rule 7(h) of the Rules of the United States District Court for the

District of Columbia, Defendant United States Department of Homeland Security ("DHS")

hereby submits the following response to Plaintiff's Statement of Material Facts Not in Genuine

Dispute (ECF No. 11-2):

1. Undisputed.

2. **Plaintiff's Fact:** EPIC asked the agency to expedite its response to EPIC's FOIA

   request and requested "News Media" fee status under FOIA, based on its status as a

   "representative of the news media." EPIC further requested waiver of all duplication

   fees. Def. Motion for Summ. Judg. at 3-4.

   **Response:** Defendant does not dispute that EPIC requested expedited processing and

   requested "News Media" fee status under FOIA.  To the extent that this statement

   alleges that EPIC is a "representative of the news media" within the meaning of

   FOIA, such an allegation is a conclusion of law to which no response is required.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. **Plaintiff's Fact:** The TSA failed to make a timely determination regarding EPIC's initial request and its appeal regarding fee waiver and expedited processing. Declaration of Paul Sotoudeh at ¶ 11.

   **Response:** Disputed.  By letter dated November 24, 2010, TSA affirmed its denial of expedited processing but agreed to waive fees.  See Sotoudeh Decl. ¶ 11 & Ex. F. The allegation that "[t]he TSA failed to make a timely determination" is a conclusion of law to which no response is required.

7. **Plaintiff's Fact:** EPIC again appealed to the TSA on October 21, 2010, this time challenging the agency's denial of fee waiver and failure to make a timely determination regarding EPIC's request. Compl., ¶ 42.

   **Response:** Defendant does not dispute that EPIC transmitted an administrative appeal to TSA on October 21, 2010 challenging the initial denial of a fee waiver and alleging that TSA failed to make a timely determination regarding EPIC's request.  The characterization of "the agency's . . . failure to make a timely determination regarding EPIC's request" is a conclusion of law to which no response is required.

8. Undisputed.

9. **Plaintiff's Fact:** S&T failed to make a timely determination regarding EPIC's request. Declaration of Bert Coursey at ¶ 18, 24; Declaration of Pamela Beresford at ¶ 26.

   **Response:** This allegation is a conclusion of law to which no response is required.

10. **Plaintiff's Fact:** On October 21, 2010, EPIC appealed S&T's fee waiver

    determination, along with S&T's failure to make a timely determination regarding

    EPIC's request. Compl., ¶ 47.

    **Response:** Defendant does not dispute that EPIC transmitted an administrative appeal

    on October 21, 2010 challenging S&T's fee waiver determination and alleging that

    S&T had not timely responded to EPIC's FOIA request.  The characterization of

    "S&T's failure to make a timely determination" is a conclusion of law to which no

    response is required.

11. **Plaintiff's Fact:** The agency failed to make a timely response to EPIC's appeals.

    Compl., ¶ 46, 49.

    **Response:** This allegation is a conclusion of law to which no response is required.

12. **Plaintiff's Fact:** After the agency failed to comply with the statutory deadline to

    reply to EPIC's appeal, EPIC filed suit on November 19, 2010. Def. Motion for

    Summ. Judg. at 9.

    **Response:** Defendant does not dispute that EPIC filed suit on November 19, 2010.

    The remainder of this allegation is a conclusion of law to which no response is

    required.

13. Undisputed.

14. Undisputed.

15. **Plaintiff's Fact:** On September 7, 2011, the agency released an additional 208 pages

    of documents. Def. Motion for Summ. Judg. at 10.

    **Response:** Defendant does not dispute that it released additional records to EPIC on

    September 7, 2011; however, these additional records totaled 308 pages.

16. Undisputed.


Date: November 18, 2011                    Respectfully submitted,

                                           TONY WEST
                                           Assistant Attorney General

                                           RONALD S. MACHEN JR.
                                           United States Attorney for
                                           the District of Columbia

                                           ELIZABETH J. SHAPIRO
                                           Deputy Branch Director

                                            /s/ Jesse Z. Grauman
                                           JESSE Z. GRAUMAN (Va. Bar No. 76782)
                                           U.S. Department of Justice
                                           Civil Division, Federal Programs Branch

                                           Mailing Address:
                                           Post Office Box 883
                                           Washington, D.C.  20044

                                           Courier Address:
                                           20 Massachusetts Ave., N.W.
                                           Washington, D.C. 20001

                                           Telephone:    (202) 514-2849
                                           Fax:          (202) 616-8460
                                           Email:        jesse.z.grauman@usdoj.gov

                                           Attorneys for Defendants