## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Civil No. 10-1992 (RCL)** |
| **UNITED STATES DEPARTMENT OF HOMELAND SECURITY,** | ) ) ) ) |
| **Defendant.** | ) ) ) |

## MEMORANDUM OPINION

This action concerns a Freedom of Information Act ("FOIA") request by the Electronic Privacy Information Center ("EPIC") for records held by the Department of Homeland Security ("DHS") pertaining to radiation emissions produced by Advanced Imaging Technology ("AIT") machines used to screen passengers at commercial airports. The parties have filed cross-motions for Summary Judgment. ECF Nos. 9 & 11. The Court will GRANT in part and DENY in part both motions. DHS is entitled to summary judgment as to all of its withholdings pursuant to exemptions 3, 5, and 6 and all withholdings pursuant to exemption 4 except for two reports based on the government's own testing, which DHS must disclose.

## I.    BACKGROUND

Starting in 2005, the Transportation Security Administration ("TSA") began using full-body scanning machines in U.S. airports to screen travelers on U.S. commercial aircraft. Pl.'s Opp'n to Def.'s Mot. for Summ. J., Cross-Mot. for Summ. J. ("Pl.'s Opp'n") 1, ECF No. 11. The TSA subsequently decided to make these scanners the primary form of screening

passengers.  *Id.* at 2.  These machines use either backscatter x-ray or millimeter wave technology to capture detailed, three-dimensional images of individuals and transmit them for review by Transportation Security Officers.  *Id*. at 1–2.

In July 2010, EPIC submitted a FOIA Request to DHS seeking the following information about AIT:

1) All records concerning TSA tests regarding body scanners and radiation emission or exposure; and

2) All records concerning third party tests regarding body scanners and radiation emission or exposure.

*See* FOIA Request at 4, Def.'s Ex. A, ECF No. 9-1 at 1.  EPIC requested expedited processing of its request and a waiver of duplication fees.  *Id.* at 4–5.  DHS referred the request to two components: the TSA and the Science and Technology Directorate ("S&T").  Def.'s Statement of Material Facts ¶ 2, ECF No. 9; Pl.'s Statement of Material Facts ¶ 3, ECF No. 11-2.

TSA initially denied EPIC's requests for expedited processing and a fee waiver.  Def.'s Ex. C, Aug. 12, 2010, ECF No. 9-1 at 35.  EPIC appealed, Def.'s Ex. D, Aug. 27, 2010, ECF No. 9-1 at 39, and challenged the agency's failure to make a timely determination regarding its FOIA request.  Pl.'s Statement ¶ 7; Def.'s Resp. to Pl.'s Statement of Material Facts ("Def.'s Resp.") ¶ 7, ECF No. 13 at 29.  The TSA affirmed its denial of the request for expedited processing but agreed to waive fees.  Def.'s Ex. F, Nov. 24, 2010, ECF No. 9-1 at 58.

S&T denied EPIC's request for a fee waiver.  EPIC appealed this determination along with S&T's failure to make a timely determination regarding EPIC's FOIA request.  Pl.'s Statement ¶¶ 8–10; Def.'s Resp. ¶¶ 8–10.

EPIC filed this FOIA action in November 2010, alleging that DHS had "failed to disclose a single record" and had "failed to comply with statutory deadlines" and seeking an order that the agency immediately disclose all responsive records.  Compl. ¶ 2, ECF No. 1.

Several months later, both TSA and S&T released hundreds of pages of records responsive to EPIC's requests and withheld information pursuant to FOIA exemptions 3, 4, 5, and 6.  Pl.'s Statement ¶¶ 13–16; Def.'s Statement ¶¶ 11–15.  EPIC now challenges certain of these withholdings, but notably EPIC also claims it has already "substantially prevailed" by obtaining the released documents.  Pl.'s Opp'n 23.

## II.    LEGAL STANDARD

The Freedom of Information Act, 5 U.S.C. § 552, requires federal agencies to make certain records publicly available.  FOIA also provides exemptions from the disclosure requirement, which are to be "narrowly construed."  *FBI v. Abramson*, 456 U.S. 615, 630 (1982).  Four of these, exemptions 3, 4, 5, and 6, are relevant to this case and are described in greater detail below.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  FOIA actions are typically and appropriately resolved on summary judgment.  *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also COMPTEL v. FCC*, 06-cv-1718, 2012 WL 6604528, *4 (D.D.C. Dec. 19, 2012).

The agency bears the burden in litigation to justify withholding any records.  5 U.S.C. § 552(a)(4).  This is in part because of the "strong presumption in favor of disclosure," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) and because FOIA requesters face an information

asymmetry given that the agency possesses the requested information and decides whether it should be withheld or disclosed. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 145–46 (D.C. Cir. 2006). Thus, even where the requester has moved for summary judgment, the Government "ultimately has the onus of proving that the documents are exempt from disclosure." *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (internal quotations and modifications omitted); *see also COMPTEL*, 2012 WL 6604528, at *4.

