## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER )<br><br>Plaintiff, )<br>v. )<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY )<br><br>Defendant. ) | No. 1:10-01992 (RCL) |

### PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff the Electronic Privacy Information Center ("EPIC") hereby moves for an order compelling Defendant U.S. Department of Homeland Security (the "DHS") to pay EPIC's attorneys' fees and costs in this lawsuit. EPIC's Freedom of Information Act ("FOIA") lawsuit forced disclosure of hundreds of pages of DHS records. The records would have otherwise remained secret. EPIC is therefore eligible to recover fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E). EPIC's fees and costs total $31,722.50 and are supported by the attached affidavits, time records, and receipt. In an attempt to reach a settlement, EPIC's counsel has discussed this motion with counsel for the DHS. DHS opposes.

### FACTUAL BACKGROUND

In 2005, the Transportation Security Administration ("TSA"), a DHS component, began testing Whole Body Imaging ("WBI") technology in U.S. airports to screen air travelers on commercial aircraft. WBI devices, which then included both backscatter x-ray and millimeter wave technology, capture detailed, three-dimensional images of individuals.

The WBI devices literally peer through clothing to observe and capture an image of the naked human body.

TSA originally stated that body scanners would be an alternative technique for secondary screening, and would not be a primary screening device. However, in February 2009, the Agency announced that it would require passengers at six airports to submit to full body scanners in place of the standard walk-through metal detector search for primary screening. The Agency later announced that it would deploy full body scanners for primary screening at all U.S. airports, and has since installed thousands of these devices in airports across the Country. The DC Circuit subsequently determined that the agency failed to comply with the Administrative Procedure Act when it undertook this substantial change in agency practice without providing a notice and comment opportunity. *EPIC v. DHS*, 653 F.3d 1 (D.C. Cir. 2011).

Experts have questioned the safety of Whole Body Imaging devices and noted that radiation exposure may increase the risk of cancer. Of particular concern are the backscatter x-ray devices, which the TSA eventually removed from U.S. airports. In April 2010, scientists at the University of California – San Francisco wrote to President Obama, calling for an independent review of the full body scanner radiation risk. (Until that time and to the present day, the agency has relied upon the studies it has commissioned in support of its program to justify its evaluation that the risks are "minimal.") The experts stated that children, pregnant women, and the elderly are especially at risk "from the mutagenic effects of the [body scanners] X-rays."

Dr. David Brenner, director of Columbia University's Center for Radiological Research and a professor of radiation biophysics, has warned "it's very likely that some

number of [air travelers] will develop cancer from the radiation from these scanners." Peter

Rez, a professor at Arizona State University, has identified cancer risks to air travelers

arising from improper maintenance and flawed operation of the TSA's full body scanners.

Other scientists and radiology experts have also identified serious health risks associated

with the full body scanner program.

In order to make possible a more comprehensive assessment of the radiation risks to

American air travelers of the agency's airport screening program, on July 13, 2010, EPIC

transmitted a written FOIA request ("EPIC's FOIA request") to DHS for the following

agency records:

1. All records concerning TSA tests regarding body scanners and radiation
   emission or exposure;

2. All records concerning third party tests regarding body scanners and
   radiation emission or exposure.

EPIC asked the agency to expedite its response to EPIC's FOIA request and

requested "News Media" fee status, based on its status as a "representative of the news

media." EPIC further requested waiver of all duplication fees.

On July 29, 2010, DHS acknowledged receipt of EPIC's FOIA Request and stated

that it had determined that the records sought by EPIC were in the possession of the TSA

and the DHS Science and Technology ("S&T") directorate, a component of the agency. The

agency referred the request to TSA FOIA Officer Kevin Janet and S&T FOIA Officer Miles

Wiley.

On August 12, 2010, TSA wrote to EPIC denying the request for a fee waiver and

for expedited processing. EPIC appealed both denials on August 27, 2010. The TSA failed

to make a timely determination regarding EPIC's appeal. EPIC again appealed on October

21, 2010, this time challenging the TSA's denial of fee waiver and unlawful withholdings.

On September 3, 2010, S&T responded to EPIC, denying EPIC's request for a fee

waiver. On October 21, 2010, EPIC appealed this determination, along with S&T's failure

to respond within the statutory deadline.

