## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

ELECTRONIC PRIVACY INFORMATION CENTER,    )
                                                            )

          Plaintiff,    )

          v.    )  Case No. 1:10-cv-1992 (RCL)

THE UNITED STATES DEPARTMENT OF    )
HOMELAND SECURITY,    )

          Defendant.    )
_____    )

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR ATTORNEYS' FEES AND COSTS

## INTRODUCTION

In this Freedom of Information Act ("FOIA") action, EPIC asserts that it is eligible for,

and entitled to, $31,722.50 in fees and costs.  It grounds its claims of eligibility solely in FOIA's

"catalyst theory," despite the fact that none of the attorneys' fees it seeks can be attributed to

expenses that were necessary to prompt DHS to release non-exempt, responsive documents

voluntarily.  Rather, all of the attorneys' fees EPIC seeks in this case are associated with its

largely-unsuccessful summary judgment litigation.  Such fees should be denied in their entirety.

Even assuming <u>arguendo</u> (though EPIC made no such argument) that the minimal relief EPIC

obtained at summary judgment – an order to release excerpts of 18 out of 574 pages that

contained challenged withholdings – could render EPIC <u>eligible</u> for attorneys' fees, EPIC has

made no showing that the release of these minimal excerpts with virtually no public benefit

would <u>entitle</u> EPIC to such fees.

Alternatively, if the Court finds that EPIC is entitled to any fees associated with its

summary judgment briefing, such fees should be significantly reduced to account for EPIC's

minimal success at summary judgment.  EPIC is not entitled to any fees for time spent on issues

on which it did not prevail, and therefore is not entitled to fees for the vast majority of the time it

devoted to the parties' cross-motions for summary judgment, including reviewing documents and

<u>Vaughn</u> indices and drafting its briefs.  EPIC made no attempt to exclude any hours spent on its

unsuccessful claims, which has caused its fee request to be vastly inflated.  Additionally, EPIC's

billing records contain instances of duplicative or otherwise unnecessary billing time, such as an

eight-attorney "Conference," and EPIC has improperly sought attorney rates for EPIC staff

members who were not yet admitted to the bar at the time they performed the work in question.

EPIC's records also raise a strong inference that it has "double-billed" its time in this case and

another matter pending before this Court.

Finally, any "fees on fees" to which EPIC may be entitled must be reduced to the extent

that EPIC does not succeed in its motion for fees on the merits.  Awarding "fees on fees"

otherwise would reward a recalcitrant plaintiff, penalize defendant unfairly, and turn FOIA's fee-

shifting provision, whose purpose is to compensate counsel for reasonable expenses incurred to

obtain meaningful documents wrongfully withheld, into a financial windfall for Plaintiff.

Additionally, because Defendant made a Rule 68 Offer of Judgment on April 12, 2013,

Defendant respectfully requests that the Court divide any fees to which Plaintiff might be entitled

into those incurred until that date, and those incurred after that date.

EPIC is only entitled to the expenses it incurred that led to DHS's initial, pre-summary-

judgment releases of non-exempt documents.  The sole expense EPIC has claimed that fits into

this category is $350 fee for filing the Complaint; accordingly, it is the only expense to which

EPIC is entitled.  Alternatively, to the extent that the Court determines that EPIC is entitled to

attorneys' fees associated with summary judgment expenses, such fees should be reduced to at

most $2,969.10 for a total of $3,319.10 in fees and costs, to correspond to EPIC's extremely

minimal success in this matter.  If the Court finds that EPIC engaged in the practice of "double-

billing," fees should be reduced to $1,484.55, for a total of $1,834.55 in fees and costs.

## BACKGROUND

This case involves a FOIA request for records concerning the safety of the radiation

emitted by advanced imaging technology ("AIT") scanners employed by DHS's component, the

Transportation Security Administration ("TSA").  On July 13, 2010, EPIC requested "[a]ll

records concerning TSA tests regarding body scanners and radiation emission or exposure," and

"[a]ll records concerning third party tests regarding body scanners and radiation emission or

exposure." Def.'s Mem. In Supp. Of Summ. J. ("Defs.' MSJ") at 1-2.  Upon review, DHS

determined that the information sought by EPIC in the FOIA request was under the purview of

two components of DHS, namely, the TSA and the Science and Technology Directorate

("S&T"). Id. at 2.  It accordingly transferred the requests to these components, and informed

EPIC of this referral by letter dated July 29, 2010. Id.  DHS concedes that it did not produce

responsive records prior to EPIC's filing a civil action, which occurred on November 19, 2010.

Id. at 6.

By letter on December 22, 2010, TSA sent EPIC a letter that included links to numerous

responsive records that had already been made publicly available on the TSA website.  See id.

Pursuant to an agreed schedule, TSA produced additional responsive documents to EPIC on June

6, 2011, and TSA and S&T produced additional responsive documents to EPIC on June 21,

2011. Id.[1]  S&T also notified EPIC on this date that certain records containing potentially

---

[1]In its June 21, 2011 response to EPIC, TSA also referred EPIC to a section of its website that
included hundreds of additional pages of test data. Defs.' MSJ at 7.

confidential business information were being withheld because the "submitter notice process" pursuant to Executive Order 12600 had not yet been completed. Id. S&T then made a supplemental production of documents to EPIC on July 27, 2011, consisting of documents, and excerpts thereof, previously withheld that were subsequently determined to be releasable, either in full or in part. Id. On August 7, 2011, pursuant to a negotiated extension of time, DHS agreed to review its withholdings under Exemption 4 to determine whether certain portions of records that had been withheld might be releasable, either in whole or in part. See id. at 6-7. On September 7, 2011, TSL and TSA made a final production of documents; this production included records that had initially been withheld pending completion of the submitter notice process and review for sensitive security information ("SSI"), but were subsequently determined to be releasable, as well as records that had been initially withheld either in whole or in part under Exemption 4 but, upon reassessment, were determined to be releasable. Id. at 7.

In total, not including the publicly available documents that had previously been posted online, TSA released 195 pages of documents either in whole or in part, and S&T released 2,586 pages, either in whole or in part. TSA and S&T also withheld documents, either in whole or in part, based on Exemptions 3, 4, 5, and/or 6. Id. at 11. DHS moved for summary judgment on the adequacy of the search and the propriety of the withholdings. See Def.'s MSJ at 10-34. EPIC cross-moved for summary judgment, and did not expressly challenge – and therefore conceded – the vast majority of DHS's withholdings, as well as the adequacy of the agency's search. However, it argued that TSA may not withhold SSI under Exemption 3, challenged the agency's assertion of Exemption 5's deliberative process privilege over several documents, and challenged the agency's assertion of Exemption 4 over certain withholdings pertaining to radiation dose levels emitted by a certain AIT machine; these dose levels were measured by the

government on a machine submitted by the vendor for evaluation.  EPIC conceded the propriety of the Exemption 6 withholdings but contested the withholdings under Exemption 3, 4, and 5. See Pl.'s Mot. for Summ. J. (Pl.'s MSJ) at 5-22.  EPIC also argued that the Court should grant summary judgment in favor of EPIC on its eligibility and entitlement to attorney's fees, based on the "catalyst theory."  See id. at 22-27.

On March 7, 2013, the Court granted in part and denied in part both parties' motion for summary judgment.  See Mem. Op. (ECF No. 20).  The Court granted DHS summary judgment as to all issues conceded or not challenged by EPIC, including the scope of DHS's search, all Exemption 6 withholdings, and certain withholdings pursuant to Exemption 4.  See id. at 4-5, 8. The Court also granted DHS summary judgment on documents withheld pursuant Exemption 3, finding that the statute authorizing the withholding of SSI is an Exemption 3 statute and that review of SSI designations may be sought only in a court of appeals.  Id. at 5-8.  The Court also found that TSA properly invoked Exemption 5 as to all of material at issue withheld pursuant to claims of privilege.  Id. at 12-21.  The Court also upheld two Exemption 4 withholdings of information pertaining to radiation dose levels that was submitted by an AIT vendor.  Id. at 11. However, as to certain other Exemption 4 withholdings of radiation dose levels and associated information, the Court ruled that because the source of that information was the government, rather than a vendor, the withheld excerpts did not qualify for Exemption 4 because they were not "obtained from a person."  5 U.S.C. § 552(b)(4).  Id. at 9-11.  The radiation dose levels in question pertained to a machine, the AS&E SmartCheck, that is not being deployed by TSA.  See Decl. of Paul Sotoudeh (ECF No. 9-1) ("Sotoudeh Decl.") ¶ 59. As a result of this order, the government was directed to release portions of 18 pages, out of approximately 574 pages challenged.  See id. at 9-11 (listing the 18 pages with excerpts ordered released), ECF No. 11-5

(listing approximately 574 pages of challenged withholdings); Declaration of Jesse Z. Grauman

("Grauman Decl.") (attached as Ex. 1) ¶ 4 (confirming that the pages challenged by EPIC

included approximately 574 pages).

