**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br><br>     Plaintiff,<br>v.<br><br>UNITED STATES DEPARTMENT OF HOMRELAND SECURITY<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)     No. 1:10-01992 (RCL)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND COSTS**

Plaintiff Electronic Privacy Information Center ("EPIC") moved the Court for an award of attorneys' fees and costs against Defendant Department of Homeland Security ("DHS") in this Freedom of Information Act ("FOIA") Action. Dkt. No. 24. DHS filed a memorandum in opposition. Dkt. No. 25. EPIC now replies. For the reasons stated below, EPIC's motion should be granted. Furthermore, EPIC asks the Court to award EPIC attorneys' fees incurred in preparation of this reply, and any other subsequent filings.

**INTRODUCTION**

First, as set forth below, EPIC is entitled to fees on the entirety of its case against the DHS. EPIC substantially prevailed in its litigation against DHS and is entitled to fees under the four-prong test set out by this Court. EPIC's efforts in this litigation led directly to the production of almost 3,000 of pages of records, and its dispositive motions resulted in the identification of additional information that DHS had unlawfully withheld.

Second, DHS concedes that EPIC is eligible to recover attorneys' fees and costs in this matter. EPIC's lawsuit was the catalyst for the disclosure of nearly three thousand

pages of agency records on an issue of significant concern to the public. Moreover, at summary judgment EPIC won an important determination that certain reports generated by the agency cannot be withheld under Exemption (b)(4). *EPIC v. DHS.* No. 10-01992, slip op. at 8-11 (D.D.C. Mar. 7, 2013).

Third, EPIC's billing records are sufficiently detailed to allow this Court to determine, with a high degree of certainty, that the hours billed were non-duplicative and actually and reasonably expended. EPIC did not seek fees for unnecessary work or over charge on rates for attorneys under the *Laffey* matrix. EPIC's request for $33,812.50 in fees and costs is reasonable and supported by case law.

Finally, EPIC has demonstrated that it should receive fees on fees for the work conducted in negotiations with the DHS and the filing of its Motion and Reply in Support of Attorneys' Fees and Costs.

## ARGUMENT

"The Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [the FOIA] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E) (2012). EPIC is eligible for attorneys' fees in this matter because EPIC "substantially prevailed." *Id.*; *see also EPIC v. DHS.* No. 10-01992, slip op. at 8-11 (D.D.C. Mar. 7, 2013) (holding that "This Court will order DHS to disclose this information" and "…this [Exemption (b)(4)] withholding is invalid"). Further, as described below, the fees sought by EPIC were necessarily and reasonably related to the pursuit of the immediate case. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424 (1982).

I.      **EPIC Is Eligible For $31,722.50 (Plus Fees for this Reply) In Attorney's Fees and Costs Because It Satisfied The Requirements of the "Substantially Prevailed" Test**

      A.      **DHS' Analysis of EPIC's Eligibility for Attorney's Fees Relies on A Faulty Conflation of Legal Tests**

In order for a plaintiff to demonstrate that it has "substantially prevailed" in FOIA litigation, it must satisfy two requirements. First, it must show that filing the action could reasonably have been regarded as necessary to obtain the information sought. *Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 513 (2d Cir. 1976); *Cox v. United States Dep't of Justice,* 601 F.2d 1, 10 (D.C. Cir. 1979). Second, it must show that filing the action had a substantial causative effect on the delivery of the information. *Id* at 12. The question of "substantially prevailing" is therefore a test that asks about the effectiveness of the lawsuit as a means for causing the distribution of information.

A plaintiff in a FOIA case does not need to prove that it "substantially prevailed" at each stage of the litigation; indeed, this would be impossible for a plaintiff to prove, since the language of the "substantially prevail" test refers explicitly to "the filing of the action." *Cox*, 601 F.2d at 12. DHS argues that EPIC was "unsuccessful" as to the part of the litigation that followed EPIC's motion for summary judgment. In fact, EPIC did prevail on part of EPIC's motion for summary judgment. *EPIC v. Dep't of Homeland Security*, No. 11-01992, slip op. at 8-11 (D.D.C. Mar. 7, 2013).

