**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>**ELECTRONIC PRIVACY** )<br>**INFORMATION CENTER,** )<br> )<br>**Plaintiff,** )<br> )<br>**v.** )<br> )<br>**UNITED STATES DEPARTMENT OF** )<br>**HOMELAND SECURITY,** )<br> )<br>**Defendant.** )<br>_____ ) | **Civil Action No. 10-1992 (RCL)** |

<u>**MEMORANDUM OPINION**</u>

Before the Court is plaintiff Electronic Privacy Information Center's (EPIC) motion for attorneys' fees and costs [ECF No. 24] against defendant U.S. Department of Homeland Security (DHS). After considering the motion, the response and reply thereto [ECF Nos. 25–26], and the record herein, the Court will award EPIC $3,321.95 in fees and costs. EPIC may also move the Court for an additional $640.58, but only if DHS's settlement offer was for less than $3,321.95.

## I.    BACKGROUND

There are three time periods to keep in mind for this case. The first period is from November 19, 2010 to March 21, 2013. That is the time during which the parties litigated the merits. The second is between March 21st and April 12th. That is when the parties litigated fees and costs, but before DHS made an offer of settlement under Federal Rule of Civil Procedure 68. The third period is after April 12th, 2013, or after DHS's Rule 68 offer.

The underlying case began on November 19, 2010, when EPIC filed a Freedom of Information Act (FOIA) lawsuit against DHS [ECF No. 1], seeking production of documents

relating to Whole Body Imaging technology used in U.S. airports.  In response, DHS produced nearly 1,900 pages but also withheld many pursuant to exemptions 3, 4, 5, and 6.  In response to EPIC's summary judgment motion to compel production of documents withheld under exemptions 3, 4, and 5 (EPIC conceded 6), this Court ordered production of documents withheld under only exemption 4, resulting in the production of 18 pages.  *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 928 F. Supp. 2d 139, 147–49 (D.D.C. 2013).

Because the Court granted it partial summary judgment, EPIC moved for attorneys' fees under FOIA's fee-shifting statute.  *See* 5 U.S.C. § 552(a)(4)(E).  EPIC also logged the hours that its attorneys worked on this fee litigation.  Those hours began on March 21, 2013—both for this case and for another, *Elec. Privacy Info. Ctr. v. Transp. Sec. Admin.*, Civil No. 11-290.  Except for a few unique entries, the logs are substantially the same as of March 21st.

Fees continued to pile up even after DHS made a settlement offer under Rule 68 on April 12, 2013 (EPIC rejected it).  DHS has not disclosed the amount offered so as not to bias the Court, *see* Def.'s Opp'n 28–29, but even so, the Court will for the reasons below split the fees on fee litigation into those incurred up to April 12th and those incurred after.

There are many issues contested in this fee litigation.  So rather than repeat itself, the Court will elaborate on the facts relevant to each one below.

## II.     LEGAL STANDARD

### a.  Eligibility for and entitlement to attorneys' fees

In a FOIA suit, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  A plaintiff substantially prevails by "obtain[ing] relief through either (I) a judicial order, or an enforceable written agreement or

consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." § 552(a)(4)(E)(ii).  In addition to being eligible for attorneys' fees, i.e. substantially prevailing, a plaintiff must be entitled to the fees in order to receive any.  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984).  Entitlement "entails a balancing of four factors: (1) the benefit of the release to the public; (2) the commercial benefit of the release to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the reasonableness of the agency's withholding." *Id.* at 1498.  With respect to the balancing test, "[t]he sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992).  Still, the D.C. Circuit has offered some guidance, for instance by stating, "Essentially, the first three factors assist a court in distinguishing between requesters who seek documents for public informational *purposes* and those who seek documents for private advantage." *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) (emphasis added).

### b.  Successful and unsuccessful claims

Even if a plaintiff is eligible for and entitled to attorneys' fees, a court must still inquire whether there are any unsuccessful claims that were unrelated to successful ones.  *See George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992).  If there are, the plaintiff may recover fees for work done on only the successful claims.  *Id.*  Further, a court "must then consider whether the success obtained on the remaining claims is proportional to the efforts expended by counsel." *Id.*  In other words, if the plaintiff achieves only limited success, it is within the court's discretion to reduce the award of fees.  *See id.*  The method of reduction this Court will use here, one that the D.C. Circuit has used when a plaintiff does not allocate time between claims, is to award a percentage of the fees sought equal to the percentage of pages

spent arguing the successful claims on the merits.  *See Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 2007 U.S. App. LEXIS 2337, at *2–*4 (D.C. Cir. 2007).