To satisfy its burden, an agency may rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, or a combination of these tools.  A *Vaughn* index correlates each withheld document, or portion thereof, with a particular FOIA exemption and the justification for nondisclosure.  *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  While agency affidavits are accorded a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), they must "provide[] a relatively detailed justification, specifically identify[ing] the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."  *Judicial Watch v. FDA*, 449 F.3d at 146; *see also COMPTEL*, 2012 WL 6604528 at *4.

## III.   EPIC HAS CONCEDED THE ADEQUACY OF DHS'S SEARCH FOR RESPONSIVE DOCUMENTS AND HAS AGREED NOT TO CONTEST ITS WITHHOLDINGS PURSUANT TO EXEMPTION 6

DHS has moved for summary judgment as to the adequacy of its search for responsive documents, Def.'s Br. 10–11, and the appropriateness of all its withholdings. *See* Def.'s Br. 11–34.  EPIC does not contest the adequacy of DHS's search or any of its withholdings pursuant to exemption 6.  *See* Pl.'s Opp'n.  In addition, EPIC apparently agreed not to contest any of these exemption 6 withholdings.  *See* E-mail from John Verdi to Jesse Grauman, Aug. 5, 2011, Ex. 9,

ECF No. 9-9. Accordingly, the Court takes these issues as conceded and grants summary judgment to DHS as to all withholdings made under exemption 6.

## IV.   DHS IS ENTITLED TO SUMMARY JUDGMENT AS TO ITS EXEMPTION 3 WITHHOLDINGS[1]

Both parties move for summary judgment as to withholdings made by DHS pursuant to exemption 3.  DHS is entitled to summary judgment as to these withholdings.

Exemption 3 permits the nondisclosure of materials that are "specifically exempted from disclosure by statute" so long as that statute "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii).  Congress amended exemption 3, adding language requiring "particular criteria for withholding" in order "to overrule legislatively the Supreme Court's decision in *Administrator, FAA v. Robertson*, 422 U.S. 255 (1975), which had given an expansive reading to the version of exemption 3 then in force."[2]  *Irons & Sears v. Dann*, 606 F.2d 1215, 1219 (D.C. Cir. 1979).  Only statutes that "incorporate[] a formula whereby the administrator may determine precisely whether disclosure in any instance" was prohibited will qualify under exemption 3.  *Am. Jewish Cong. v. Kreps*, 574 F.2d 624, 628–29 (D.C. Cir. 1978).  Statutes that merely "set forth benchmarks for secrecy so general as the 'interest of the public' (such as the statute at issue in *Robertson*) do not satisfy . . . [the] 'particular criteria' requirement." *Wis. Project on Nuclear Arms Control v. U.S. Dep't of Commerce*, 317 F.3d 275, 280–81 (D.C. Cir. 2003) (quoting *Am. Jewish Cong.*, 574 F.2d at 629)).  But when "on the other hand, Congress has made plain its concern with a specific effect of publicity . . . exemption 3 is to honor that concern." *Id.*

---

[1] This Part of the opinion contains analysis that is similar to that in Part IV of this Court's opinion in *EPIC v. TSA*, 11-cv-290, issued this date.

[2] *Robertson* upheld an exemption 3 claim based on a pre-FOIA statute which barred disclosure of information that would "adversely affect" the agency and was "not required to be disclosed in the interest of the public."  422 U.S. at 259.

Section 114(r) of Title 49 provides:

> Notwithstanding section 552 of title 5, the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107-71) or under chapter 449 of this title if the Under Secretary decides that disclosing the information would . . . be detrimental to the security of transportation.

49 U.S.C. § 114(r), (r)(C).   Pursuant to that authority, TSA promulgated regulations that expressly prohibit the disclosure of certain categories of sensitive security information.   *See generally* 49 C.F.R. pt. 1520.

Judge Kollar-Kotelly has held that § 114(r) qualifies as a "statute of Exemption as contemplated by Exemption 3." *Tooley v. Bush*, 06-cv-306, 2006 WL 3783142, *4 (D.D.C. Dec. 21, 2006) *rev'd in part on other grounds sub nom. Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009).   Judge Kollar-Kotelly's conclusion rested on a D.C. Circuit decision which interpreted a provision containing nearly identical language to § 114(r).   *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 194 (D.C. Cir. 1993).   The *Public Citizen* court examined withholdings made pursuant to the following provision:

> Notwithstanding section 552 of Title 5 relating to freedom of information, the [FAA] Administrator shall prescribe such regulations as he may deem necessary to prohibit disclosure of any information obtained or developed in the conduct of security or research and development activities under this subsection if, in the opinion of the Administrator, the disclosure of such information . . . (C) would be detrimental to the safety of persons traveling in air transportation.