After the TSA failed to comply with the statutory deadline to reply to EPIC's appeal,

EPIC filed suit on November 19, 2010.

On June 6, 2011, after the filing of this lawsuit, TSA produced 126 pages of

responsive documents. On June 21, 2011, TSA produced an additional 69 pages and S&T

produced 1,677 pages of responsive documents. On September 7, 2011, the TSA released

an additional 208 pages of documents. However, the TSA withheld many documents, in

full and in part, and has asserted exemptions (b)(3), (b)(4), and (b)(5) as the basis for its

determinations.

On March 7, 2013, this Court issued its judgment in this case, ordering the TSA to

disclose several documents that had previously been withheld.

EPIC now seeks to recover fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

## STANDARD OF REVIEW

Before a court may award attorneys' fees in FOIA cases, it must first determine

whether the plaintiff is eligible for a fee award. *Tax Analysts v. Dep't of Justice*, 965 F.2d

1092, 1093 (D.C. Cir. 1992). If a plaintiff is eligible, the court must then determine

whether the plaintiff is entitled to recover fees. *Id.*

In a FOIA lawsuit, "The court may assess against the United States reasonable

attorney fees and other litigation costs reasonably incurred in any case under this section

in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "A

complainant has substantially prevailed if the complainant has obtained relief through

either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a

voluntary or unilateral change in position by the agency, if the complainant's claim is not

insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).

I.      <b>EPIC is Eligible for and Entitled to Recover Costs and Fees</b>

A.  <b>EPIC is Eligible for Costs and Fees Because EPIC "Substantially<br>Prevailed" by Forcing Disclosure of DHS Records</b>

EPIC is entitled to recover its fees and costs from the DHS in this matter. EPIC

asks the Court to enter judgment as to EPIC's eligibility and entitlement to fees and to

order further briefing as to the amount of costs and fees. "The court may assess against

the United States reasonable attorney fees and other litigation costs reasonably incurred

in any case under this section in which the complainant has substantially prevailed." 5

U.S.C. § 552(a)(4)(E). "A complainant has substantially prevailed if the complainant has

obtained relief through … a voluntary or unilateral change in position by the agency, if

the complainant's claim is not insubstantial." *Id*. The determination of whether the

plaintiff has "substantially prevailed" is "largely a question of causation." *Weisberg v.

Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984); *Church of Scientology v. Harris*,

653 F.2d 584, 587 (D.C. Cir. 1981). The key inquiry is "did the institution and

prosecution of the litigation cause the agency to release the documents obtained during

the pendency of the litigation?" *Church of Scientology*, 653 F.2d at 587.

EPIC has already "substantially prevailed" in this lawsuit. As described above and

in the Defendant's Motion for Summary Judgment, EPIC filed its FOIA request

concerning body scanners on July 13, 2010. On August 27, 2010 EPIC filed an

administrative appeal with the TSA, challenging the agency's denial of fee waiver and expedited processing. On October 21, 2010, EPIC filed a second administrative appeal with TSA, this time challenging the TSA's wrongful withholding of documents and reiterating its challenge of the agency's denial of fee waiver. On October 21, 2010, EPIC filed an administrative appeal with S&T appealing the agency's wrongful withholding of documents and denial of fee waiver. On November 19, 2010, EPIC filed this lawsuit challenging the agency's wrongful withholding of documents.

On June 6, 2011, subsequent to the filing of this lawsuit, TSA produced 126 pages of responsive documents. On June 21, 2011, TSA produced an additional 69 pages and S&T produced 1,677 pages of responsive documents. On September 7, 2011, the TSA released an additional 208 pages of documents. "The institution and prosecution" of this suit plainly "cause[d] the agency to release the documents obtained during the pendency of the litigation." *Church of Scientology*, 653 F.2d at 587.

### B.   EPIC has Satisfied the Four-Prong Test for Entitlement to Fees

EPIC is also entitled to fees under the four-factor test employed by this circuit. "The court should consider [four factors] in determining the appropriateness of an award of costs and attorney fees." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977). The four factors are: 1) "the benefit to the public, if any, deriving from the case;" 2) "the commercial benefit of the complainant;" 3) "the nature of [the complainant's] interest in the records sought"; and 4) "whether the government's withholding of the records sought had a reasonable basis in law." H. Comm. on Gov't Operations and S. Comm. on the Judiciary, 94th Cong., *Freedom of Information Act and Amendments of 1974 (Pub. L. No. 93-502) Source Book,* 189-90 (J. Comm. Print 1975).