The Court also directed the parties to meet and confer in an attempt to negotiate

attorneys' fees. Mem. Op. at 22. During the course of the negotiations, on April 12, 2013,

Defendant made a Rule 68 Offer of Judgment, which EPIC did not accept. See Ex. 5 (Offer of

Judgment with amount redacted). EPIC then filed its motion for attorneys' fees and costs on

May 1, 2013, seeking a total of $31,722.50, including $31,372.50 in fees and $350 in costs. See

Pl.'s Mot. for Attys' Fees and Costs ("Pl.'s Mot.") (ECF No. 24).

## STANDARD OF REVIEW

A plaintiff must satisfy a two-step inquiry to receive fees and costs in a FOIA action.

First, the plaintiff must show that it is eligible for an award. To meet this standard, the plaintiff

must show that it has "substantially prevailed," which means it obtained relief through either (1)

"a judicial order, or an enforceable written agreement or consent decree;" or (2) "a voluntary or

unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5

U.S.C. § 552(a)(4)(E)(ii). The second of these two options "essentially codifies the 'catalyst

theory'" of recovery, under which a plaintiff is eligible for fees if the "litigation substantially

caused the requested records to be released." N.Y.C. Apparel F.Z.E. v. U.S. Customs& Border

Prot. Bureau, 563 F. Supp. 2d 217, 221 (D.D.C.2008) (internal citation omitted). To recover

attorneys' fees under this theory, "a litigant must . . . show[] that the lawsuit was reasonably

necessary and the litigation substantially caused the requested records to be released." Burka v.

HHS, 142 F.3d 1286, 1288 (D.C. Cir. 1998). Although it is a '"salient factor' in the analysis,'

"the mere filing of the complaint and the subsequent release of the documents is insufficient to

establish causation." Weisberg v. DOJ, 745 F.2d 1476, 1496 (D.C. Cir. 1984); Pub. Law Educ.

Inst. V. DOJ, 744 F.2d 181, 184 n.5 (D.C. Cir. 1984) ("While the temporal relation between an

FOIA action and the release of documents may be taken into account in determining the

existence vel non of a causal nexus, timing, in itself or in conjunction with any other particular

factor, does not establish causation as a matter of law.").

Eligibility does not end the inquiry, however, as FOIA plaintiffs seeking fees must show

that they are not only eligible for fees, but entitled to them. Church of Scientology of Cal. v.

Harris, 653 F.2d 584, 590 (D.C. Cir. 1981). The entitlement inquiry examines (1) the public

benefit derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the

complainant's interest in the records sought; and (4) whether the government's withholding had a

reasonable basis in law. See Davy v. CIA, 550 F. 3d 1155, 1159 (D.C. Cir. 2008). Ultimately,

the decision on whether a plaintiff is entitled to attorneys' fees "rests in the sound discretion of

the district court." Church of Scientology, 653 F.2d at 590.

If the Court finds that EPIC is eligible for, and entitled to, attorneys' fees, it must

determine a reasonable amount of fees. An appropriate starting point is typically the lodestar, a

reasonable number of hours multiplied by a reasonable hourly rate. See Hensley v. Eckerhart,

461 U.S. 424, 433 (1982). Fees for unsuccessful claims, however, are not awarded. See Nat'l

Sec. Archive v. U.S. Dep't of Defense, 530 F. Supp. 2d 198, 204-205 (D.D.C. 2008) (citing

Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)). Moreover, as a decision to award fees is

discretionary, a court "may deny in its entirety a request for an 'outrageously unreasonable'

amount, lest claimants feel free to make 'unreasonable demands, knowing that the only

unfavorable consequence of such misconduct would be reduction of their fee to what they should

have asked for in the first place.'" Envtl. Defense Fund, Inc. v. Reilly, 1 F.3d 1254, 1258 (D.C.

Cir. 1993) (quoting Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir.1980)).  If overbilling is less egregious but still unreasonable, the Court "may impose a lesser sanction, such as awarding a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request." Id. (citing Farris v. Cox, 508 F. Supp. 222, 227 (N.D. Cal. 1981)).

## ARGUMENT

### I.   THE $31,372.50 IN ATTORNEY'S FEES THAT EPIC SEEKS IS UNREASONABLE AND SHOULD BE DENIED.

#### a.   EPIC Is Entitled Only to Fees For Issues on Which It Prevailed.

For the purposes of this motion, DHS does not contest that under the circumstances of this suit, EPIC is eligible for fees under FOIA's "catalyst theory" because its lawsuit, filed in November 2010, hastened DHS's voluntary production of non-exempt documents, which began on December 22, 2010 with DHS's letter directing EPIC to responsive records posted on the agency's website, and concluded on September 7, 2011 with the agency's final document release.  Thus, under the circumstances of this case, DHS does not contest that the "catalyst theory" would apply to make EPIC eligible for any litigation expenses that were reasonably incurred to obtain these documents.  Likewise, DHS does not contest that EPIC is entitled to fees that were reasonably incurred in order to obtain these records, in light of EPIC's status as a nonprofit entity, the volume of records produced, and the fact that, as EPIC highlights in its memorandum, the records released voluntarily by DHS in 2010-2011 were the subject of media coverage.  See Pl.'s Mot. at 7-9.  Finally, DHS does not oppose the use of the Laffey matrix to determine reasonable hourly rates in this matter.  See id. at 12.

What DHS does contest is EPIC's position that the agency's production of documents between December 2010 and September 2011 entitles EPIC to over $31,000 in fees, none of

which were incurred to catalyze the production of those documents.  An examination of EPIC's

billing records, see ECF No. 24-3, see also Grauman Decl. Ex. A, reveals that the only such

expenses EPIC provides evidence of having incurred are the $350 in costs for filing the

Complaint in November 2010.  All of EPIC's fees – prior to "fees on fees" – were associated

with EPIC's mostly-unsuccessful summary judgment litigation.  The first five entries in EPIC's

billing records are for "[r]eview[ing] documents" produced by DHS in June 2011, and all of the

entries that follow – up until entries for "fees on fees" begin on March 21, 2013 – pertain to

summary judgment briefing.  See generally Grauman Decl. Ex. A (rows 1-30).[2]

Such expenses cannot be charged to DHS.  "[A] prevailing FOIA plaintiff is not entitled

to an attorneys' fees award for 'nonproductive time or for time expended on issues on which

plaintiff ultimately did not prevail.'"  Weisberg, 745 F.2d at 1499 (reversing fee award for failure

to reduce fees attributable to unsuccessful motions) (quoting Nat'l Ass'n of Concerned Veterans

v. Sec. of Def., 675 F.2d 1319, 1323 (D.C. Cir. 1982)) (emphasis added); Summers v. U.S.

Dep't. of Justice, 477 F. Supp. 2d 56, 64 (D.D.C. 2007) ("Nor should fees be granted for hours

spent on unsuccessful claims that are distinct in all respects from successful claims"); see also

Farrar v. Hobby, 574 U.S. 103, 114 (1992) ("[T]he most critical factor in determining the

reasonableness of a fee award is the degree of success obtained.").

The rationale for this well-established principle is the Supreme Court's holding in

Hensley v. Eckerhart, 461 U.S. 424 (1982), that if "counsel's work on one claim [is] unrelated to

his work on another claim," then "work on an unsuccessful claim cannot be deemed to have been

'expended in pursuit of the ultimate result achieved'" that entitles a party to attorneys' fees.

Hensley. 461 U.S. at 435; see also Judicial Watch, Inc. v. United States DOC, No. 05-5366, 2007

---

[2] EPIC's records do not contain any entries associated with drafting or filing the Complaint, or any other expenses incurred by EPIC to "catalyze" the pre-summary judgment release of documents.