The agency's representation here, though, is a misapplication of the law. "Substantially prevailing" does not reflect the success of individual stages of the litigation, but rather the overall impact that the litigation has on effectuating the purpose of the FOIA. *Cox,* 601 F.2d at 12. *See also EPIC v. Dep't. of Homeland Security*, 811 F. Supp. 2d 216, 232 (D.D.C. 2011).

3

1.      **DHS Misinterprets and Misapplies the "Unsuccessful Claims" Analysis**

It is possible for a plaintiff to substantially prevail as to one matter and not prevail as to another, severable matter in complex litigation. As this court has stated, "The reasonableness of a fee request must be evaluated in light of the results obtained. Such fees and costs should not be awarded for excessive, redundant, or otherwise unnecessary work. Nor should fees be granted for hours spent on unsuccessful claims that are distinct in all respects from successful claims." *Summers v. DOJ*, 477 F. Supp. 2d 56, 63-64 (D.D.C. 2007), citing *Riverside v. Rivera*, 477 U.S. 561, 572 (1986). However, this statement is only the first part of the rule. Where an unsuccessful claim is *not* "different in all respects" from the successful claims in an action, fees may be rightfully assessed. This court has stated:

> It is not necessary or proper, however, to exclude time simply because a party did not prevail on every argument made or claim raised. If the time expended cannot be divided into work on discrete claims because those claims involved a common core of facts or related legal theories, the court must 'focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' The question is whether the plaintiff achieved 'a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'

*McKenzie v. Kennickell*, 645 F. Supp. 437, 446 (D.D.C. 1986) (citing *Hensley*, 461 U.S. at 434-35).

In order for a claim to be segregable for fee purposes, it must be distinct "in all respects" from the plaintiff's successful claims. *Hensley*, 461 U.S. at 440. Where the claims are "related," they should be considered as a whole, and the overall success of the action should be evaluated. *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 215-16 (D.C. Cir. 1984). The defendant in *Action on Smoking & Health* argued

that nearly half of the attorney time billed by the plaintiff should not be allowed, since that time was spent on a set of challenges brought against an agency regulation in 1979, and the plaintiff was ultimately successful on an interrelated set of challenges brought in 1981. The D.C. Circuit stated, "The Board claims that ASH was a prevailing party only with respect to the 1981 regulations. Since the 1979 challenge was never resolved, the Board contends, ASH cannot be compensated for hours expended on the earlier appeal. We find the Board's contention without merit." *Id*. at 215. The Court explained that since "the entire litigation centered on a set of common issues" and that "[b]oth the 1979 and 1981 challenges 'involve[d] a common core of facts' and were 'based on related legal theories,'" the two sets of challenges "were part of a continuous process of regulation on a single topic. They were 'all part of parcel of a single matter.' Hence, we decline to disallow categorically the hours expended on the 1979 appeal." *Id*.

> **B.    EPIC "Substantially Prevailed" as to the Entire Litigation and Is Therefore Eligible to Collect Fees and Costs**

EPIC's litigation in this case most closely resembles the action brought by Action on Smoking & Health. Like ASH, EPIC's "entire litigation centered on a set of common issues" which "involve[d] a common core of facts" and were "based on related legal theories." Unlike the claims of Northwest Coalition for Alternatives to Pesticides and Judicial Watch, EPIC's claims all stemmed from  a single FOIA request, and not from a separate statute, discovery attempt, or contract dispute. EPIC's claims were all part of the same FOIA case, related to the same request, and were not easily segregable.

The government also relies on *Weisberg* for the proposition that "a prevailing FOIA plaintiff is not entitled to an attorney's fees for 'nonproductive time or for time

expended on issues on which plaintiff did not ultimately prevail." Dkt. 25 at 9, citing *Weisberg v. DOJ*, 745 F.2d 1476, 1499 (D.C. Cir. 1984). However, the Appellate court in *Weisberg* prefaced this remark by cautioning, "the District Court should give adequate weight to the unique circumstances of this case." *Id*. at 1498. The court explained, "many of the delays in this suit were unquestionably the [requester]'s own doing. He filed numerous, repetitive motions and sought unwarranted reprocessing of documents and repeated searches, most of which were to no avail. Plainly, simple justice requires that the Government not be penalized for delays it did not cause." *Id*.