### c.  Fees for conferences

Whereas the touchstone for attorneys' fees is reasonableness, *see* 5 U.S.C. § 552(a)(4)(E)(i) ("The court may assess . . . reasonable attorney fees . . . reasonably incurred . . . ."), this Court expects fee applicants to exercise billing judgment.  Where applicants fail to do this, the Court will exclude "hours that are excessive, redundant, or otherwise unnecessary" after considering the record.  *Hensley v. Eckerhart*, 461 U.S 424, 434 (1983).  Moreover, the Court will pay particularly close attention when many lawyers bill for a single task.  *Cf. Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) ("[W]here three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.").

### d.  Fees for junior attorneys and attorneys who are not barred in D.C.

The parties dispute the rates applicable to fees for the work of law school graduates who have not been admitted to any bar, and attorneys who have not been admitted to the D.C. Bar. *Compare* Def.'s Opp'n 19–21, ECF No. 25, *with* Pl.'s Reply 12–14, ECF No. 26.  With respect to junior attorneys not admitted to any bar, neither party cites any binding case that directly answers the question, and this Court has not found any.  But some cases in this district have reduced non-barred attorneys' fees to the paralegal/clerk *Laffey* rate.  *See, e.g.*, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 238 (D.D.C. 2011); *Blackman v. District of Columbia*, 677 F. Supp. 2d 169. 175 (D.D.C. 2010).  Even though *Laffey* rates are based on years after graduation, U.S. Dep't of Just., *Laffey Matrix – 2002-2012* n.2, http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf, this Court, too, holds that that calculation does not kick in until the graduate is admitted to a bar, and work by

graduates who have not yet been admitted to any bar shall be compensated at the paralegal/clerk rate.

With respect to attorneys barred somewhere other than D.C., they may *file papers* in D.C. federal courts only if they "join[] of record a member in good standing of the [D.C. Bar]."  D.C. Fed. Ct. R., LCvR 83.2(c)(1).  EPIC states, "This rule applies to all attorneys practicing out of offices located within the District of Columbia."  Pl.'s Reply 14.  Precisely the opposite is true:

> Paragraph (1) above is not applicable to an attorney who engages in the practice of law from an office located in the District of Columbia.  An attorney who engages in the practice of law from an office located in the District of Columbia must be a member of the District of Columbia Bar and the Bar of this Court to file papers in this Court.

D.C. Fed. Ct. R., LCvR 83.2(c)(2).  But D.C. local rules provide that an attorney not barred in D.C. may still *practice law* in D.C. by "[p]roviding legal advice only to one's regular employer."  D.C. Ct. of App. R. 49(c)(6).  When an attorney's work is not authorized in D.C., courts in this district have nonetheless awarded fees at the paralegal rate for equitable reasons.  *See, e.g.*, *Baker v. D.C. Pub. Sch.*, 815 F. Supp. 2d 102, 116 (D.D.C. 2011); *Dickens v. Friendship–Edison P.C.S.*, 724 F. Supp. 2d 113, 119–20 (D.D.C. 2010).  But those were Individuals with Disabilities Education Act cases that followed a different statutory regime.  For that reason, this Court declines to monetarily penalize a FOIA plaintiff just because a licensed attorney who had not yet acquired a D.C. license signed a brief, even if that is not in accordance with local rules.  Instead, the Court will apply the junior attorney rates that EPIC seeks.

### e.  Reduction of Fees on Fees

Fee applicants may be compensated for work done on fee litigation (fees on fees).  *E.g.*, *Copeland*, 641 F.2d at 896 & n.29.  But "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."  *Comm'r, I.N.S. v. Jean*, 496 U.S.

154, 163 n.10 (1990).  This Court will therefore award EPIC the same percentage of fees for fee

litigation as it does for fees on the merits.  *Cf. Harris v. McCarthy*, 790 F.2d 753, 758–59 (9th

Cir. 1986) (holding that applying the same percentage of fees awarded on the merits to fees on

fees was not an abuse of discretion); *Judicial Watch, Inc. v. Dep't of Justice*, 878 F. Supp. 2d

225, 241 (D.D.C. 2012) (awarding fees on the merits at 5.3% of the amount sought and therefore

reducing the fees on fees sought to the same percentage).