*Pub. Citizen*, 988 F.2d at 189 (quoting 49 U.S.C. § 1357(d)(2) (1993) (subsequently recodified at 49 U.S.C. § 40119(b)).   The Circuit concluded that the provision granted the agency authority to "withhold security-sensitive information from members of the public, regardless of the legal basis of the request for the information," including FOIA   *Id.* at 195–96.   The Circuit explained

that Congress added the "notwithstanding" language to ensure that the statute qualified under FOIA's Exemption 3.[3] *Id.* at 195.

This Court agrees with Judge Kollar-Kotelly in finding *Public Citizen* persuasive. Because section 114(r) contains virtually identical language to the provision in that case, particularly the "notwithstanding" language, the Circuit's analysis is equally applicable to section 114(r), and that provision must also qualify under exemption 3.

Judicial review of TSA's determination that certain material is nondisclosable "security sensitive information" is available exclusively in federal circuit courts. *See* 49 U.S.C. § 46110(a) ("[A] person disclosing a substantial interest in an order issued . . . in whole or in part under . . . subsection . . . (s) of section 114[4] may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."); *id.* § 46110(c) (describing the prescribed jurisdiction as "exclusive"); *see also Koutny v. Martin,* 530 F. Supp. 2d 84, 91 (D.D.C. 2007) ("A remedy to challenge a final TSA classification order is provided by statute. An interested party may petition to modify or set aside such an order in an appropriate court of appeals." (citing § 46110(a))).  Accordingly, district courts may not review TSA orders that designate material as security sensitive information.  *See Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77–78 (D.C. Cir. 1984) ("[W]here a statute commits review of agency action to the Court of Appeals, any suit

---

[3] This belies EPIC's charges that the *Public Citizen* court "does not . . . resolve the question of whether the statute at issue in that case, 49 U.S.C. § 1357(d)(2), qualifies as an Exemption 3 statute," and the Court did "not engage in an Exemption 3 analysis at all."  *See* Pl.'s Reply 3, ECF No. 18.

[4] Subsection (s) of section 114 formerly authorized TSA to prohibit the disclosure of certain material found to be detrimental to the security of transportation; in 2007, this subsection was redesignated as § 114(r).  Pub. L. 110–161 § 568, Dec. 26, 2007, 121 Stat. 1844.  Section 46110(a) has not yet been updated to reflect this clerical change.

seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals.").

Here, DHS has withheld information designated as security sensitive pursuant to § 114(r). Because this Court lacks jurisdiction to review the merits of the specific withholdings made pursuant to that provision, *see* 49 U.S.C. § 46110(a), (c), the legal conclusion that § 114(r) qualifies for exemption 3 withholding takes this Court as far as it can go here.  DHS is entitled to summary judgment on its withholding of the material designated as security sensitive information.

## V. BOTH PARTIES ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO THE EXEMPTION 4 WITHHOLDINGS

DHS moves for summary judgment as to its withholdings pursuant to exemption 4, and EPIC challenges only some of these withholdings.  DHS is entitled to summary judgment with respect to the unchallenged exemption 4 withholdings and both parties are entitled to partial summary judgment with respect to the challenged exemption 4 withholdings.

Exemption 4 protects from disclosure information that is "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Information is exempt only if it is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.  *See Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).

Because EPIC does not contest that any of the withheld information is "commercial" or "privileged or confidential," the sole question is whether the withheld information was "obtained from a person."  Information may be "obtained from a person" if provided by individuals, corporations, or numerous other entities, but not if it was generated by the federal government. *See Bd. of Trade v. CFTC*, 627 F.2d 392, 404 (D.C. Cir. 1980). However, government-prepared

records may be protected if they summarize information obtained from another person. *See, e.g.,*
*Gulf & W. Indus. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir. 1979).  The key inquiry is
who "the source of the information [was] in the first instance," and not necessarily who created
the particular document.  *See In Def. of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 83, 103
(D.D.C. 2008).

EPIC challenges fifteen sets of exemption 4 withholdings from three documents, all
regarding the radiation emitted by body scanning machines produced by American Science &
Engineering ("AS&E").

### A.  2006 Report

The first contested document is a 33-page 2006 report authored by a government official
evaluating the radiation safety of a body scanning machine called the "Dual Smart Check"
produced by AS&E.  *See* Pl.'s Ex. 1 § II (challenging withholdings at Bates numbers 926, 933,
934, 936, 937, 940, 941, 942, 944–45, 946, 947, & 954–56); Def.'s Opp'n 14; Def.'s Ex. C to
Decl. of Pamela Beresford ("TSL[5] *Vaughn* Index"), ECF No. 9-3.