"Public benefit" can be demonstrated by a "newsman who seeks information to be used in a publication or the public interest group seeking information to further a project benefitting the general public." *Davy v. C.I.A.*, 550 F.3d 1155, 1158 (D.C. Cir. 2008). The "public benefit" factor supports an award where the complainant's victory is "likely to add to the fund of information that citizens may use in making in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citations omitted). D.C. District Court has found that news media coverage is relevant for determining "public benefit." *Elec. Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec.,* 2011 WL 4014308 (D.D.C. Sept. 12, 2011).

EPIC's FOIA suit provided substantial benefit to the public. EPIC maintains two of the most popular websites in the world - www.epic.org and www.privacy.org - for searches on the term "privacy." EPIC disseminated the agency records it received on its www.epic.org web site[1] and to the approximately 8,000 recipients of its bi-weekly newsletter.[2] EPIC's FOIA work in this matter was prominently featured in *Time Magazine*:

> Now, the Washington-based Electronic Privacy Information Center (EPIC) has obtained documents from the Department of Homeland Security, which EPIC says provide evidence that the government failed to properly test the safety of full-body scanners at airports, and dismissed concerns from airport agents about excessive exposure to the machines' radiation.
>
> The documents, which include emails, radiation test results and radiation studies, were obtained through a Freedom of Information Act lawsuit filed by EPIC and released on June 24. The advocacy group says they indicate that Homeland Security "publicly mischaracterized" safety findings by the National Institute of

---

[1] EPIC, *EPIC v. DHS Lawsuit -- FOIA'd Documents Raise New Questions About Body Scanner Radiation Risks*, (June 24, 2011), available at: http://epic.org/2011/06/epic-v-dhs-lawsuit----foiad-do.html.
[2] EPIC Alert, *FOIA'd DHS Documents Raise New Questions About Body Scanner Risks*, July 5, 2011, available at: http://epic.org/alert/epic_alert_1813.html.

Standards and Technology (NIST), by suggesting that NIST had "affirmed the safety" of full body scanners.

Frances Romero, "Did Airport Scanners Give Boston TSA Agents Cancer," *Time*, June 30, 2011.[3] Other news organizations reported on the documents EPIC obtained, as well. *See, e.g.,* Sara J. Welch, "Airport Body Scanners and Health," *New York Times,* July 12, 2011;[4] Kate Taylor, "TSA 'ignored warnings' on cancer cluster," *TG Daily*, June 28, 2011.[5]

 "Commercial benefit to the complainant" might preclude an award if the beneficiary is a "large corporate interest (or a representative of such an interest)." *Freedom of Information Act and Amendments of 1974 Source Book* at 171. However, commercial benefit does not bar recovery "where the complainant was indigent or a nonprofit public interest group." *Id.* In fact, nonprofit organizations are "the sort of requester that Congress intended to recover attorney's fees under FOIA." *Elec. Frontier Found. v. Office of the Director of National Intelligence*, 2008 WL 2331959 (N.D. Cal. June 4, 2008). EPIC is a 501(c)(3) non-profit public interest research center. EPIC derived no commercial benefit from its FOIA request or lawsuit. The sole benefit was derived by the public, which benefited from the disclosure of the body scanner documents released in this case.

The "nature of the [complainant's] interest" factor is "closely related [to] and often considered together" with the commercial benefit criterion. *Tax Analysts v. Dep't of*

---

[3] Available at http://healthland.time.com/2011/06/30/did-airport-scanners-give-boston-tsa-agents-cancer/#ixzz1c6bhX5ZL

[4] Available at: http://intransit.blogs.nytimes.com/2011/07/12/airport-body-scanners-and-health/

[5] Available at http://www.tgdaily.com/hardware-features/56899-tsa-ignored-warnings-on-cancer-cluster

*Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) Favored interests are "scholarly, journalistic or public-interest oriented." *Freedom of Information Act and Amendments of 1974 Source Book* at 171. *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was held "wrong as a matter of law and an abuse of discretion."). As set forth above, EPIC's interest in this matter is squarely within the "scholarly, journalistic or public-interest oriented" interests favored by the statute. *See, e.g., EPIC v. United States Dep't of Homeland Sec.,* 760 F. Supp. 2d 4, 44 (D.D.C. 2011) ("[EPIC's] aims, which include dissemination of information regarding privacy issues to the public, . . . fall within the scholarly and public-interest oriented goals promoted by FOIA, . . .")