U.S. App. LEXIS 2337, at *3 (D.C. Cir. Jan. 31, 2007) (per curiam) ("[W]here a losing claim is severable from a winning one, an award of fees is properly reduced by the percentage of counsel's time spent on the losing claim.").  An unrelated claim is a "claim[] for relief . . . based on different facts and legal theories."  Hensley. 461 U.S. at 434.

 The D.C. Circuit applies the Hensley "relatedness" analysis not merely to claims, but to the discrete legal issues raised by a fee petitioner.  See Kennecott Corp. v. EPA, 804 F.2d 763, 765 (D.C. Cir. 1986); Sierra Club v. EPA, 769 F.2d 796, 801-02 (D.C. Cir. 1985; see also Anthony v. Sullivan, 982 F.2d 586, 589 (D.C. Cir. 1993) ("Hensley says loud and clear that when a party has received no favorable results in a particular aspect of a litigation, that party may receive no fee for work on the part of the case.").  Thus, "[t]o those issues upon which [EPIC] has prevailed, [it] is entitled to fees.  To those issues upon which [it] did not prevail, [it] is not so entitled."  Haw. Longline Ass'n v. Nat'l Marine Fisheries Serv., No. 01-765, 2004 WL 2239483, at *6 (D.D.C. Sept. 27, 2004) (citing Hensley, 461 U.S. at 435).

 For the purpose of assessing the issues on which EPIC has prevailed here, the merits phase of the litigation (i.e., prior to fee litigation) can be divided into two basic phases: first, the filing of the Complaint and any related tasks that "catalyzed" the agency's voluntary, pre-summary judgment release of documents – and second, events associated with the summary judgment briefing, which brought EPIC only minimal relief.  Accord Allen v. Department of Defense, 713 F. Supp. 7, 12 (D.D.C. 1989) ("[A] number of … courts have divided the FOIA proceedings into two discrete phases: an initial phase where the plaintiff establishes its eligibility to receive all non-exempt documents followed by a second phase involving piecemeal disputes over specific exemptions claimed by defendant.").  The division of EPIC's claims in this matter into these two categories plainly meets the Hensley test for unrelated claims or issues.  In its

Complaint, EPIC claimed only that DHS violated FOIA by failing to produce any documents at all in response to its request.  See Compl. ¶¶ 50-58.  At summary judgment, EPIC conceded that DHS had engaged in a proper search, but claimed that notwithstanding the agency's production of documents in 2010-2011, DHS had wrongfully applied certain exemptions to documents and portions of documents it withheld.  Such claims are clearly "based on different facts and legal theories" and therefore must be analyzed separately to determine eligibility for, and entitlement to, fees.

Yet EPIC seeks in its motion to use the "catalyst theory" to obtain attorneys' fees that are related not to tasks that substantially caused the release of non-exempt records, but instead to its largely-unsuccessful summary judgment motion.  This is contrary to law, as a party seeking attorneys' fees under FOIA "must show that the prosecution of the action could reasonably be regarded as necessary to obtain the information . . . and that a causal connection exists between that action and the agency's surrender of the information." Weisberg, 745 F.2d at 1496 (emphasis added).  For this reason, courts that have considered this issue subsequent to the enactment of the 2007 FOIA amendments that reinstated the "catalyst theory" in FOIA cases, see generally Pub. L. No. 110-175, 121 Stat. 2524 (2007), § 4(a), have found that FOIA plaintiffs, notwithstanding initial eligibility under the catalyst theory, cannot collect fees for summary judgment motions that are wholly or largely unsuccessful.  See Judicial Watch, Inc. v. U.S. Dep't of Justice, 878 F. Supp. 2d 225 (D.D.C. 2012) (Walton, J.) (in FOIA case where plaintiff was eligible for fees under catalyst theory, denying plaintiff any fees for time spent preparing "preparing [plaintiff's] unsuccessful cross-motion for summary judgment, and for reviewing the DOJ's largely successful motion for summary judgment") (emphasis in original); Electronic Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 811 F. Supp. 2d 216, 239 (D.D.C. 2011)

(Urbina, J.) (in FOIA case where plaintiff was eligible for fees under catalyst theory, denying

fees "related to the summary judgment litigation" "[b]ecause the plaintiff's unsuccessful motion

for summary judgment can be reasonably separated from the portion of the litigation that

catalyzed the release of responsive records, and because the plaintiff's time spent on that motion

was unproductive").

Here, EPIC bases the entirety of its eligibility and entitlement for attorneys' fees on the

catalyst theory and on DHS's release of documents in 2010-2011 after the filing of the

Complaint.  See Pl.'s Mot. at 5-6.  Its motion for fees neither relies on nor even references the

Court's decision on summary judgment, presuming, apparently, that DHS's voluntary release of

documents after the filing of its Complaint renders EPIC eligible for and entitled to fees incurred

for the duration of the litigation, regardless of how unsuccessful the remainder of the litigation

was.

But as the above-cited decisions make clear, the "catalyst theory" is not a "poisonous

tree" that continues to bear fruit in the form of attorneys' fees assessed against federal taxpayers

for the duration of litigation.[3]  The fallacy in EPIC's position is plain when its potential

applications are considered.  Under EPIC's theory, if the filing of a Complaint catalyzes an

agency's production of documents, this would render the agency liable for any and all attorneys'

fees incurred by the plaintiff – regardless of whether the plaintiff ever succeeds on the merits in

the litigation.  Indeed, under EPIC's theory of attorneys' fee liability, if EPIC's recently-filed

---

[3] In Judicial Watch v. U.S. Dep't of Commerce, 470 F.3d 363, 369 (D.C. Cir. 2006), the D.C. Circuit largely affirmed this Court's award of attorney's fees for time incurred after the release of documents when there was Court-ordered relief (such as discovery into allegedly destroyed records) and a judicial finding that the agency had acted in bad faith.  See Judicial Watch v. Dep't of Commerce, 384 F. Supp. 2d 163, 169 (D.D.C. 2005).  Notably, the Court declined to award time spent on unsuccessful summary judgment briefing, noting that "[i]n FOIA cases, even a prevailing plaintiff is not generally entitled to fees and costs spent in unsuccessfully opposing government withholdings." Id. at 171 (collecting cases).

appeal of the Court's summary judgment ruling is ultimately denied in its entirety by the D.C.

Circuit, there would be no reason why EPIC could not seek fees for its appeal, citing DHS's

original 2010-2011 release of documents.  This cannot be, and is not, the law.

The effect of such a principle would be to compensate a plaintiff for work on

unsuccessful claims, which is impermissible.  Accord Nat'l Sec. Archive, 530 F. Supp. 2d at 205

("Awarding NSA its entire fee, and thus compensating it at least in part for time spent on a

losing claim, would be an abuse of discretion under Hensley.").   Rather, EPIC may receive fees

associated with its summary judgment expense only to the extent that it can show that (a) it

prevailed at summary judgment, and (b) its victory at summary judgment entitles it to fees.

Short of such a showing, EPIC is limited to the expenses it incurred to bring the Complaint, and

nothing more.  See Judicial Watch, Inc. v. U.S. Dep't of Justice, 878 F. Supp. 2d at 240 (limiting

FOIA Plaintiff's fees to "the hours it reasonably expended . . . on drafting and filing the

complaint and effecting service of process on the DOJ" when remainder of Plaintiff's fees were

associated with unsuccessful summary judgment motions); see also Ajluni v. FBI, 947 F. Supp.

599, 611 (N.D.N.Y. 1996) (limiting plaintiff's award to "fees incurred up to, and including" the

point at which "the last of the . . . documents were released" in a case where the defendant

agency was granted summary judgment on its use of exemptions); Steenland v. CIA, 555 F.

Supp. 907, 911 (W.D.N.Y. 1983) (finding that work performed after records were released,

where defendant's asserted exemptions were subsequently upheld, "would assess a penalty

against defendants which is clearly unwarranted").[4]

---

[4] The unreasonableness of EPIC's professed entitlement to fees for the entire litigation
notwithstanding its minimal success at summary judgment is furthered by the fact that the
provision in FOIA authorizing an award of attorneys' fees is a limited waiver of the federal
government's sovereign immunity.  See Kennedy v. Andrus, 459 F. Supp. 240, 242 (D.D.C.
1978).  Because "[c]ourts must strictly construe any waiver of sovereign immunity, in terms of
its scope, in favor of the sovereign," Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1025

**b.   EPIC Is Not Entitled to Any Fees for Its Summary Judgment Expenses Because It Has Failed to Show Any "Public Benefit" from the Documents the Court Ordered Released at Summary Judgment.**

To determine whether EPIC is eligible for, and entitled to, attorneys' fees for its summary judgment expenses, its degree of success at summary judgment must be examined.  As noted above, EPIC prevailed, in part, on one of the three exemptions it challenged, obtaining the release of excerpts of 18 pages, out of approximately 574 pages containing withholdings it challenged, as the result of the Court's granting it partial summary judgment on Exemption 4.