Additionally, the *Weisberg* case was complicated by the fact that the requester believed that he had entered into a "consultancy agreement" with DOJ, and much of the *Weisberg* litigation was spent trying to resolve the relationship between the requester, the agency, the "unwarranted reprocessing of documents and repeated searches" pursuant to his FOIA requests, ongoing questions about whether the requester had exhausted his administrative remedies, and the disputed "consultancy agreement." In fact, the "issues on which plaintiff ultimately did not prevail" in *Weisberg* were "the time spent on the unsuccessful consultancy fee issue and the excessive time spent on the fee application," and not on individual challenges to FOIA exemptions. *Weisberg* is inapposite not only because a fees award would have "penalized the Government for delays it did not cause," but also, primarily, because the "issues on which plaintiff ultimately did not prevail" concerned a contract dispute between the requester and the agency, and not FOIA at all. *Id*.

The government's decision to gauge the overall success of EPIC's litigation by breaking it up into pre- and post-summary judgment phases is an arbitrary distinction

with no basis in law. Dkt. 25 at 10. The legally significant event was the "filing of the action," and the overall *success* of the litigation should be measured by the overall *effectiveness* of the litigation. *Goland v. CIA,* 607 F.2d 339, 356 n. 103 (D.C. Cir. 1978).

The agency is correct that a FOIA plaintiff cannot be compensated for excessive or duplicative work, or for work done in bad faith in order to prolong the litigation. Dkt. 25 at 17. However, none of that was present in this case. Unlike the plaintiff in *Weisberg*, EPIC complied with the letter of the law. EPIC exhausted its administrative remedies fully, and engaged in focused, straightforward litigation. EPIC's only interest in this case has been the release of the documents sought, and in that goal it has "substantially prevailed."

## II.    EPIC is Entitled to $31,722.50 (Plus Fees for this Reply) Because It Satisfies the Four-Factor Entitlement Test

### A.    DHS Erroneously Isolates the "Public Benefit" Factor of the Four-Factor Test

When determining if a Plaintiff is entitled to attorneys' fees, the Court will ask, within a four-factor analysis, if the government's withholding has a reasonable basis in law. *See Davy v. CIA*, 550 F.3d 1155, 1162 (D.C. Cir. 2008). DHS relies upon the 1995 D.C. Circuit decision *Cotton v. Heyman* to support the proposition that EPIC cannot demonstrate a "public benefit" resulting from the release of the requested documents. Dkt. 25 at 15; citing *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). This analysis fails not only because it misstates the appropriate test to determine a FOIA plaintiff's entitlement to fees, but also because it misapplies that test.  In *Fenster v. Brown*, 617 F.2d 740, 742 (D.C. Cir. 1979), the D.C. Circuit described the factors to be considered when deciding whether a FOIA requester is entitled to attorney's fees. These

factors are "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law.". The D.C. Circuit subsequently explained that the four factors should be considered together and balanced against each other. *Tax Analysts v. United States Dep't of Justice*, 296 U.S. App. D.C. 130, 965 F.2d 1092, 1093 (D.C. Cir. 1992). Even in *Cotton*, the case upon which DHS bases its analysis, and the case that *Cotton* relies upon, *Blue v. BOP*, 570 F.2d 529, 533 (5th Cir. 1978), the appellate courts determined that the lower court gave too much weight to the "public benefit" prong of the four-part balancing test to determine whether an agency is entitled to attorney's fees. In *Blue*, the 5th Circuit noted, "But the [lower] court inexplicably determined that 'criterions 2, 3 and 4 are not material in this case.' In view of the legislative history of the act, it is clear that all four criteria are to be weighed as guides to the court's discretion in FOIA attorneys' fees awards." *Id.* at 534.

> **B.** **Even If The Only Entitlement Factor Were the "Public Benefit," EPIC Would Still Be Entitled to Fees and Costs**

The government misinterprets the "likely to add to public discourse" requirement by looking for a specific, identifiable use for each document it released. Dkt. 25 at 14-17. In the entitlement analysis, the "public benefit" factor supports an award where the plaintiff's victory is "likely to add to the fund of information that citizens may use in making vital political choices." *Cotton*, 63 F.3d at 1120. This does not mean that each document released must be immediately available to every citizen – in fact, an award is possible even when the information is not of general significance, so long as the plaintiff

is not seeking it solely for commercial purposes. *Simon v. U.S.*, 587 F. Supp. 1029, 1032 (D.D.C. 1984). In some cases, the "public benefit" may simply be "the vindication of the Act itself." *Seagull Mfg. Co. v. NLRB*, 741 F.2d 882, 886 (6th Cir. 1984).