### f.   Double Billing in a FOIA case

EPIC attempts to explain away inferences of double billing by suggesting,

> The fees that EPIC seeks are those to which it is entitled to under statute
> arising from FOIA requests in two distinct matters concerning two distinct
> agencies. . . . Because both matters were discussed in these meetings and
> communications, EPIC billed both cases for the time spent in these
> conferences, hearings, and communications.

Pl.'s Reply 18.  Once again, the opposite is true:  "Hours that are not properly billed to one's

client also are not properly billed to one's adversary pursuant to statutory authority."  *Copeland*,

641 F.2d at 891 (quoted in *Hensley*, 461 U.S. at 434).  After all, "[t]he fundamental purpose of

the fee award is to compensate the attorney *for his efforts*."  *Id.* (emphasis added).  If a plaintiff

were to get fees from two different adversaries for the same hours, there would be a windfall of

100% beyond compensation for the attorneys' efforts.

### g.   Costs before and after a Rule 68 offer

If an offeree rejects an offer made under Federal Rule of Civil of Procedure 68, then

under that Rule, "[i]f the judgment that the offeree finally obtains is not more favorable than the

unaccepted offer, the offeree must pay the costs incurred after the offer was made."  FED. R. CIV.

P. 68(d).  In determining whether the judgment or offer is more favorable, "postoffer costs . . .

should not be included in the calculus."  *Marek v. Chesny*, 473 U.S. 1, 7 (1985).  The judgment

includes attorneys' fees in a FOIA case. *See Id.* at 9 ("[W]here the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68."); 5 U.S.C. § 552(a)(4)(E)(i) (authorizing an award for "attorney fees and *other* litigation costs" (emphasis added)).  Moreover, a prevailing plaintiff would not be responsible for only his own post-offer costs, but also the defendant's, *Tunison v. Cont'l Airline Corp.*, 162 F.3d 1187, 1193 (D.C. Cir. 1998)—but only those costs that are "properly awardable," *Marek*, 473 U.S. at 9.  As such, because FOIA allows attorneys' fees for only plaintiffs and not the United States, 5 U.S.C. § 552(a)(4)(E)(i), EPIC would be responsible for DHS's post-offer costs *exclusive* of attorneys' fees if the Court awards EPIC less than what DHS offered under Rule 68 for work done prior to the offer.

### III.  ANALYSIS

####   a.  EPIC is eligible for and entitled to attorneys' fees based on its limited summary judgment victory.

DHS does not contest that EPIC is eligible for and entitled to fees and costs associated with DHS's voluntary production of documents after EPIC filed the FOIA complaint.  As a result, EPIC gets $350 for the cost of filing right off the bat.[1]  But all the hours spent on EPIC's only partially successful summary judgment motion is another story.  It is true that EPIC is eligible for fees based on the summary judgment motion because it prevailed on one of the issues.  But any consideration of entitlement to fees and reduction of fees for partial success relates only to the summary judgment motion and not to the prior production of documents—the work done on the summary judgment motion had no effect on the prior production.  *Cf. Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. 1979) (per curiam) ("[T]he party seeking such fees in the absence of a court order must show that prosecution of the action could reasonably be

---

[1] EPIC would also have been entitled attorneys' fees for the voluntary production of documents, but it did not log any hours that were causally related to that production.

regarded as necessary to obtain the information, and that a causal nexus exists between *that action* and the agency's surrender of the information." (emphasis added) (citations omitted)).

In addition to being eligible for fees in connection with its summary judgment motion, EPIC is also entitled to fees.  While the parties dispute the public benefit garnered from the 18 pages of production caused by the summary judgment motion, *compare* Pl.'s Reply 8–9, *with* Def.'s Opp'n 14–17, this Court is satisfied that EPIC sought the documents for public purposes and is therefore "the quintessential requestor of government information envisioned by FOIA." *Davy*, 550 F.3d at 1157; *cf. id.* at 1159 ("The first factor assesses . . . both the effect of the litigation for which fees are requested and the *potential* public value of the information sought." (emphasis added)).