DHS concedes that "the withholdings in this report reflect the government's own
radiation measurements conducted on an AS&E Smart Check machine . . . ."  Def.'s Opp'n 15;
*see also id.* at 16 (describing the information at issue as "radiation testing results performed on
machines that were obtained by the government from AS&E for testing purposes").
Accordingly, the "source of the information in the first instance" was the government, not a
"person."  *See In Def. of Animals*, 543 F. Supp. 2d at 103.

DHS argues that the "ultimate source" of information was not the testing but the machine
provided by the company for testing.  Def.'s Opp'n 16.  This argument fails.  DHS relies on

---

[5] The Transportation Security Laboratory is a unit within S&T.  Beresford Decl. ¶ 3, ECF No. 9-3.

cases finding that information collected by the government at on-site visits to private manufacturing plants were "obtained from a person" and protected from disclosure. *See Lion Raisins, Inc. v. USDA*, 354 F.3d 1072 (9th Cir. 2004); *Mulloy v. Consumer Prod. Safety Comm'n,* 1985 U.S. Dist. LEXIS 17194 (S.D. Ohio).  But these cases are neither binding on this Court nor persuasive in the present case.  First, neither case addressed the issue of whether the information was "obtained from a person."  *See* Def.'s Opp'n 15, 16 n.13.  Second, even assuming that information gathered from an on-site visit to a plant qualifies as "obtained from a person," information gathered from a test of equipment already in the government's possession does not.  This information was generated by the government's own testing, not by a private party, and therefore is not entitled to exemption 4 protection.  This Court will order DHS to disclose this information.

### B.  2008 Report

The second document is a 3-page 2008 report authored by the same government official evaluating a later version of the same machine.  *See* Pl.'s Ex. 1 § II, ECF No. 11-5 (challenging withholdings at Bates numbers 897–99, 1190–91); Def.'s Opp'n 13-14; TSL *Vaughn* Index 14, 20.  The TSL *Vaughn* Index asserts that the information included in this document was based on:

> (1) a third-party compliance report . . . submitted to the government as part of AS&E's Qualification Package . . . demonstrating compliance with certain requirements . . . (2) radiation dosage maps submitted by AS&E . . . , (3) designs and other information obtained from AS&E, and (4) *a prior evaluation conducted by Mr. Cerra* [citing the Bates number of the 2006 Report] *based on an earlier-model AS&E system obtained by the government for testing.*

TSL *Vaughn* Index 14 (emphasis added); *see also* Def.'s Opp'n 14–15.  Thus, this 3-page report was based in part on the 2006 report, which, this Court has found was not "obtained from a person."  Information based on that earlier report would also not be "obtained from a person."

With respect to the report, Bates numbers 897–99, the TSL *Vaughn* Index states that the withholdings from this report include the following:

- Descriptions of design features and scanning mechanisms used by AS&E Dual SmartCheck, including measurements and geometry of x-ray beam

- Specific Radiation Dose Levels Emitted by AS&E Dual SmartCheck at various locations

- Assessments of, and recommendations for improving, radiation safety of AS&E Dual SmartCheck

TSL *Vaughn* Index 14. The government bears the burden to justify withholding any records. 5 U.S.C. § 552(a)(4). These descriptions fail to demonstrate that any particular piece of the withheld information was *not* based on the 2006 report, so the Court finds that these withholdings were invalid under exemption 4. The Court will order DHS to produce the report—save for any parts that were properly withheld under other exemptions.

DHS also withheld information from an attachment to the report, Bates numbers 1190–91. This attachment, a "dosage map," was "submitted by AS&E in connection with the evaluation of AS&E's Dual Smart Check . . . ." *Id.* Because the information withheld from this attachment was "obtained from a person" this withholding was valid.

### C. E-mail

The third document is an email submitted by AS&E to a TSL official regarding compliance with radiation safety standards. Pl.'s Ex. 1 § II (challenging withholdings at Bates numbers 1192–93); Def.'s Opp'n 13–14; TSL *Vaughn* Index 20–21. Because this e-mail was "obtained from a person," the withholding pursuant to exemption 4 was valid.

## VI.   DHS IS ENTITLED TO SUMMARY JUDGMENT AS TO ITS EXEMPTION 5 WITHHOLDINGS

DHS moves for summary judgment as to its withholdings pursuant to exemption 5.  EPIC challenges only some of these withholdings.  DHS is entitled to summary judgment with respect to all of its exemption 5 withholdings.

FOIA's exemption 5 permits the non-disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  One such privilege is the "deliberative process privilege," which "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).  A document is predecisional if "it was generated before the adoption of an agency policy" and deliberative if "it reflects the give-and-take of the consultative process." *Id.*  The deliberative process protection covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath*, 532 U.S. at 8.  The general purpose of the deliberative process privilege is "to prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).