The DHS did not have a "reasonable legal basis" for failing to disclose records to EPIC. The DHS's delay in replying to EPIC's request and appeal plainly violated the FOIA's statutory deadlines. *See* 5 U.S.C. § 552(a)(6)(A). As described in EPIC's Complaint, the DHS violated statutory deadlines by failing to make a timely determination concerning EPIC's administrative request and appeals. Compl. at ¶¶50-58. The DHS has cited no legal basis in opposition to EPIC's claims regarding the untimeliness of the agency's response. An agency's representation that records were not produced more quickly due to processing backlogs, confusion, and administrative error are "practical explanations, not reasonable legal bases" for withholding. *Miller v. Dep't of State*, 779 F.2d 1378, 1390 (8th Cir. 1985). "The FOIA does not contain a statutory exception for administrative inefficiency. When a private citizen is obliged to seek legal services in order to wrest from the government information which the government had no legal reason to withhold from him, he is entitled under the Act to be reimbursed for the

cost to which he has been put." *Id.* Nor did DHS cite any legal basis for withholding the more than 2,000 pages of documents that it later disclosed between June 2011 and September 2011.

In this case, EPIC was forced to sue the DHS in order to wrest from the government critical information concerning the DHS' mobile body scanner program. The DHS had no reason or legal basis to withhold these records. The agency must reimburse EPIC for its costs and fees.

**II.     EPIC's Attorneys' Fees and Costs are Reasonable**

**a.     EPIC Requests $31,722.50 in Costs and Fees**

EPIC's fees and costs incurred in this matter are set forth in detail in Exhibit 1 – "EPIC's Bill of Fees and Costs." EPIC moves the Court to award EPIC a total of $31,722.50 – $31,372.50 in attorneys' fees and $350 in costs. EPIC's request for attorneys' fees is supported by contemporaneously recorded time records kept by EPIC's attorneys. Exhibits 1-4. EPIC's request is further supported by Affidavits. McCall Aff.; Rotenberg Aff.; Stepanovich Aff.; Horwitz Aff.; Butler Aff.; Jacobs Aff.; Scott Aff; Barnes Aff. EPIC's request for costs is supported by the District Court's website. Exhibit 5. As set forth below, EPIC's fees and costs in this matter are reasonable.

**b.     The Laffey Matrix Provides a Reasonable Minimum Basis for Calculating EPIC's Fees**

To determine whether fees are reasonable, courts focus on two questions: (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable. *Nat. Veterans Legal Services Program v. U.S. Dept. of Veterans Affairs,* 1:96-CV-01740-NHL, 1999 WL 33740260 (D.D.C. Apr. 13, 1999). Attorneys' fees are calculated based on the "lodestar," which is the number of hours the

lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *See generally Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Consumers Union v. Fed. Reserve Sys.*, 410 F. Supp. 63, 64 (D.D.C. 1975). A lawyer's hourly rate is measured by its "fair market value," as well as "the quality of the attorney's work." *See generally Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (enumerating fee calculation factors in civil rights cases); *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 187-88 (D.C. Cir. 1974), cited with approval in *Copeland v. Marshall*, 641 F.2d 880, 889 (D.C. Cir. 1980) (en banc). "The District of Columbia Circuit has concluded that the second prong of the equation for calculating a fee award -- the reasonableness of hourly rates awarded under fee-shifting statutes -- consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135 (D.D.C. 2007) *citing Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

If an attorney regularly bills clients for legal services, his normal billing rate is presumed to be the "fair market value" of the attorneys' work. *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988); *citing Laffey v. Northwest Airlines*, 746 F.2d 4, 16 n.74 (D.C. Cir. 1986).

However, "for an attorney who has no customary hourly rate, the Court must look to the prevailing community rates in order to determine the appropriate hourly rate." *Save Our Cumberland Mountains*, 857 F.2d at 1518; *citing Blum v. Stenson*, 465 U.S. 886 (1984). "In the case of the public interest nonprofit law firm, [when] the attorneys have

no billing histories," a "proxy for the market must be found in order to set a reasonable

hourly rate." *Laffey*, 746 F.2d at 16 n.74.