As an initial matter, EPIC's motion does not even argue that its limited success at summary judgment or DHS's subsequent release of a few pages makes it eligible or entitled to fees.  The Court should not consider an argument that has not even been raised by the Plaintiff. See, e.g., Catawba Cnty., N.C. v. EPA, 571 F.3d 20, 38 (D.C. Cir. 2009) ("[P]etitioners waived two of their statutory arguments by failing to raise them in their opening briefs").

But even if Plaintiff had chosen to present this argument to the Court, assuming that such a judicial decision would make EPIC eligible, in part, for fees incurred in furtherance of its summary judgment briefing, since the Court's order on summary judgment was "a judicial order," 5 U.S.C. § 552(a)(4)(E)(ii)(I),  EPIC is not entitled to fees for summary judgment expenses because it has failed to show any public benefit from these newly released documents. In determining whether a FOIA action resulted in a "public benefit," the Court asks whether

---

(D.C. Cir. 2006) (internal quotation marks and citations omitted), "an express waiver is required before attorneys' fees can be assessed against the federal government." Kennedy, 459 F. Supp. at 242; see also N.Y.C. Apparel F.Z.E., 563 F. Supp. 2d at 226-27 (construing the FOIA attorneys' fee provision narrowly because of concerns that a broader construction would impermissibly go beyond the scope of Congress's explicit waiver of sovereign immunity).  Thus, absent some clear congressional intent to make FOIA plaintiffs entitled to attorneys' fees under the catalyst theory for expenses incurred after the party obtains the "catalyzed" relief, it would be improper to presume that Congress so intended, particularly given that such an intention would have been contrary to over two decades of well-established case law on attorneys' fees articulated in Hensley.

Plaintiffs' victory is "likely to add to the fund of information that citizens may use in making vital political choices."  Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995).  "Minimal, incidental, and speculative benefit will not suffice."  Aviation Data Serv. v. FAA, 687 F.2d 1319, 1323 (10th Cir. 1982).  EPIC has not even attempted to show that the excerpts of the 18 pages it obtained at summary judgment have conferred any public benefit whatsoever.  See Pl.'s Mot. at 7-8.  Rather, EPIC's "public benefit" argument is based entirely on the documents it obtained in 2010-2011, before the parties moved for summary judgment.  Id.

   In any event, even if EPIC tried to show a public benefit to these 18 pages, it could not. These pages pertain to the radiation dosage emitted by a machine – the AS&E SmartCheck – for which TSA has no current contracts.  See Sotoudeh Decl. (ECF No. 9-1) ¶ 59.  Thus, the release of these documents sheds no light on the technologies that are actually being used by TSA. Moreover, although EPIC cites to the press coverage of some of the documents released by DHS in 2010-2011, see Pl.'s Mot. at 7-8, it cites to no such coverage with regard to the court-ordered release of these excerpts of 18 pages in 2013.  Indeed, EPIC itself has implicitly conceded the lack of public benefit from these pages, as its own website, which proudly touts the documents obtained from DHS during this litigation in 2010-2011, makes no mention of the excerpts EPIC obtained in 2013.  See EPIC v. Department of Homeland Security - Full Body Scanner Radiation Risks, http://epic.org/privacy/airtravel/backscatter/epic_v_dhs_radiation.html (last visited May 13, 2013) (attached as Ex. 2).  Because EPIC can show no public benefit from the court-ordered release of documents at summary judgment, it is not entitled to any fees it incurred in connection with summary judgment.  See, e.g., Hersh & Hersh v. U.S. Dep't of Health & Human Servs., No. C06-4234, 2008 WL2725497, at 2 (N.D. Cal. July 10, 2008) (holding a plaintiff was ineligible for fees where, though the Court's order had led the disclosure of 18 pages of documents, "the

nature and quality of the information that plaintiff received . . . is itself insubstantial particularly when compared to the type of information that was generally sought by the plaintiff.").[5]

Because EPIC cannot show that the court-ordered release of documents in 2013 had any public benefit, it is not entitled to fees incurred in connection with summary judgment. Defendant does not dispute that EPIC is eligible for, and entitled to, its filing fee of $350 as a result of the "catalyst theory." All expenses beyond the filing fee, however, fall into one of two categories: (1) fees attributable to summary judgment, or (2) fees on fees. Defendant has attached a spreadsheet of EPIC's expenses, color-coded to identify which claimed expenses may be attributed to which category. See Grauman Decl. Ex. A.[6] As this spreadsheet indicates, EPIC

---

[5] DHS also had a reasonable basis in law to withhold the documents at issue at summary judgment. It plainly had such a basis for all of the documents that the Court determined were properly withheld – which comprised all but 18 of the 574 pages that EPIC contested at summary judgment. See Chesapeake Bay Foundation, Inc. v. USDA, 11 F.3d 211, 216 (D.C. Cir. 1993) ("If the Government's position is correct as a matter of law, that will be dispositive."). Even as to the remaining 18 pages, however, DHS had a reasonable basis in law to withhold the documents in question under Exemption 4. The withheld information in question consisted of testing data from machines that were obtained from outside vendors and then tested by government agencies. EPIC did not contest that this information was confidential. See Mem. Op. at 8. Although the Court found that the radiation dosage information did not fall within the scope of Exemption 4 because it was not "obtained from a person," DHS cited several cases for the principle that in certain situations, even government measurements can be deemed "obtained from a person." See Def.'s Reply (ECF No. 13) at 15-16 (citing Lion Raisins v. USDA, 354 F.3d 1072 (9th Cir. 2004); OSHA Data/C.I.H., Inc. v. U.S. Dep't of Labor, 220 F.ed 153, 162 n.23 (3d Cir. 2000); Freeman v. BLM, 526 F. Supp. 2d 1178, 1188 (D. Or. 2007); Silverberg v. HHS, No. 89-2743, 1991 WL 633749 (D.D.C. June 14, 1991)). Such cases provide grounds for the Court to find that DHS's withholding of the excerpts of 18 pages was reasonable, even though the Court ultimate ruled against DHS on this issue. Chesapeake Bay Foundation, 11 F.3d at 216 (holding that the Government "need only have 'a colorable basis in law' for the court to consider the 'reasonable basis in law' factor").

[6] For the purpose of these calculations, Defendant has included the 11.4 hours Ms. McCall spent reviewing documents from June 7, 2011 through September 9, 2011 as expenses related to summary judgment. Courts in this Circuit have split on the question of whether time spent reviewing documents produced in response to a FOIA request that is the subject of litigation are considered "litigation expenses" that can be compensated under FOIA's attorneys' fee provision. Compare CREW v. DOJ, 825 F. Supp.2d 226, 231 (D.D.C. 2011) (Boasberg, J.) (holding, in case where plaintiff received no further relief after documents were produced, that "the cost of

has claimed $22,091.00 in fees related to summary judgment.[7]  See Grauman Decl. ¶ 6.  EPIC is

not entitled to any such fees, because they were all incurred in furtherance of claims that either

were unsuccessful or that do not give rise to entitlement to fees under FOIA for the reasons

discussed above.

### c.  Even If EPIC is Entitled to Some Fees for Summary Judgment Expenses, They Must Be Substantially Reduced in Light of EPIC's Minimal Success at Summary Judgment.