However, the "public benefit" of the documents released in the instant litigation is far more immediately relevant. Bafflingly, the government argues that the documents EPIC received following its motion for summary judgment cannot contribute to the public benefit, since the agency no longer uses the technology referenced therein. Dkt. 25 at 15. However, this is exactly the type of information the FOIA was designed to yield. EPIC sought documents that explained the evolution of DHS's use of body scanners, including the agency's awareness of any radiation risks associated with that use. News reporters continue to build on EPIC's research in stories about body scanner radiation. *See, e.g.,* David Kravets, "TSA Wants to Know If Airport Body Scanners Are Nuking You," *Wired,* December 19, 2012.[1] By disclosing documents related to that topic, the agency allows EPIC to compile a fund of information, which it can then distribute to the public at large.

## III.   EPIC's Billing Records Support a Finding of Fees and Costs

DHS relies on *Piper v. DOJ* to suggest that a plaintiff is "not entitled to fees for disputing the government's withholdings under an exemption that the court found to be properly applied." 339 F. Supp. 2d 13, 25 (D.D.C. 2004). However, the *Piper* court wrote in the very next sentence of the opinion that the reduction applied to the plaintiff's fee award "also takes into account plaintiff's manifest private interest in this case." *Id*. The court highlighted that even though the plaintiff intended to publish the information he had

---

[1] Available at http://www.wired.com/threatlevel/2012/12/airport-scanners-nuking-you.

collected from the Department of Justice, it was an equally powerful motivation for his FOIA request that the records pertained to the government's investigation of his mother's kidnapping. *Id*.

*Piper* was also the only FOIA case that DHS cited in favor of the proposition that EPIC did not keep records with distinct enough entries for separate claims. Dkt. 25 at 18. However, that case is easily distinguishable by the fact that EPIC has no personal interest in the records sought. EPIC is a non-profit organization whose primary interest in the records sought is educating the public and helping to foster dialog.

The government also cites *Judicial Watch* to support the contention that EPIC's work following its Motion of Summary Judgment should be reduced in proportion to the number of pages it received. Dkt. 25 at 19; *Judicial Watch* v. *Dep't of Commerce*, 470 F.3d 363, 375 (D.C. Cir. 2006). However, the *Judicial Watch* calculus was applied to a totally segregable issue: its dispute with a third party. The court noted, "DOC's principal argument here is that time spent by a FOIA claimant in litigation disputes with third parties, who are not within the government's authority or control, with respect to litigation issues that were neither raised nor pursued by the government, cannot form the basis of a fee award under 5 U.S.C. § 552(a)(4)(E). … [A]ccording to DOC, such fees are not 'reasonable' as required by FOIA. On the facts of this case, we agree." *Id.* at 370. Thus, the "separable issue" in this case was not a distinct segment of the litigation, but rather an interaction with a party "not within the government's authority or control." *Id*.

Furthermore, the court stated that Judicial Watch was *not* required to treat its work following a partial summary judgment decision as a separate legal undertaking, since the work completed on and after the summary judgment decision was part of the

same overall litigation. The court noted, "The District Court's . . . *Partial Summary Judgment Decision* and *Interim Relief Decision* did not initiate a new action pursuant to which Judicial Watch was authorized to pursue 'distinctly different claims for relief . . . based on different facts and legal theories,' divorced from the complaint then before the court. DOC's suggestion to the contrary is specious." *Id.* at 371, citing *Hensley*, 461 U.S. at 434.

Instead, "[w]here a lawsuit consists of related claims," and are "part and parcel of one matter," *Copeland v. Marshall*, 641 F.2d 880, 892 n.18 (D.C. Cir. 1980), "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Weisberg*, 745 F.2d at 1499. "In that type of situation, the court must focus on the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Weisburg*, 745 F.2d at 1499.