### b.  Due to EPIC's limited success, its fees on the merits should be reduced by $^6/_7$.

Even though EPIC is entitled to fees, the Court will reduce those fees by $^6/_7$ because of EPIC's limited success.  DHS withheld documents based on three exemptions, and EPIC won on its motion to compel disclosure with respect to only one of those exemptions, leading to only 18 pages of new documents.  Applying the test the D.C. Circuit used in *Judicial Watch*, 2007 U.S. App. LEXIS 2337, *see supra* Part II.b, the Court finds that on the merits, EPIC dedicated 6 pages out of 42 of argument, or $^1/_7$, to the winning issue.  *See* Pl.'s Mot. For Summ. J. 5–27, ECF No. 11; Pl.'s Reply 2–21, ECF No. 15.  Therefore, EPIC will receive $^1/_7$ of fees on the merits.[2]

### c.  Only a fraction of EPIC's logged hours for two conferences should count towards its total.

EPIC held two March 2013 conferences for a total of less than one hour, but billed a total

---

[2] Although EPIC sought to compel disclosure of 22 pages that DHS withheld under exemption 4 but won with respect to only 18, the Court declines DHS's offer to reduce EPIC's fees further, Def.'s Opp'n 19, because a common legal issue binds all of those pages.  *Cf. Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1384 (D.C. Cir. 1995) ("[A] plaintiff's failure to prevail on a related count is not in itself a sufficient ground for reducing her fees.  It is a plaintiff's overall success, and not the number of counts she prevails on, that determines the amount of fees she is entitled to.").

of 6.7 hours because of all the attorneys involved.  *See* ECF No. 24-3 at 2–3.  Of the eight

attorneys who attended, four had no part in the litigation before the conferences (Ms. Barnes,

Ms. Stepanovich, Ms. Horwitz, and Mr. Scott).  In fact, one of those four, Ms. Barnes, appears

on the hours log for only the two conferences and her affidavit; and another, Mr. Scott, appears

for only the conferences.  The Court will not award fees for Ms. Barnes', Ms. Stepanovich's, Ms.

Horwitz's, or Mr. Scott's participation in the March 2013 conferences, and in Ms. Barnes' case,

nor for her affidavit.  As a result, $931.00 thus far must be subtracted from EPIC's desired fees

($882 for the conferences and $49 for the affidavit).  The Court will, however, award fees for

participation in the conferences by Mr. Rotenberg and Ms. McCall, the two primary attorneys on

the case; Mr. Jacobs, who had a prominent role in drafting the reply in the underlying case; and

Mr. Butler, who researched FOIA attorneys' fees and drafted a memo the day before the first

conference.

### d.  EPIC should have billed some of its hours at the paralegal/clerk *Laffey* rate.

One attorney, Mr. Jacobs, was not a member of any bar in 2011, when he did a

substantial amount of work on the underlying case.  *See* ECF No. 25-3 (showing that Mar.

Jacobs was admitted to the New York State Bar in 2012).  For that reason, his billing rate during

that time should be $140 per hour rather than the claimed $240.  As a result, an additional $3,140

must be deducted from EPIC's fees.  *See* ECF No. 24-3 at 1–2 (31.4 pre-bar hours at a $100

difference).  And while Mr. Scott also was not a member of any bar when he worked on this

case, *see* ECF No. 25-4, this Court in its discretion has already eliminated all of his hours from

the fee calculation, *see supra* Part III.c.

Additionally, three attorneys (Mr. Jacobs, Ms. Horwitz, and Ms. Barnes) were not barred

in D.C. during their work on this case.  In Ms. Horwitz's case, she did in fact file a paper in the

Court.  *See* Pl.'s Reply 21, ECF No. 26.  The signature page itself acknowledges that Ms.

Horwitz's admission to the D.C. Bar was pending at the time.  *Id.*  Under the plain language of

the D.C. Federal Court Rules, that is not enough.  LCvR 83.2(c)(2) ("An attorney who engages

in the practice of law from an office located in the District of Columbia *must be a member* of the

District of Columbia Bar and the Bar of this Court to file papers in this Court." (emphasis

added)).  Nevertheless, this Court will not reduce EPIC's fees on that account because the

attorneys' efforts would not then be properly rewarded.  Still, EPIC should take note that it did

not precisely comply with D.C. federal court rules.

### e.  EPIC's fees for fee litigation should be reduced based on the partial award of fees on the merits.

Although the Court will reduce the fees on the merits to $^1/_7$ of the total, that is only

after taking into account other reductions based on lack of admission to a bar.  So the percentage

of fees on the merits awarded compared to those sought will in fact be slightly less than $^1/_7$.

Therefore, when calculating the percentage of fees on fees to award, the Court will use the

updated, slightly smaller percentage.