EPIC challenges certain withholdings because they consist of "purely factual" material.  EPIC also challenges other withholdings from documents DHS refers to as "drafts" because DHS failed to point to a final version of the document.  The Court will address these arguments and the related documents in turn.

## A. Factual Material

The D.C. Circuit has explained that "[p]urely factual material usually cannot be withheld under exemption 5 unless it reflects an exercise of discretion and judgment calls." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotations and citations omitted). "Thus the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Id.*

For instance, in *Montrose Chemical Corp. of California v. Train* the Circuit held that factual summaries compiled into documents used by the administrator in the resolution of a difficult, complex question were within the protection of exemption 5, because "[t]o probe the summaries of record evidence would be the same as probing the decision-making process itself." 491 F.2d 63, 68 (D.C. Cir. 1974). Similarly, in *Mapother v. Dep't of Justice*, the Circuit held that factual materials included in a report were immune from disclosure where that information "was assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." 3 F.3d 1533, 1539 (D.C. Cir. 1993); *see also Ancient Coin Collectors Guild*, 641 F.3d at 513–14.

In contrast, in *Playboy Enterprises, Inc. v. Department of Justice*, the Circuit found that factual materials contained in a report were not protected because the report was "prepared only to inform the Attorney General of facts which he in turn would make available to members of Congress." 677 F.2d 931, 936 (D.C. Cir. 1982).

EPIC challenges four of DHS's withholdings of what it considers to be "purely factual" material:

1.  <u>Draft Fact Sheet on Radiation Exposure</u>: This document, withheld in full, contains "[e]arly, internal draft versions of a fact sheet on

radiation exposure and AIT."  Def.'s Ex. A to Decl. of Bert Coursey ("TES[6] *Vaughn* Index") 604–05, ECF No. 9-2.

2. <u>Working Document on Radiation Exposure</u>: This document, withheld in full, is an "[i]nternal working DHS document compiling estimates of radiation exposure from various types of AIT based on external, unverified data."  TES *Vaughn* Index 606.

3. <u>Draft Fact Sheets on Health & Safety</u>: These documents, withheld in full, are "working drafts of DHS 'fact sheet[s]' on health and safety issues related to AIT."  TSL *Vaughn* Index WHIF B.

4. <u>E-mails re: Dosimeters</u>: This e-mail exchange, withheld in full, "contains an informal question-and-answer discussion between two government employees regarding types of dosimeters (personal radiation monitors) that could be appropriate for measuring radiation from AIT."  TSL *Vaughn* Index WHIF H.

*See* Pl.'s Opp'n, Ex. 1 § III (a).[7]

The Court finds that all of these materials, factual or not, were properly withheld under exemption 5, because they are all part of DHS's deliberative process regarding the future of the AIT program.  Disclosure of these deliberations would cause "injury to the quality of agency decisions" and will not be required.  *Sears, Roebuck & Co.*, 421 U.S. at 151.

EPIC quotes from DHS's brief and the *Vaughn* Index to bolster its claim that these materials are ineligible because the materials are purely factual documents: "[t]he agency is withholding 'fact sheets,' 'preliminary testing results,' and information regarding types of dosimeters (personal radiation monitors that could be appropriate for measuring radiation from AIT devices.)"  Pl.'s Opp'n 17–18 (quoting Def.'s Br. 14, 16; TSL *Vaughn* Index WHIF H.).

---

[6] Test, Evaluation, and Standards office of the Science and Technology Directorate, a component of DHS.  *See* Coursey Decl. ¶ 2, ECF No. 9-2.

[7] EPIC refers to an additional withholding not listed above: TSL *Vaughn* Index WHIF C.  *See* Pl.'s Reply 14 ("It would be difficult to think of a more axiomatic example of a factual document than one that the agency itself has described as a 'fact sheet.'" (citing TSL Vaughn, WHIF C).  However, the *Vaughn* Index does not describe that document as a "fact sheet," but rather as a "talking-point" memo.  And, as noted above, the *Vaughn* Index *does* describe WHIF B, as a "fact sheet."  For the foregoing reasons, and because EPIC failed to list this document in its master list of challenged withholdings, the Court will not address this document further.

EPIC's quotation is misleading: the government's brief actually states that DHS withheld "records related to *the drafting process* of . . . fact sheets."  Def.'s Br. 14 (emphasis added). Elsewhere, as in the above withholdings descriptions drawn from the *Vaughn* indices, DHS acknowledged withholding fact sheets, but only "*draft* or *preliminary* fact sheets as well as deliberations concerning those drafts."  Def.'s Reply 19 (emphasis added).  EPIC has apparently failed to acknowledge, much less rebut, this important qualification on the nature of the withholdings.  Again, the drafts and deliberations surrounding these fact sheets were part of DHS's deliberations on the future of the body scanner program.  Thus, whether "factual" or not, they are part of DHS's deliberative process.  The government's descriptions of these withholdings are sufficiently specific to justify protection under the deliberative process privilege.