> In *Laffey*, the District of Columbia Circuit affirmed the District Court's
> reasonableness assessment for measuring reasonable hourly rates, now
> commonly known as the Laffey Matrix. The Laffey Matrix designates
> what are reasonable hourly rates for attorneys of varying experience, and
> is adjusted annually based on cost of living increases. *Falica v. Advance
> Tenant Servs., Inc.*, 384 F. Supp. 2d 75, 78 (D.D.C. 2005). As this Court
> previously reiterated, "[u]sing this matrix as a guide, the Court must then
> exercise its discretion to adjust this sum upward or downward to arrive at
> a final fee award that reflects the characteristics of the particular case (and
> counsel) for which the award is sought." *Id*. (quoting *Laffey v. Northwest
> Airlines, Inc.*, 572 F. Supp. 354, 361 (D.D.C. 1983)). Additionally, parties
> "may point to such evidence as an updated version of the *Laffey* matrix or
> the [United States] Attorney's Office matrix, or their own survey of
> prevailing market rates in the community." *Covington*, 57 F.3d at 1109.

*American Lands Alliance*, 525 F. Supp. 2d at 148-49.

The Laffey Matrix is published by the Department of Justice at:

http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf and is attached

as Exhibit 6.

**III.    EPIC is Entitled to Recover "Fees on Fees"**

EPIC is entitled to recover fees on fees for the time spent litigating the fee issue

against the DHS. This Court previously upheld fees on fees in the FOIA context.

*Judicial Watch, Inc. v. U.S. Dept. of Homeland Sec.,* CIV.A.08-2133, 2009 WL 1743757

(D.D.C. June 15, 2009); *Nat. Veterans Legal Services Program v. U.S. Dept. of Veterans

Affairs,* 1:96-CV-01740-NHL, 1999 WL 33740260 (D.D.C. Apr. 13, 1999).  The Court

likened fees in FOIA suits to fees available in other similar statutory frameworks. "Fees-

on-fees are available Title VII and Equal Access to Justice Act cases which are similar to

FOIA actions." *Nat. Veterans Legal Services Program v. U.S. Dept. of Veterans Affairs,*

1:96-CV-01740-NHL, 1999 WL 33740260 (D.D.C. Apr. 13, 1999), internal citations

omitted, citing *Commissioner v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d

134(1990); *Jones v. Lujan,* 887 F.2d 1096, 1099-1100 & n. 4 (D.C.Cir.1989); *Copeland*

*v. Marshall,* 641 F.2d 880, 896 & n. 29 (D.C.Cir.1980).

The Court in *Copeland* noted that "time spent litigating the fee request is itself

compensable, . . ." *Id. citing Assembly of the State of California v. United States*

*Department of Commerce,* No. Civ. S-91-990, 1993 WL 188328, at *16 (E.D. Cal. May

28, 1993).  In *Assembly of the State of California* the court held that "a review of the

language and purpose of the FOIA fees provision indicates that a request for fees on fees

is proper under FOIA." *Id.*

EPIC has invested substantial time researching and preparing documents related

to the fee issue and is entitled to be compensated for that time under the FOIA. EPIC's

request for fees on fees is reasonable and supported by existing case law, and should be

granted by this court.

## CONCLUSION

As discussed above, EPIC substantially prevailed in this lawsuit, therefore

triggering FOIA's fee-shifting provision. EPIC is eligible for and entitled to recover its

fees and costs from the DHS in this matter. EPIC's fees are reasonable and supported by

the attached affidavits and time records. EPIC moves the Court to award EPIC

$31,722.50 in fees and costs. A proposed Order is attached.

Respectfully submitted,

_____*/s/ Ginger McCall*_____
GINGER MCCALL
MARC ROTENBERG
Electronic Privacy Information Center

1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*

Dated: May 1, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of May, 2013, I served the foregoing PLAINTIFF'S
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, including all exhibits
and attachments, by electronic case filing upon:

>   STUART DELERY
>   Assistant Attorney General, Civil Division
>   U.S. Department of Justice
>
>   JESSE GRAUMAN
>   U.S. Department of Justice
>   Civil Division, Federal Programs Branch

>   _____/s/ Ginger McCall_____
>   Ginger McCall
>   *Counsel for Plaintiff*