Even if the Court determines that EPIC is entitled to fees for its summary judgment

expenses as a result of the Court's partial grant of summary judgment, such fees must be

substantially reduced.  See Hensley, 461 U.S. at 440 ("[W]here the plaintiff achieved only

limited success, the district court should award only that amount of fees that is reasonable in

relation to the results obtained.").  EPIC makes virtually no attempt in its fee records to

distinguish between those hours attributable to its (partially) successful Exemption 4 arguments

and those hours attributable to the remainder of its claims, which were unsuccessful.  There are

two exceptions; two entries denote time spent "[r]esearch[ing] Exemption 3," for which EPIC

---

reviewing documents produced in response to a FOIA request is simply the price of making such a request," and that "the time Plaintiff expended reviewing the documents . . . [was] a post-relief activity, separate from litigation.") with Elec. Privacy Information Ctr., 811 F. Supp. 2d at 239-40 (D.D.C. 2011) (Urbina, J.) (finding that fees could be awarded for time spent "reviewing documents during the course of active litigation" even though plaintiff received no further relief after reviewing documents).  Here, because EPIC ultimately received some relief at summary judgment after Ms. McCall reviewed the documents produced in 2011, Defendant assumes arguendo that the 2011 document review time can be considered a "litigation expense," but one that can only be compensated to the extent that EPIC is entitled to any fees at summary judgment generally.  Thus, Defendant still maintains that EPIC is not entitled to these expenses at all, given EPIC's non-entitlement to summary judgment fees generally.  Alternatively, to the extent that EPIC is entitled to a percentage of summary judgment fees, any fees associated with the 2011 document review should be awarded only based on that percentage, as discussed infra.

[7] This amount was calculated by calculating the sum of the fees claimed for document review prior to summary judgment , see Grauman Decl. Ex. A, rows 1-5, all entries associated directly with summary judgment briefing, see id., rows 6-30, and three entries associated with DHS's production of documents following the Court's summary judgment order, see id. rows 72, 81, 83.

claims a total of $2,976.00 for 12.4 hours of work.  <u>See</u> Grauman Decl. Ex. A (rows 18, 20).

EPIC lists these hours in its records, but they plainly cannot be compensated, as EPIC did not

prevail at all on its Exemption 3 claim, which is "based on different facts and legal theories" than

its claims as to other exemptions.  <u>See</u> <u>Piper v. Dep't of Justice</u>, 339 F. Supp. 2d 13, 24 (D.D.C.

2004) (holding that plaintiff was not entitled to fees for disputing the government's withholdings

under an exemption that the court found to be properly applied).  Additionally, three entries

totaling $199 that are associated with DHS's production of documents following the Court's

summary judgment order are attributable solely to EPIC's successful claims under Exemption 4.

<u>See</u> Grauman Decl. Ex. A (rows 72, 81, 83).

As to the vast majority of its records, however, EPIC does not distinguish between time

spent on its partially-successful Exemption 4 claims and time spent on its entirely-unsuccessful

claims under Exemption 5 and Exemption 3, despite its obligation to do so.  <u>See</u> <u>Schwarz v.</u>

<u>Secretary of HHS</u>, 73 F.3d 895, 906 (9th Cir. 1995) ("[A]n attorney 'should maintain billing time

records in a manner that will enable a reviewing court to identify distinct claims.'") (<u>quoting</u>

<u>Hensley</u>, 461 U.S. at 437).  EPIC's failure to keep precise records is an additional ground for

reducing its fees for these filings.  <u>See</u> <u>Nat'l Sec. Archive</u>, 530 F. Supp.2d at 209 (finding, in

FOIA case, "that [plaintiff's] inability to segregate the time spent on the claim it won from the

time spent on the claim it lost militates against the award of fees it seeks.").

Under a circumstance such as this one, where EPIC's records make no indication (other

than the five entries specified above) which hours were spent briefing which exemptions, the

Court may estimate how much of EPIC's time can be attributed to the various discrete issues

raised in its dispositive motion.   One appropriate estimate approved by the D.C. Circuit is the

number of pages of argument directed at the losing claim as a proxy for allocating attorney's

fees.  See Judicial Watch, Inc. v. United States DOC, 2007 U.S. App. LEXIS 2337, at *3 (citing

Turner v. D.C. Bd. of Elections & Ethics, 354 F.3d 890, 894, 899 (D.C. Cir. 2004)).  Here, out of

22 pages of argument in its summary judgment brief, EPIC devoted approximately 3 pages to its

Exemption 4 arguments.  See Pl.'s Mem. In Supp. Of Summ. J. (ECF No. 11-1) at 5-27 (total

argument section), 20-22 (Exemption 4).  In its reply, out of 20 pages of argument, EPIC devoted

3 pages to Exemption 4.  See Pl.'s Reply in Supp. of Summ. J. (ECF No. 15) at 2-21 (argument

section), 9-12 (Exemption 4).  Thus, out of 42 pages of argument, 6 were spent on Exemption 4 –

about 14.3 percent.  Moreover, because EPIC did not succeed on its entire Exemption 4

argument, but only on 18 out of 22 pages it challenged under that exemption, see Mem. Op. at 11

(granting DHS summary judgment as to the withholdings on TSL1190-91 and TSL1192-93), an

additional reduction is warranted to reflect EPIC's lack of success.  When multiplying the 14.3

percent figure above by (18/22), the result is 11.7 percent.[8]

Thus, even if the Court were to find EPIC entitled to receive attorneys' fees for its

summary judgment motions, it should receive at most 11.7 percent of the total reasonable fees it

expended at summary judgment.  See, e.g., Thompson v. Int'l Ass'n of Machinists & Aerospace

Workers, 664 F. Supp. 578, 583 (D.D.C. 1987) (reducing lodestar fee by 75% where plaintiff

prevailed on only one of four discrimination claims); Noble v. Herrington, 732 F. Supp. 114,

117-18 (D.D.C. 1989) (reducing lodestar fee by 80% to account for plaintiff's extremely limited

overall victory).

### d.  EPIC Charged Improper Hourly Rates Under the Laffey Matrix for Staff Members Who Were Not Members of the District of Columbia Bar, or Any Bar, During the Relevant Time Periods.

---

[8] Another alternative metric the Court could adopt is overall the number of pages EPIC obtained at summary judgment as a percentage of the number of pages it challenged.  As EPIC obtained only 18 pages out of 574 challenged, such a metric would entitle it to 3.1 percent of its fees incurred at summary judgment.

Although several individuals were or are not members of the District of Columbia Bar (or, for some, any bar) when the fees were incurred, EPIC seeks to improperly charge the United States an hourly rate under the <u>Laffey</u> Matrix that applies only to licensed attorneys.[9]   As this Court has previously instructed EPIC, the hourly rates of individuals who have not become members of a bar should be reduced to the lower <u>Laffey</u> rate for law clerks or paralegals.  <u>See Elec. Privacy Information Ctr.,</u> 811 F. Supp. 2d at 238 (citing <u>Blackman v. District of Columbia</u>, 677 F. Supp. 2d 169, 175 (D.D.C.2010)) ("[B]ecause the plaintiff does not refute that one of its attorneys, Ms. Ginger McCall, conducted work on this litigation prior to her admittance to the bar, the court applies the "paralegal/clerk" <u>Laffey</u> rate to this time.").

EPIC has claimed fees for 31.4 hours of time spent by David Jacobs in 2011 and 0.9 hours for Jeramie Scott in March 2013.  <u>See</u> Grauman Decl. Ex. A, rows 14-18, 20, 22-25 (Jacobs), 38, 46 (Scott).  Mr. Jacobs was not admitted to any bar in 2011.  In his affidavit, Mr. Jacobs states that he graduated from law school in 2011 and is a member in good standing of the Bar of New York.  Jacobs Aff. ¶¶ 4-5.  However, he omits the date on which he became a member of the New York State Bar.  According to publicly available records, Mr. Jacobs was admitted to the New York State Bar in 2012.   <u>See</u> Ex. 3.  It is unreasonable for EPIC to seek rates applicable to a licensed, practicing attorney for the work by Mr. Jacobs performed prior to his admission to any bar.  Rather, such time should billed at the lower rate applicable to law clerks.  Similarly, Jeramie Scott states that he is a 2012 law school graduate and passed the New York State Bar Exam, Scott Aff. ¶¶ 4-5, but does not state in his affidavit that he is admitted to practice law.  According to publicly available New York Bar records, as of today, Mr. Scott is

_____

[9] The <u>Laffey</u> Matrix rate for law clerks and paralegals in the second half of 2011 was $140 per hour as opposed to the $240 per hour rate billed by EPIC, and the rate in the first half of 2013 was $145 per hour as opposed to the $245 rate billed by EPIC.  <u>See</u> ECF No. 24-7.

not a member of the New York Bar, and was not a member of the bar during the time he

performed the work for which EPIC seeks compensation.  See Ex. 4.  Thus, his time should also

be billed at the law clerk/paralegal rate.