The Court has determined, based on EPIC's arguments in EPIC's Summary Judgment Motion, that DHS improperly withheld documents evaluating the radiation safety of a body scanning machine called the "Dual Smart Check." *EPIC v. Dep't of Homeland Security.* No. 11-01992, slip op. at 9 (D.D.C. Mar. 7, 2013). This is a substantial determination that furthers the aim of FOIA. EPIC's work in this case clarified that "information gathered from a test of equipment already in the government's possession," even when the machine collecting the information was provided by an outside company, does not qualify as information "obtained by a person" subject to withholding under the FOIA. *Id.* at 10; 5 U.S.C. § 552(b)(4) (2012). This determination

will save future FOIA requesters from having to argue against administrative agencies in order to obtain material that is properly disclosable.

## IV.   EPIC's Billing Practices and Hours Billed are Reasonable

### A.   EPIC Properly Billed for Junior Attorneys

Whether or not EPIC's first year attorneys were yet admitted to a bar is not the pertinent question. In fact, as one of the cases cited by the defendant elsewhere in its brief acknowledges, the relevant inquiry is how many years have passed since an attorney graduated from law school. *Baker v. D.C. Public Schools,* 815 F.Supp.2d 102, 115, fn. 5 (D.D.C. 2011) (holding that "[t]he *Laffey* Matrix calculates hourly rates based on the number of years that one has been out of law school"); *Cobell v. Norton*, 407 F.Supp.2d 140, 170 (D.D.C. 2005) (finding that "[t]he Laffey Matrix proposes a hierarchy of rates ranging from 'junior associates' with 1 to 3 years experience *after law school graduation*; 'senior associates' with 4 to 7 years experience *after graduation from law school*; 'experienced federal court litigators' in their 8th through 10th years *after graduation from law school*; 'experienced federal court litigators' in their 11th through 19th years *after law school graduation*; and 'very experienced federal court litigators' in their 20th year or more *after graduation from law school"*)(emphasis added). The D.C. Circuit clearly allows law school graduates to bill as first year attorneys. *Covington v. District of Columbia*, 839 F. Supp. 894, 900 (D.D.C. 1993) (finding that law school graduates could have billed under the Laffey rate for attorneys with 1-3 years of experience). In fact, the *Laffey* court itself measured attorney billing rates by years since *graduation* not years since passing the bar exam. *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983)(finding, for example, that the following rates were appropriate "$125 an

hour for experienced federal court litigators in their 8th through 10th years *after graduation* from law school; —$100 an hour for senior associates, *i.e.,* 4 to 7 years *after graduation* from law school; and —$75 an hour for junior associates, *i.e.,* 1 to 3 years *after law school* graduation.")(emphasis added)(affirmed in part, reversed in part on other grounds).

Defendant relies on several Individuals with Disabilities Education Act ("IDEA") cases to argue that EPIC's attorneys are not entitled to *Laffey* rates. Defendants ask the Court to create an unprecedented change in FOIA fee law based on unrelated precedent. FOIA plaintiffs, including EPIC, are routinely granted fees at *Laffey* rates, whether they are barred in the District of Columbia or not. In fact, defendant ignores clear precedent on this point in a case involving these very same two parties. *EPIC v. DHS*, 811 F. Supp. 2d 216, 239 (D.D.C. 2011).

Defendant bases its argument on unrelated cases in a completely separate area of law. The cases cited by Defendant rely on a specific provision of the IDEA, "Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 USCA § 1415(C). FOIA contains no such provision. In *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113 (D.D.C. 2010),  *Baker v. D.C. Public Schools,* 815 F. Supp. 2d 102 (D.D.C. 2011), and *Agapito v. District of Columbia,* 477 F. Supp. 2d 103 (D.D.C. 2007), the courts relied on District of Columbia Court of Appeals Rule 49(c)(5)(B) which states that attorneys licensed to practice in other states may provide legal services "solely before a department or agency of the District of Columbia government, where ... [s]uch

representation is authorized by statute, or the department or agency has authorized it by rule and undertaken to regulate it." *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d at 119-20. The Court held that "the record here is void of any authority suggesting a de facto policy permitting such practice." *Id.* Therefore, there was no evidence that they attorneys in that case were actually authorized to practice in the IDEA action before the agency. Therefore their fees were reduced to paralegal levels.