### f.  EPIC's double billing in this FOIA case and a contemporaneous one merits a 50% reduction of those fees on fees.

EPIC's fees-on-fees entries in this case are substantially similar to those in *Elec. Privacy*

*Info. Ctr. v. Transp. Sec. Admin.* (*TSA*), Civil No. 11-290.  *Compare* ECF No. 24-3 at 2–7 (this

case), *with TSA*, ECF No. 28-3 at 3–7.  Only six fees-on-fees entries are unique to this case

before the reply, and they total $983.  After adding $2,090 for the reply, Pl.'s Reply 20, which

was also unique to this case, the unique fees total $3,073.  The rest are identical to those in *TSA*.

But because the Court is satisfied that EPIC was not trying to pull one over the Court, but rather

just grossly misunderstood the law,[3] the Court will reduce the identical fees-on-fees entries by 50% to reflect the partition that EPIC should have made; the unique entries will be fully rewarded.

### g. EPIC is entitled to costs and fees only up to April 12, 2013, and is liable for DHS's costs (exclusive of attorneys' fees) after that date.

DHS made a valid Rule 68 offer of settlement to EPIC on April 12, 2013.  EPIC rejected it.  Under the plain language of Rule 68 and cases in this circuit interpreting it, EPIC cannot then recover costs (including attorneys' fees) for work done after April 12th unless the offer was for less than what EPIC is awarded in costs up to and including that date.  If the offer was not for less, EPIC is liable for DHS's post-April 12th costs (excluding attorneys' fees), if any.  As such, the Court will divide the fees in this case into those awarded through April 12th, and those awarded afterward.

### h. Adding it all up.

The Court will now roll up its sleeves, go back to grade school, and sort through all the math.  First, EPIC moved for $22,242 for fees and costs incurred before March 21, 2013 (the day fees-on-fees litigation began).  After the reduction of $3,140 because attorney Mr. Jacobs was not barred at the time, the total is $19,102.  Of that number, $350 (the filing fee) will not be reduced for partial success.  But the Court will reduce the remaining $18,752 to $1/7$ of that number—that equals $2,678.86.  After adding the $350 back on, the amount EPIC will receive for work on the merits is $3,028.86.

---

[3] EPIC is now aware of the law.  This Court would not like to see EPIC bill a case in this way again.  After all, given EPIC's "complete failure to segregate expenses for claims on which it did not succeed, failure to discount its summary judgment fees in light of its minimal success, overstaffing this matter during later stages of the case, improper claims of attorney rates for staff not admitted to the bar, and [definite] double-billing," Def.'s Opp'n 32, this Court could have in its discretion refused to award *any* fees, *see Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) ("We may deny in its entirety a request for an 'outrageously unreasonable' amount, lest claimants feel free to make 'unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.'" (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980))).

For fees on fees, the Court must divide the award into fees up to April 12, 2013, and fees afterward. EPIC seeks fees up to April 12th totaling $4,840.50. Initially, the Court must subtract $882 for overbilling the March 2013 conferences. That leaves $3,958.50. Most of that total must be cut in half because of double billing, but some of it, $346 to be exact, remains untouched for now. ($346 is the amount for fees on fees billed uniquely to this case up to April 12th, 2013.) So $3,612.50 must be halved, then $346 added back on. That brings the running total to $2,152.25. Finally, this must be reduced to a percentage equal to the percentage of fees on the merits awarded to fees on the merits sought (or a little less than $1/7$). That equals $293.09. Therefore, EPIC's pre-offer judgment, including attorneys' fees and the initial $350 filing fee, is $3,321.95.

For work done after the Rule 68 offer (including work on the reply brief), EPIC seeks $6,730 in attorneys' fees. Subtracting $49 for Ms. Barnes' affidavit, that leaves $6,681. $2,727 of that will be untouched because there was no double billing, but the rest is cut in half, resulting in a subtotal of $4,704. Reducing that to the same percentage as on the merits, the post-offer total is $640.58.

## IV.     CONCLUSION

For the foregoing reasons, EPIC is entitled to $3,321.95 in attorneys' fees and costs. EPIC may be entitled to $640.58 more, but only if DHS's Rule 68 offer was for less than $3,321.95. To that end, EPIC may move the Court for the additional $640.58 if the offer was for less than $3,321.95. But if the offer was for that much or more, DHS may move for post-offer costs, if any.

Signed by Royce C. Lamberth, U.S. District Judge, on October 15, 2013.