As to "preliminary testing results" and the information on "dosimeters," EPIC's characterization is accurate, but nevertheless does not merit disclosure. The fact that the "testing" was *preliminary* is key: these preliminary results were part of the agency's deliberations in how to approach the potential risks of the body scanning technology.  As to the "dosimeter" document, the description indicates that it contains an "informal question-and-answer discussion between two government employees"—exactly the sort of agency deliberation that this exemption is meant to protect. The government's descriptions of these withholdings is sufficient to demonstrate that the factual material was part of the agency's deliberative process regarding the future testing and implementation of the body scanner program and thus qualifies for protection under exemption 5.

**B.  Drafts**

A document designated as a "draft" does not automatically obtain protection pursuant to exemption 5.  "Even if a document is a draft of what will become a final document, the court must also ascertain whether the document is deliberative in nature." *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257–58 (D.C. Cir. 1982); *see also Dudman Commc'ns Corp. v. Dep't of Air Force,* 815 F.2d 1565, 1569 (D.C. Cir. 1987) ("disclosure of editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis—would stifle . . . creative thinking and candid exchange of ideas . . . .").

EPIC claims that "[w]hen an agency uses the deliberative process privilege to withhold draft documents under Exemption 5, it must identify a corresponding final decision" and relies on several cases from this district in support of this position. Pl.'s Opp'n 19.  But this overstates the burden on agencies.  As the Supreme Court explained:

> Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*Sears, Roebuck & Co.*, 421 U.S. at 153 n.18.  Accordingly, to protect a "draft" document, an agency need not necessarily identify a corresponding final document but must provide adequate description of the document to demonstrate that it was genuinely part of the agency's deliberative process.

EPIC's reliance on three cases from this district in support of its proposed rigid rule is misplaced.  Pl.'s Opp'n 19.  EPIC's reliance on *Exxon Corp. v. Department of Energy* is particularly misleading.  EPIC omitted the key modifying phrase "In some instances" that

precedes the language they quote: "where DOE has failed to identify a final document corresponding to a putative draft, the 'draft' shall be ordered produced . . . ." 585 F. Supp. 690, 698 (D.D.C. 1983). Moreover, even the language EPIC does not selectively omit reflects a more nuanced rule than the one EPIC proposes; the sentence concludes: ". . . to the extent that the agency has provided no basis for determining that it in fact has such status." *Id.* Similarly, in *Mayer, Brown, Rowe & Maw LLP v. IRS*, Judge Collyer found that the documents at issue were "too removed from an actual policy decision" to warrant protection under exemption 5, but the case does not stand for the proposition that an agency seeking to withhold a draft must always point to a final version of that document. 537 F. Supp. 2d 128, 136 (D.D.C. 2008). Finally, in *Judicial Watch, Inc. v. U.S. Postal Serv.*, Judge Kennedy faulted the government for failing to "identify *specific* final decisions or decisionmaking processes to which the documents contributed" where the government had merely suggested in a general way that the documents related to the issues raised in the FOIA request. 297 F. Supp. 2d 252, 264 (D.D.C. 2004). *Judicial Watch* does not stand for the rule EPIC proposes.

With these principles in mind, the Court turns to the contested withholdings. EPIC challenges numerous withholdings of "drafts":

1. <u>Response to EPIC</u>: This document, withheld in part pursuant to both the deliberative process privilege and the attorney client privilege under Exemption 5, contained "draft language, from [an] attorney in TSA['s] Office of Chief Counsel to [a] TSA official regarding [a] suggested response letter to EPIC's petition to suspend use of AIT." from Def.'s Ex. K to Decl. of Paul Sotoudeh ("TSA *Vaughn* Index") 26–27.

2. <u>Draft Document On Standards and Testing</u>: This document, withheld in full, is a "marked-up draft of a document called 'Standards and Testing for Radiation Safety for Airport Backscatter X-Ray Systems.'" TSL *Vaughn* Index WHIF I.