Additionally, EPIC should not receive attorney rates for staff members who, although

licensed to practice in other jurisdictions, are not licensed in the District of Columbia.   See

Dickens v. Friendship-Edison P.C.S., 724 F. Supp. 2d 113, 119-20 (D.D.C. 2010) ("Though they

were admitted to the bars of other states, neither RR nor CB were licensed to practice law in the

District of Columbia during the time they worked on these cases. . . . Accordingly, this Court

accepts Defendant's suggestion that attorneys RR and CB are reasonably billed at the hourly rate

for paralegals.") (IDEA case); see also Baker v. D.C. Public Schools, 815 F.Supp.2d 102, 116

(D.D.C. 2011) ("[A]ttorneys who are not admitted to the D.C. Bar are not entitled to

reimbursement at attorney rates[ . . . ]") (IDEA case) (citing Dickens, 724 F. Supp. 2d at 120;

Agapito v. District of Columbia, 477 F.Supp.2d 103, 112–13 (D.D.C. 2007)).  This qualification

applies to the 1.1 hours claimed by Mr. Jacobs in 2013, see Grauman Decl. rows 36, 44, 112,

Jacobs Aff. ¶ 5 (stating that Mr. Jacobs's application to the D.C. bar is pending), the 2.6 hours

claimed by Julia Horwitz, see Grauman Decl. Ex. A, rows 37, 45, 104, 107, Horwitz Aff. ¶ 5

(stating only that she is a member of the Maryland bar), and to the 1.1 hours claimed by Khaliah

Barnes, see Grauman Decl. Ex. A, rows 33, 41, 109, Barnes Aff. ¶ 5 (who is also not a member

of the DC Bar).[10]  Thus, all of the time claimed in the case by Mr. Jacobs, Mr. Scott, Ms.

Horwitz, and Ms. Barnes, to the extent that it is compensable, should be billed at paralegal rates.

_____

[10] Curiously Ms. McCall states in her affidavit that her application to the Bar of the District of
Columbia is pending.  McCall Aff. ¶ 6.  Yet a review of D.C. Bar records indicates that she is, in
fact, a member of the DC Bar and has been so since May 13, 2011.  See Ex. 8.  For this reason,
notwithstanding her affidavit in this matter, Defendant is not challenging the hourly rate for Ms.
McCall, though this error highlights the apparent carelessness with which EPIC has submitted its

**e. EPIC Improperly Seeks Fees For Overstaffed "Conferences" Containing Eight Attorneys.**

Although the majority of the tasks in this litigation were performed by Ms. McCall, Mr. Rotenberg, and – with regard to the reply brief – Mr. Jacobs, EPIC seeks compensation for two unnecessary and duplicative "conferences" on March 22, 2013 and March 25, 2013 that included seven and eight attorneys, respectively.  See ECF No. 24-3 at 2-3; Grauman Decl. Ex. A, rows 33-39, 41-48.  As an initial matter, EPIC has wholly failed to state what was addressed in these "conferences" so that the Court might determine their reasonableness or their allowability.  See Role Models America, Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) ("Similarly inadequate are the numerous entries in which attorneys billed simply for 'research' and 'writing,' or for time spent in teleconferences or meetings-over one hundred in total-the purposes of which are not provided.").  Indeed, EPIC offers no basis for the Court to conclude that this conference was reasonably necessary to obtain some relief under FOIA.   Thus, EPIC should receive nothing for the conference.

Additionally, it is unclear from its billing records why EPIC believed it necessary to include so many attorneys in these conferences, particularly given that four of these individuals – Khaliah Barnes, Amie Stepanovich, Julia Horwitz, and Jeramie Scott – had not participated in this litigation at all beforehand.  Courts should examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication.  Trimper v. City of Norfolk, 58 F.3d 68, 76-77 (4th Cir. 1995) (district court should scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.);  Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir.1992) ("A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.");

fee petition, and undermines the credibility and reliability of EPIC's affidavits and records generally.

Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980) (holding "[if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.").

Hensley also requires the district court to exclude from the calculation, and a prevailing party to exclude from its fee request, hours that are "excessive, redundant or otherwise unnecessary." 461 U.S. at 434; accord Oklahoma Aerotronics, Inc. v. United States, 943 F.2d 1344, 1347 (D.C. Cir. 1991) (courts must disallow "excessive, redundant, or otherwise unnecessary" hours). Some courts view this requirement as a matter of billing judgment. See e.g. Brown v. Bolger, 102 F.R.D. 849, 862-63 (D.D.C. 1984).

Not only has EPIC failed to state the activities addressed in these two "conferences," it charged the government time for each attendee, totaling 3.5 hours for the first 30-minute "conference" and 3.2 billing hours for the second 24-minute "conference." Attorneys ordinarily do not charge their clients fees for time spent on internal meetings because they are often not the most productive use of time and have little relevance to resolving the case. Additionally, internal meetings are often disproportionately expensive in relation to their benefit if fees are charged for multiple attorneys. Even if some amount of conference time would be billable, the amount billed here is clearly excessive. See Shephard v. Dorsa, No. 95-8748, 1998 WL 1799018, at 2 (C.D. Cal. July 2, 1998) (reducing hours by a flat percentage to account for excessive conferencing). Rather, the amount billed for each conference should be reduced to the amount attributable to one junior attorney (Ms. McCall or Ms. Stepanovich) and one senior attorney (Mr. Rotenberg), which would give EPIC at most $375 for the first conference ($122.50 + $252.50) and $300 for the second conference ($202 + $98). The remainder of the fees for these conferences should not be allowed.

## II.   ANY "FEES ON FEES" AWARDED MUST BE REDUCED IN ACCORDANCE WITH EPIC'S SUCCESS IN OBTAINING FEES ON THE MERITS.

In addition to claiming fees for litigating the merits of its mostly-unsuccessful summary judgment motion, EPIC also seeks "fees on fees" for time spent either negotiating fees with Defendant or preparing its filings on attorneys' fees.  Such expenses claimed by EPIC total $9,281.50.  See Grauman Decl. ¶ 7 & Ex. A.  If the Court does choose to grant EPIC "fees on fees," such an award should be reduced significantly to the same extent that the Court reduces any award to EPIC on the merits.  See Commissioner, I.N.S. v. Jean, 496 U.S. 154, 163 n. 10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); Judicial Watch, Inc. v. U.S. Dep't of Justice, 878 F. Supp. 2d at 241 (after finding that plaintiff was entitled to only 5.3% of fees sought for litigating the merits, awarding plaintiff the same percentage of the "fees on fees" plaintiff sought); Nat'l Veterans Legal Svcs. Prog. v. Dep't of Veteran Affairs. 1999 WL 33740260, at *5-*6 (D.D.C. 1998) (finding that an award of "fees on fees" should be reduced by the amount of time spent unsuccessfully defending hours eliminated by the court).

As set forth above, it is Defendant's position that EPIC is entitled only to its litigation costs of $350, as those were the only costs that were incurred by EPIC to catalyze DHS's voluntary release of documents, and the minimal relief obtained by EPIC at summary judgment does not entitle EPIC to any attorneys' fees.  If the Court so holds, EPIC should similarly receive no "fees on fees."  If, however, the Court finds that EPIC is entitled to some attorneys' fees on the merits, any "fees on fees" awarded should be reduced by the same percentage as any reduction to EPIC's underlying fee request that may be ordered by the Court.

## III.   EPIC'S IDENTICAL ENTRIES IN THIS CASE AND ANOTHER FOIA ACTION RAISE INFERENCES OF DOUBLE-BILLING.

In addition to the above issues warranting denial of most or all of EPIC's motion for fees, even more troubling is evidence that EPIC may be charging the same time to the United States in two cases.  As the Court is aware, the summary judgment ruling in this case was decided on the same day as Electronic Privacy Information Center v. TSA, No. 11-290 (D.D.C.), and since that day, the cases have been on identical schedules for resolution of fee issues.  Likewise, undersigned counsel and counsel for defendant in No. 11-290 have sought to jointly negotiate fees in this matter in and No. 11-290.  While it is to be expected that the billing records in the two cases would have some similarities during the fee stage for these reasons, EPIC's records in this case and in No. 11-290 are not just similar; they are substantially identical, down to the minute (with a handful of exceptions) beginning shortly after the Court's summary judgment opinions were issued.  Compare ECF No. 24-3 (records in this matter beginning March 21, 2013) with Ex. 7 (records in No. 11-290 beginning March 21, 2013).