In contrast, D.C. District Court local rule 83.2 states "An attorney who is a member in good standing of the bar of any United States Court or of the highest court of any State, but who is not a member of the Bar of this Court, may file papers in this Court only if such attorney joins of record a member in good standing of the Bar of this Court." LCvR 83.2. This rule applies to all attorneys practicing out of offices located within the District of Columbia. As indicated in every signature block of every filing, EPIC's office is located within the District of Columbia, at 1718 Connecticut Ave. NW Suite 200, Washington, DC, 20009. Also, as indicated in every filing, all EPIC attorneys have "join[ed] of record" a D.C. District Court barred attorney -  Mr. Marc Rotenberg or Ms. Ginger P. McCall.

**B.      EPIC Properly Billed for Conferences**

Defendant asserts, without citation or explanation, that "Attorneys ordinarily do not charge their clients fees for time spent on internal meetings…" DHS Opp. at 23. As the Court is likely aware, this is a false assertion. Law firms routinely bill clients for time spent in internal conferences. And in FOIA matters, courts routinely award fees for this time. In *McKenzie v. Kennickell*, 645 F. Supp. at 449-50 (D.D.C. 1986), a D.C. District Court addressed a similar challenge to the plaintiff's billing entries.

14

In a detailed supplement to its opposition to plaintiffs' motion, the government argues and attempts to document tha plaintiffs' attorneys spent an inordinate amount of time conferring with one another and that this time should not be double or triple billed to the defendant. The Court does not find that the time spent in conferences was excessive and no reduction will be made as a result of this challenge.

It is sufficient to state that conferences between attorneys to discuss strategy and prepare for oral argument are an essential part of effective litigation. And further, in a lengthy, complex proceeding such as this one, it is not unusual or unexpected that some new lawyers, when brought on board the litigating team, will have to be briefed on the status of the proceeding. Most important, meetings between junior and senior lawyers to discuss the progress of research and review completed assignments are reasonable and appropriate means to secure proper supervision and efficient staffing of large class actions cases such as this. See *NACV*, 675 F.2d 1319 at 1337. Such supervision is necessary to avoid wasteful or disorganized efforts by inexperienced lawyers keeping fee claims within reasonable bounds. *Copeland*, 205 U.S. App. D.C. 390, 641 F.2d 880. The Court does not find that excessive or unnecessary conferences were held in this case, and there is no reason or authority for allowing only one lawyer to charge for time that more than one lawyer justifiably spent. *Id*.

Here, too, conferences were an "essential part of effective litigation." In order to be able to effectively conduct litigation, EPIC's attorneys must meet with each other to discuss strategy and litigation options, to brief each other on case developments and to come to agreements about how to respond to defense counsel's motions for extension, settlement offers, and scheduling proposals. EPIC's billing entries make clear the purpose of each conference, and the amount of time expended was the amount necessary to perform the task.

### C.      EPIC Properly Billed for Document Review that was a Necessary Part of this Case

In several places within DHS' opposition, Defendant also takes issue with EPIC's billing for time spent reviewing documents. DHS Opp. at 2, 16. But reviewing documents is a necessary part of this litigation. EPIC needed to review the documents provided in order to evaluate the validity of DHS' asserted exemptions. It is common for D.C. Circuit

courts to award fees for time spent reviewing documents that are produced as a result of

FOIA litigation. In an earlier case involving EPIC and DHS, a D.C. District Court

explained:

> Next, the court considers whether the plaintiff may be compensated for reviewing
> documents released by DHS during the course of litigation that were responsive to
> its FOIA requests. The defendant argues that had this document review been
> conducted during the administrative phase of litigation, this time would not have
> been recoverable and therefore should not be awarded at this stage either…
> Although work performed during administrative proceedings prior to litigation is
> not recoverable under FOIA, *Nw. Coal. for Alternatives to Pesticides*, 965 F.
> Supp. at 65, it does not follow that reviewing documents during the course of
> active litigation is necessarily part of such an administrative process. Indeed, it
> would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review
> an agency's disclosure for sufficiency and proper withholding during the course
> of its FOIA litigation. The court thus awards fees related to the plaintiff's review
> of DHS's disclosures.

EPIC v. DHS, 811 F. Supp. 2d 216, 239 (D.D.C. 2011).