17

3.     <u>Memoranda on Body Scanner Radiation and Safety</u>: One document, withheld in part, is an "internal memorandum on AIT safety." TSA *Vaughn* Index 38. The withheld portion "contains recommendation[s] from [an] internal memorandum regarding future efforts by TSA regarding development of [body scanner] radiation safety standards." *Id.* Another document, withheld in part, contains "[i]nternal deliberations concerning [a] cover memo for [a] report on AIT safety, including draft language for [the] memorandum." TSA *Vaughn* Index 69–70. A third document, withheld in part, contains "preliminary versions, edits, and revisions of excerpts of a memorandum to the Undersecretary of DHS on AIT radiation safety." TES *Vaughn* Index 87–88. A fourth document, withheld in full, contains "comments and suggested revisions to a draft document on AIT radiation safety." TES *Vaughn* Index 608. A fifth group of documents, withheld in full, contain "draft versions of memorandum on AIT safety, emails containing comments on the drafts, and emails concerning releasing the memoranda and fact sheets on AIT safety to a wider audience." TES *Vaughn* Index 665–80, 688–726. A sixth document, withheld in full, contains "comments concerning a draft version of memorandum on AIT safety." TES *Vaughn* Index 741–42. A seventh set of documents, withheld in full, are "draft versions of a document on AIT radiation safety standards, with changes tracked." TES *Vaughn* Index 743–54, 750–52, 1057–59. A ninth document, withheld in full, contains "comments concerning a draft version of a fact sheet on AIT safety, as well as draft versions of the fact sheet." TES *Vaughn* Index 785–88, 792–838. A tenth document, withheld in full, contains "deliberations concerning a draft NIST [National Institute of Standards and Technology] technical bulletin on AIT radiation safety, and draft versions of the NIST technical bulletin." TES *Vaughn* Index 1060–1100, 1108–1146, 1149–86. Finally, an eleventh document, withheld in part, contains "suggestions of points to be included in [a] draft memorandum to [the] Deputy Secretary of DHS on radiation safety." TSL *Vaughn* Index 908–910.

4.     <u>Drafts of Fact Sheet</u>: These documents, withheld in full, contains "working drafts of [a] DHS 'fact sheet' on health and safety issues related to AIT." TSL *Vaughn* Index WHIF B.

5.     <u>Draft Summary of AIT Radiation Safety</u>: This document, withheld in full, is "an early draft of [a] policy document concerning AIT radiation safety" entitled "Summary of Advanced Imaging Technology (AIT) Radiation Safety: Standards and Ensuring Compliance, April 22, 2010." TSL *Vaughn* Index WHIF J.

6.     <u>Response to Congressional Inquiries</u>: One document, withheld in part, contains "[i]nternal deliberations concerning TSA's response to [a]

congressional inqury, including draft language for [the] response."
TSA *Vaughn* Index 52. A second document, withheld in part,
"reflect[s] deliberations regarding the formulation of a response by
DHS to inquiries by Congress, including a draft version of the
response to one question." TES *Vaughn* Index 80–82. A third set of
documents, withheld in part, consist of "deliberations concerning a
proposed response to a letter by Senators Collins, Coburn, and Burr
concerning backscatter radiation safety." TES *Vaughn* Index 951–58,
971–72, 980–82, 990–1023. A fourth set of documents, withheld in
full, consist of "discussions regarding how to respond to an inquiry
from a congressional committee concerning AIT radiation safety."
TES *Vaughn* Index 746–49. A fifth set of documents, withheld in full,
contain "comments, revisions, and internal memoranda making
recommendations concerning a proposed response to a letter by
Senators Collins, Coburn, and Burr concerning backscatter radiation
safety, as well as draft versions of the response letters and
accompanying white paper." TES *Vaughn* Index 959–70, 973–79,
983–89, 1024–48.

7. <u>Draft TSA Assessments and Findings</u>: This document, withheld in full,
is a "[d]raft version (including tracked changes) of TSA
assessment/findings regarding radiation output of AIT machines."
TSA *Vaughn* Index 108A–F.[8]

8. <u>Response to Scientists</u>: One document, withheld in part, "describes the
contents of a draft letter responding to scientists' concerns about AIT
and radiation safety." TES *Vaughn* Index 113–15. A second
document, withheld in part, contains "the authors' discussions and
opinions regarding reactions to the government's response to the
UCSF letter of concern, and future steps to take to address these
reactions." TES *Vaughn* Index 440–48. A third document, withheld
in part, contains "the author's discussions of future steps she intends to
take regarding correspondence between Dr. Holdren and UCSF." TES
*Vaughn* Index 535.[9] A fourth document, withheld in part, "consist[s]
of opinions concerning a proposed response to a letter from scientists
at UCSF concerning backscatter radiation safety." TES *Vaughn* Index
943–44. A fifth set of documents, withheld in full, "consist of
comments and revisions concerning a proposed response to a letter
from scientists at UCSF concerning backscatter radiation safety, as
well as draft versions of the response letter." TES *Vaughn* Index 839–
60, 866–89, 896–907, 911–42, 949–50.

---

[8] EPIC intended to list this document rather than TSA *Vaughn* Index 107–08. *See* Pl.'s Reply 12. The Court finds
that considering this document will not prejudice DHS, although they have not had the opportunity to respond to the
specific challenge, because DHS's description of the document is materially similar to several other documents.