EPIC has not provided any evidence in its affidavits or records that it divided its time between this case and No. 11-290 by, for example, charging to each case half of the total time spent on a task, such as a court appearance, email, or telephone call, that covered both cases. Although Defendant, from its vantage point, generally is unable to determine how much time EPIC actually spent on any of the tasks at issue, certain evidence suggests that EPIC was engaging in double-billing rather than dividing its time.  For example, EPIC claims that its attorneys spent a combined 3 hours (1.5 each for Mr. Rotenberg and Ms. McCall) in a court appearance for an April 17, 2013 status conference, and also seeks compensation for an identical 3 hours in Case No. 11-290.   If EPIC is simply dividing the total time its attorneys spent among the two cases, then these records would suggest that the status conference took a total of 3 hours, which it did not; indeed, the status conference on April 17 took only a few minutes.  Similarly,

Mr. Rotenberg and Ms. McCall have each claimed 0.4 hours (24 minutes) in each case for emails

to and from opposing counsel sent on March 26, 2013.  Undersigned counsel's email records

show only a few short emails to and from opposing counsel on that date.  See Grauman Decl. ¶ 8.

If EPIC were dividing its total time among the two cases rather than double-billing, this amounts

to a claim that each of its attorneys spent a total of 48 minutes on March 26 sending and

receiving a few short emails.[11]  EPIC bears the burden of demonstrating that its fees in this

matter are reasonable.  It has not met that burden, as its affidavits and records fail to provide

evidence that would defeat the inference of double-billing that exists here.

     An attorney may not bill two clients twice for the same time.  See In re Tun, 26 A.3d 313,

314 (D.C. 2011) (suspending attorney's license because "[a] review of the vouchers revealed that

respondent sought payment for the same time period for two or more clients (a practice known as

"double billing") on 162 occasions").  This is all the more true when someone seeks fees against

the United States.  Cf. American Petroleum Institute v. EPA, 72 F.3d 907, 912 (D.C. Cir. 1996)

(non-FOIA case) ("[I]tems of expense or fees that may not be 'unreasonable between a first class

law firm and a solvent client, are not [always] supported by indicia of reasonableness sufficient

to allow us justly to tax the same against the United States." (quotation omitted)).  Thus, if the

Court concludes based on the evidentiary record that EPIC is intentionally asking the taxpayers

to pay it twice for the same time, EPIC's request should be denied in its entirety.  See Keener v.

Department of Army, 136 F.R.D. 140, 150-51 (M.D. Tenn. 1991) (denying fee petition and

referring counsel for disciplinary proceedings because the plaintiff had sought the same fees

from both Department of Army and Department of Labor), aff'd 1992 WL 34580 (6th Cir.

---

[11] Additionally, if EPIC were faithfully dividing its time between the two cases, then we would
expect that at least one entry could not be split evenly between the two cases to the tenth of an
hour.  For example, if EPIC spent 0.5 hours on a task, it might have allocated 0.2 to one case and
0.3 hours to the other, or even 0.25 to both.  But this never happened in any of the dozens of
identical entries that EPIC has submitted.

1992); Environmental Defense Fund, Inc. v. Reilly, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (the

Court "may deny in its entirety a request for an outrageously unreasonable amount").  If double-

billing occurred even as a result of negligence, EPIC's fee request should be substantially

reduced, and the Court should reduce the overall amount by at least 50% if this is the case.  See

Role Models America, 353 F.3d at 973 (reducing award by 50% because, inter alia, there were

several inconsistencies in the time entries).

IV.   **BECAUSE DEFENDANT SERVED A RULE 68 OFFER OF JUDGMENT ON APRIL 12, 2013, DEFENDANT REQUESTS THAT THE COURT DIVIDE ANY FEE AWARD INTO FEES INCURRED UNTIL AND AFTER THAT DATE.**

One final important condition applies to any fees awarded to EPIC as a result of

Defendant's service of an Offer of Judgment on EPIC on April 12, 2013 pursuant to Fed. R. Civ.

P. 68.  See Ex. 5 (redacted Offer of Judgment).  This Offer of Judgment was Defendant's final

offer in this matter and was tendered by Defendant in a good-faith attempt to settle this litigation

without burdening the Court with fee litigation.  EPIC did not accept this offer within 14 days of

service, choosing instead to litigate and further drive up its expenses.

Under Rule 68, if an offeree prevails but recovers less than the amount that was offered,

the offeree cannot recover any costs incurred after the offer.  See Tunison v. Continental Airlines

Corp., 162 F.3d 1187, 1192-93 (D.C. Cir. 1998); B.L. Through Lax v. District of Columbia, 517

F. Supp. 2d 57, 60 (D.D.C. 2007); Wright & Miller, Federal Practice and Procedure, § 3006.

The Supreme Court has held that such "costs" include attorney's fees if the relevant fee-shifting

statute defines "costs" to include attorney's fees.  See Marek v. Chesney, 473 U.S. 1, 9 (1985).

FOIA does, in fact, include attorney's fees as part of its definition of costs.  See 5 U.S.C. §

552(a)(4)(E) (authorizing award of "attorney fees and other litigation costs") (emphasis added);

Marek, 473 U.S. at 44 (Brennan, J., dissenting) (listing FOIA as a statute in which attorney's fees

are included as costs); <u>Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice</u>, No. 1:10cv850, ECF No. 21 (unpublished) (attached as Ex. 6) at 2-4 (holding that FOIA includes attorneys' fees as litigation costs for the purposes of Rule 68 and reducing award of plaintiff that rejected Rule 68 offer, noting that "the thrust of Rule 68" is that "a party who recovers less than it was offered must bear the expense of its erroneous choice").

For the purpose of determining whether a judgment for attorneys' fees is, or is not, more favorable than an unaccepted Offer of Judgment, the point of comparison is the court's determination of the amount of fees reasonably incurred <u>prior</u> to the Offer of Judgment.  <u>See Marek</u>, 473 U.S. at 7 ("[P]ost-offer costs merely offset part of the expense of continuing the litigation . . . and should not be included in the calculus"); <u>Goos v. Nat'l Ass'n of Realtors</u>, 68 F.3d 1380, 1382 (D.C. Cir. 1995).  Thus, if the Court determines that EPIC is entitled to pre-offer fees and costs that are less than the amount specified in Defendant's Offer of Judgment, EPIC may not receive any post-offer attorney's fees.

At this time, unless requested to do so by the Court, Defendant is not disclosing the amount of its Offer of Judgment out of concern that it could influence improperly the Court's factfinding or be construed as a concession by Defendant that the amount specified in the Offer represents a reasonable award.  Rather, Defendant respectfully requests that if the Court finds EPIC entitled to attorneys' fees, the Court divide such fees into two categories: those incurred until April 12, 2013, and those incurred after that date, and that the Court refrain from entering final judgment for any amount of attorneys' fees immediately.[12]  Defendant will then determine whether the Offer of Judgment is greater or less than any pre-Offer expenses awarded to EPIC,

---

[12] In its proposed calculation <u>infra</u>, Defendant has divided its proposed fees into those incurred until and after April 12, 2013.

and will expeditiously either file the Offer (and a request to deny any fees subsequent to the

Offer), or will file a Notice that the Offer did not exceed EPIC's pre-Offer expenses.

## V.      PROPOSED CALCULATION OF FEE AND COST AWARDS.

Consistent with the arguments outlined above, Defendant proposes the following two

options for the Court to calculate any reasonable costs, including fees, allowable to EPIC:

Option 1:

As Defendant has argued, EPIC should receive only its $350 in filing costs.  Because

EPIC was not entitled to attorneys' fees at summary judgment, it should receive no fees, and no

"fees on fees."