### D.     EPIC Properly Billed the Agency for Time Spent on Two FOIA Matters

### a.     EPIC's Billing Entries are Sufficiently Documented

EPIC's billing entries are contemporaneously recorded and, as required under

D.C. Circuit precedent, contain sufficient detail for the Court to assess whether or not

they are valid and what specific motions or activities relate to each entry. *Barnard v.

Dept. of Homeland Security*, 656 F. Supp. 2d 91, 100 (D.D.C. 2009). EPIC did not rely

on "casual after-the-fact estimates of time." *Nat'l Assn. of Concerned Veterans v.

Secretary of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). As evidenced by EPIC's billing

record, EPIC carefully and consistently maintained "contemporaneous, complete and

standardized time records which accurately reflect the work done by each attorney."

*Weisberg v. Webster*, 749 F.2d 864, 872-73 (D.C. Cir. 1984).

"Plaintiffs are not required to document the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C. Cir. 1982); *see also Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980); *Heller v. Dist. of Columbia*, 832 F. Supp. 2d 32, 49 (D.D.C. 2011)' *McKenzie*, 645 F. Supp. at 447-48; *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973). As in *McKenzie*, "the government may quibble over individual entries, claiming they are vague or unclear. However, in the context of the entire application, the entries enable this Court to make an independent, intelligent, and reasonable determination whether or not the hours claimed are justified." 645 F. Supp. at 447-48. EPIC's billing records state clearly the date of the work performed, the name of the attorney involved, the amount of time devoted to the matter, and a sufficiently detailed description of the activity performed." Similar billing entries have been considered sufficient by the D.C. Circuit in other cases. *See Jordan v. Dept. of Justice*, 691 F.2d 514, 520 (D.C. Cir. 1982) (finding, "to enable opposing counsel adequately to assess the merits of the motion, and the court to fulfill its obligations, no more is necessary than 'fairly definite information as to the hours devoted to various general activities, *e.g.,* pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys."); *see also Lindy Bros. Builders, Inc.*, 487 F.2d at 167.

DHS argues, "EPIC's request should be substantially reduced based on [identical billing entries to those submitted with Cast Number 10-01992]". DHS Opp. at 24. As DHS asserts, "an attorney cannot bill two clients for the same time." *Id*. at 26, *citing In re Tun*, 26 A.3d 313, 314 (D.C. 2011). However, EPIC's billing statements in this case and

Case Number 10-01192 are not equivalent to seeking payment "for the same time period for two or more clients." *See Id*. In fact, in neither of these matters has EPIC entered into an "attorney-client" relationship with any individual or group. Instead, EPIC has pursued important FOIA litigation against two government agencies that have acted in contravention of the law, and has emerged victorious. The fees that EPIC seeks are those to which it is entitled to under statute arising from FOIA requests in two distinct matters concerning two different agencies. As part of these negotiations, EPIC's records reflect a series of instances where short conferences, communications, and hearings that involved legal issues at play in both cases were discussed, and, in the goal of efficiency, EPIC allowed the matters to be discussed together. EPIC could have insisted on denying the government's request to consider the two matters as one, with an identical result. Because both matters were discussed in these meetings and communications, EPIC billed both cases for the time spent in these conferences, hearings, and communications.

EPIC has not, in this case, invented hours in order to meet minimum billing requirements, *see People v. Espinoza*, 35 P.3d 552 (Colo. 2001), nor added overhead charges to a bill that could otherwise be expected to be included in a typical hourly rate, *see In re Dyer*, 750 So.2d 942 (La. 1999). Further, EPIC has not charged either government entity for recycled work product. Alaska Ethics Op. 964, 1 (1996). EPIC has charged reasonable, minimal hours for time expended in responding to correspondence where both cases were being handled together.

In other cases cited by DHS to support its conclusion that EPIC has billed improperly, the Court has emphasized the unreasonable amount that the attorney's have sought in fees from unsuspecting clients. *See Keener v. Dept. of Army*, 136 F.R.D. 140,

18

149; *In re Tun*, 26 A.3d at 314. By contrast, EPIC has sought has sought a reasonable

amount of attorneys' fees in both cases. *See cf. Conservation Force v. Salazar*, 10-01057,

2013 WL 66210 (D.D.C. 2013) (reducing by 50%, and then by 25%, an attorney fee

request of over $70,000). EPIC has adequately demonstrated that it did not conduct

duplicative work and its billing records meet the required level of specificity required by

courts in this District. *Id*.