[9] There is a discrepancy here. EPIC refers to TES *Vaughn* Index 535–36, but the index contains no such
document—referring only to "535, 546." The Court assumes that EPIC refers to this document.

9.      <u>Response to Pilots</u>: One set of documents, withheld in part, contains "draft language and deliberations concerning a DHS/TSA response to the concerns raised by American Airlines pilots." TES *Vaughn* Index 381–82, 384–86.  A second document, withheld in part, contains "the author's reflections regarding concerns raised by the Allied Pilots Association." TES *Vaughn* Index 391–92.

10.     <u>Documents for DHS Leadership on Radiation Safety</u>: One document, withheld in full, "contains comments regarding an upcoming response by the DHS Undersecretary on radiation safety." TES *Vaughn* Index 609.  A second set of documents, withheld in full, "contain comments on, edits to, and draft versions of a memorandum to the Deputy Secretary of DHS on AIT safety." TES *Vaughn* Index 620–29.  A third document, withheld in full, "consists of comments and suggestions regarding the content of a proposed memorandum to the Deputy Secretary of DHS on AIT radiation safety." TES *Vaughn* Index 631–35.  A fourth document, withheld in full, "consist[s] of a draft version of a memorandum to the Deputy Secretary of DHS on AIT safety, with changes tracked, and an email forwarding the draft memorandum." TES *Vaughn* Index 651–55.  A fifth document, "consist[s] of comments and deliberations concerning draft versions of a question-and-answer memorandum to the DHS Secretary concerning backscatter radiation safety, as well as draft versions of the memorandum." TES *Vaughn* Index 753–84.

11.     <u>Draft AIT Standard Operating Procedures</u>: This document, withheld in full, consists of "emails forwarding a draft section regarding employee safety from TSA's Advanced Imaging Technology Standard Operating Procedure (SOP), and the draft SOP sections themselves."  TES *Vaughn* Index 611–19.

12.     <u>Response to Foreign Government</u>: This document, withheld in full, consists of "discussions between agency personnel regarding how to respond to an inquiry from a foreign government concerning AIT radiation safety." TES *Vaughn* Index 729–40.

13.     <u>FDA Testing</u>: This document, withheld in full, "is a preliminary progress report, resulting from an interagency agreement between DHS and FDA, by the FDA concerning the testing of the effects of the L3 Provision on personal medical devices." TSL *Vaughn* Index WHIF L.  The report "reflects an interim report prior to the completion of testing of the effects of the L3 Provision on medical devices." *Id.*

20

As a preliminary matter, the first of these withholdings, TSA *Vaughn* Index 26–27, was withheld pursuant to both the deliberative process privilege and the attorney client privilege, but EPIC challenges only the former.  Accordingly, DHS is entitled to summary judgment as to this withholding.

As to the remaining documents, EPIC's sole argument with respect to these withholdings is that DHS failed to indicate a corresponding "final" document that would justify withholding these "drafts."  As discussed above, this overstates the agency's burden.  Instead, the agency must only demonstrate that each withholding, "draft or otherwise," was genuinely part of the agency's deliberative process.  The Court is satisfied with the descriptions provided in the *Vaughn* indices that each of these withholdings meets this requirement and finds that these withholdings were proper pursuant to exemption 5.

Finally, EPIC's assertion that DHS failed to produce segregable portions of the withheld documents also fails.  *See* Pl.'s Opp'n 19–20.  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  According to the *Vaughn* indicies provided by the agency, many of the contested withholdings under exemption 5 were partial redactions from specific pages, rather than complete withholdings of entire documents.  *See Vaughn* Index 13–14, 17–19.  Moreover, the agency has twice made supplemental release of documents after determining that further segregable material could be released and has declared in a sworn affidavit that it has released the segregable portion of each of these records.  Sotoudeh Decl. ¶¶ 22–23, 72.  As EPIC has failed to offer any argument in support of its allegation that might cast doubt on DHS's sworn statement, the Court finds that all reasonably segregable materials were disclosed.

## VI.     ATTORNEYS' FEES AND COSTS

EPIC has moved for attorneys' fees and costs.  Pl.'s Opp'n 20–24.  The Court will not address that motion here.  Pursuant to the local rules, the Court shall "enter an order directing the parties to confer and to attempt to reach agreement on fee issues" and shall set a status conference at which the Court will

> (1) determine whether settlement of any and or all aspects of the fee matter has been reached, (2) enter judgment for any fee on which agreement has been reached, (3) make the determination [regarding pending appeals] required by paragraph (b) of . . . [LCvR 54.2], and (4) set an appropriate schedule for completion of the fee litigation.

LCvR 54.2.

## VII.     CONCLUSION

For the foregoing reasons, EPIC and DHS are both entitled to partial summary judgment. An Order shall issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on March 7, 2013.