Option 2:

In the alternative, should the Court find that EPIC is entitled to some fees on account of

its partial success at summary judgment, the Court should allot those fees as follows, consistent

with the analysis above:

Fees on Merits

| Description | Calculation | Result |
|---|---|---|
| Original amount of fees on merits claimed by EPIC: | Sum all of EPIC's records prior to March 21, 2013, plus three entries related to court-ordered disclosures (all white rows in Grauman Decl. Ex. A). | $22,091.00 |
| Apply correct paralegal/law clerk rate to time incurred by David Jacobs[13] | $22,091.00 – (31.4 x 100) | $18,951.00 |
| Exclude fees attributable to Exemption 3:[14] | $18,951.00 – ($140 x 12.4) | $17,215.00 |

---

[13] Mr. Jacobs billed 31.4 hours in 2011, when he was not admitted to the Bar, at the rate of an attorney with 1-3 years of experience.  The difference between the 2011 Laffey rates for an attorney with 1-3 years of experience ($240) and a law clerk/paralegal ($140) is $100.  See ECF No. 24-7.  Thus, the new total reflects the original total minus (31.4 * $100), or $3,140.

| Exclude all but 11.7% of remaining summary judgment expenses not attributable exclusively to court-ordered disclosures:[15] | ($17,215 - $199 ) x 11.7% | $2,189.87 |
| Division of total into pre-and post-Offer of Judgment time periods | Determine which merits expenses were incurred until and after April 12, 2013 | All $2,189.87 incurred pre- Offer |

Fees on Fees

| Description | Calculation | Result |
|---|---|---|
| Original amount of "fees on fees" claimed by EPIC: | Sum all of EPIC's records from March 21, 2013 onward, excluding three entries related to court-ordered disclosures (all yellow rows in Grauman Decl. Ex. A). | $9,281.50 |
| Apply correct paralegal/law clerk rate to time incurred by David Jacobs, Jeramie Scott, Julia Horwitz, and Khaliah Barnes:[16] | $9.281.50 – (5.7 x $100) | $8,711.50 |
| Exclude all but two attorneys for each "conference":[17] | $8,711.50 – ($1,515.50 - $675) | $7,871.00 |

---

[14] EPIC, using attorney rates, billed $2,976.00 for Mr. Jacobs's research on Exemption 3.  See Grauman Decl. Ex. A, rows 18, 20.  Using the paralegal/law clerk rate, which has already been applied here, Mr. Jacobs's fees for researching Exemption 3 were $1,736, which are subtracted from the above total.

[15] Three rows of EPIC's claimed expenses totaling $199 pertain exclusively to the court-ordered disclosures concerning Exemption 4.  See Grauman Decl. Ex. A (rows 72, 81, 83).  Although Defendant contests EPIC's eligibility and entitlement generally as set forth above, to the extent that the Court determines to award EPIC fees for summary judgment expenses, Defendant does not seek a further reduction on these specific items.  The remaining summary judgment expenses ($17,215 - $199  = $17,016), should receive the percentage-based reduction based on EPIC's degree of success.

[16] Mr. Jacobs, Mr. Scott, Ms. Horwitz, and Ms. Barnes, billed 1.1, 0.9, 2.6, and 1.1 hours, respectively, in 2013, using the Laffey rate for an attorney with 1-3 years of experience, when none of them was admitted to the District of Columbia Bar and Mr. Scott was not admitted to any bar.  These total 5.7 hours.  The difference between the 2013 Laffey rates for an attorney with 1-3 years of experience ($245) and a law clerk/paralegal ($145) is $100.  See ECF No. 24-7.  Thus, the new total reflects the previous total minus (5.7 x $100), or $570.

[17] EPIC billed a total of $1875,50 for the unspecified "conference[s]" on March 22 and March 25.  Using the proper Laffey, paralegal rates for attorneys who were not members of the D.C.

| | | |
|---|---|---|
| Multiply remaining total by percentage of merits fees recoverable by EPIC (9.9 percent):[18] | $7,871.00 * 9.9% | $779.23 |
| Division of remaining total into pre- and post-Offer of Judgment time periods | Determine which fees on fees were incurred until and after April 12, 2013 based on records (Grauman Decl. Ex. A) | $ 340.66 pre-offer $438.57 post-Offer |

Totals

| Category | Amount |
|---|---|
| Fees on merits: | $2,189.87 |
| Fees on fees before Offer of Judgment | $340.66 |
| Fees on fees after Offer of Judgment | $438.57 |
| **Total fees:** | **$2,969.10** |
| **Costs (complaint filing fee):** | **$350.00** |
| **TOTAL:** | **$3,319.10** |
| Total before Offer of Judgment: | $2,880.53 |
| Total after Offer of Judgment: | $438.57 |

The above amounts do not reflect a discount for double-billing.  If the Court determines

that EPIC engaged in double-billing and determines to apply a 50 percent discount as a result,

the final totals would be as follows:

| Category | Amount |
|---|---|
| Fees on merits: | $1094.935 |
| Fees on fees before Offer of Judgment | $170.33 |
| Fees on fees after Offer of Judgment | $219.285 |
| **Total fees:** | **$1,484.55** |

Bar, this amount would have been $1,515.50.  Assuming that one senior attorney and one junior
attorney (Ms. McCall or Ms. Stepanovich) was necessary for each conference, the totals for the
conferences would be have been $375 and $300, respectively, a total of $675.  See supra at 23.
Since the proper Laffey rates have already been incorporated,into the remaining total, the result
is $8,711.50 – ($1,515.50 - $675) =  $7,871.00

[18] In the above analysis, EPIC would receive $2,189.87 in fees instead of the $22,091.00 it seeks.
This represents approximately 9.9% of the total, a figure that is multiplied by EPIC's claimed
"fees on fees" to yield a reasonable "fees on fees." Judicial Watch, Inc. v. U.S. Dep't of Justice,
878 F. Supp. 2d at 240-41 (citing Jean, 496 U.S. at 163 n.10).

| Costs (complaint filing fee): | $350.00 |
|---|---|
| **TOTAL:** | **$1,834.55** |
| Total before Offer of Judgment: | $1615.265 |
| Total after Offer of Judgment: | $219.285 |

Moreover, if the Court determines EPIC's initial fee request was "outrageously unreasonable" for any reason, including double-billing, it retains discretion to award EPIC no fees, or reduced fees, in lieu of these amounts in order to discourage fee petitioners from submitting an excessive request. See Envtl. Defense Fund, 1 F.3d at 1258. This clearly appears to be a case in which the plaintiff made "unreasonable demands, [believing] that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." Id. Defendant submits that in light of EPIC's complete failure to segregate expenses for claims on which it did not succeed, failure to discount its summary judgment fees in light of its minimal success, overstaffing this matter during the later stages of the case, improper claims of attorney rates for staff not admitted to the bar, and possible double-billing, EPIC should receive, at most, its costs for filing the Complaint and nothing more. At minimum, though, Defendant respectfully requests that any fees awarded to EPIC be reduced by an amount the Court determines appropriate to deter this type of unreasonable behavior by FOIA fee applicants in the future. Such unreasonable actions will only increase the number of fee disputes that must be submitted to the Court for adjudication, as federal agencies, particularly during these difficult financial times, are constrained not to yield to unreasonable demands. Cf. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, ---, 130 S.Ct. 1662, 1677 (2010) ("[T]he fees are paid in effect by state and local taxpayers, and because state and local governments have limited budgets, money that is used to pay attorney's fees is money that cannot be used for programs that provide vital public services.")

## CONCLUSION

Because of EPIC's minimal success in this case and the lack of any public benefit to the small number of documents EPIC obtained at summary judgment, Defendant requests that EPIC be awarded only its costs incurred in filing its Complaint, namely, $350.  Alternatively, to the extent that the Court deems EPIC entitled to some attorneys' fees associated with its summary judgment filings and "fees on fees" briefing, Defendant requests that such fees be limited to $2,969.10, for a total of $3,319.10 in fees and costs.  If the Court finds that EPIC engaged in "double-billing," fees should be reduced to $1,484.55, for a total of $1,834.55 in fees and costs.


Date: May 17, 2013                                    Respectfully submitted,

                                                      STUART F. DELERY
                                                      Acting Assistant Attorney General

                                                      RONALD S. MACHEN JR.
                                                      United States Attorney for
                                                      the District of Columbia

                                                      ELIZABETH J. SHAPIRO
                                                      Deputy Branch Director

                                                       /s/ Jesse Z. Grauman
                                                      JESSE Z. GRAUMAN (Va. Bar No. 76782)
                                                      U.S. Department of Justice
                                                      Civil Division, Federal Programs Branch

                                                      Mailing Address:
                                                      Post Office Box 883
                                                      Washington, D.C.  20044

                                                      Courier Address:
                                                      20 Massachusetts Ave., N.W.
                                                      Washington, D.C. 20001

                                                      Telephone:      (202) 514-2849
                                                      Fax:            (202) 616-8460
                                                      Email:          jesse.z.grauman@usdoj.gov

Attorneys for Defendants