**V.      EPIC Should Receive "Fees on Fees," Regardless of DHS' Settlement Offer**

        "It is settled in this circuit that hours reasonably devoted to a request for fees are

compensable." *Heard v. Dist. of Columbia*, CIV.A.02-296 CKK, 2006 WL 2568013, *19

(D.D.C. Sept. 5, 2006) (internal citations omitted). In fact, the D.C. District courts have

upheld fees on fees in the FOIA context many times, including a recent case involving

the same parties. *See, e.g., EPIC v. DHS,* 811 F. Supp. 2d 216, 240 (D.D.C. 2011)

(holding that "hours reasonably expended in preparing a fee petition are compensable…

Because the court determines, upon close scrutiny of the record, that the hours spent by

the plaintiff on these tasks were reasonably expended and do not constitute a 'windfall'

for the attorneys, the court will award 'fees on fees'"); *Judicial Watch, Inc. v. DHS,*

CIV.A.08-2133, 2009 WL 1743757 (D.D.C. June 15, 2009); *Nat. Veterans Legal*

*Services Program v. U.S. Dept. of Veterans Affairs,* 1:96-CV-01740- NHL, 1999 WL

33740260 (D.D.C. Apr. 13, 1999). Defendant does not appear to argue against this

proposition, but rather, attacks EPIC's decision to file EPIC's fee motion with the Court

instead of accepting Defendant's insufficient settlement offer. Defendant also argues that

EPIC's fee reward for this work ought to be denied outright, or at least be significantly

reduced, because of EPIC's failure to accept a settlement offer that would have provided

roughly one third of EPIC's actual time litigating this matter. EPIC has no obligation to accept an insufficient settlement offer.

EPIC also notes the absurdity here of the Court being asked to assess whether or not EPIC will recover less than it was offered by the agency when the agency will not even disclose to the Court the paltry settlement offer that the agency made to EPIC.  It cannot be that a minimal, insufficient offer made by a defendant limits the plaintiff from recovering further fees.

**VI.    EPIC Should Receive Fees for Time Spent on This Reply**

Under D.C. Circuit law, as discussed above, EPIC is entitled to fees on fees. EPIC is attaching a spreadsheet documenting EPIC's time spent on this reply motion. Exhibit 1. EPIC spent a total of 8 additional hours on this Reply motion. The total dollar amount for this Reply is $2,090.00, which means that EPIC's total fee and costs for this litigation is $33,812.50 ($31,722.50 + $2,090.00).

**CONCLUSION**

As the court in *Los Angeles Gay & Lesbian Community Serv. Center v. IRS*, 559 F Supp. 2d 1055, 1061 (C.D. Cal. 2008), stated:  "Defendant cannot put Plaintiff through the time and expense of enforcing compliance with FOIA and then complain that the resources were out of proportion to the good obtained. Reminding the Court of the waste of resources engendered by Defendant's failure to comply with its obligations hardly persuades the Court to reduce the fee award." Here, DHS utterly failed to respond to both EPIC's FOIA Request and EPIC's FOIA Appeal. DHS' initial Vaughn Index was insufficient and it was ordered by the Court to disclose several wrongly withheld documents.

As the Court has agreed, EPIC substantially prevailed in this lawsuit, therefore triggering FOIA's fee-shifting provision. EPIC is eligible for and entitled to recover its fees and costs from the DHS in this matter. EPIC's fees are reasonable and supported by the proper documentation. The Court should award EPIC $33,812.50 in fees and costs, as documented in the Exhibits attached to EPIC's Motion for Fees and Exhibit 1 to this motion.

Respectfully submitted,

MARC ROTENBERG

_____ */s/ Ginger P. McCall*_____
GINGER P. MCCALL
JULIA HORWITZ *
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*

Dated: May 23, 2013

* Admitted in Maryland, pending in District of Columbia

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of May, 2013, I served the PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, including all exhibits and attachments, by electronic case filing upon:

     STUART DELERY
     Assistant Attorney General, Civil Division
     U.S. Department of Justice

     JESSE GRAUMAN
     U.S. Department of Justice
     Civil Division, Federal Programs Branch

                    */s/ Ginger McCall*
                    Ginger McCall
                    *Counsel for Plaintiff*